UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

RIDEAPP, INC.                                           :
                                                        :
          Plaintiff,                                    :
                                                        :
                    -v-                                 :          Case No. 18-cv-6625-LGS
                                                        :
LYFT, INC. and MOTIVATE,                                :
INTERNATIONAL INC.,                                     :          **JURY TRIAL DEMANDED**
                                                        :
          Defendants.                                   :

------------------------------------------------------ X

## <u>AMENDED COMPLAINT</u>

In 1999, Georgia Tech Engineering Professor Stephen Dickerson conceived of a transportation system to provide greater convenience and service to customers, especially underserved communities such as the outer boroughs of New York City, and to reduce the social and personal costs of commuting. His system integrated cell phones, the Global Positioning System, and automatic billing technology to allow a passenger who needed a ride to be connected to various methods of transportation to complete a desired trip, including a driver with an empty seat who was going to the same destination and direct access to different types of shared vehicles. The system he envisioned would identify the passenger to the driver or vehicle and vice versa, estimate connection and arrival times, and automatically bill the passenger in a safe and secure manner that required no cash to change hands. And he conceived of all of this at a time during which no major cellphone manufacturer had yet integrated GPS technology into any commercially available cellphones, and certainly no cellphones allowed for automatic billing for anything other than cellphone calls.

In April 2000, he filed an application for a patent on the transportation system he invented. He was awarded U.S. Patent No. 6,697,730 (the "'730 Patent") to protect his ideas, and he later incorporated RideApp ("RideApp" or "Plaintiff") to develop that transportation system.

Almost a decade after Professor Dickerson filed his patent application, defendant Motivate International Inc. ("Motivate") was formed, and, defendant Lyft, Inc. ("Lyft") was formed a few years thereafter, in 2012. Recognizing their aligned interests, earlier this year Lyft purchased Motivate. As explained herein, the core of both entities' business and technical platforms and similar technologies practice the transportation system of Professor Dickerson's invention; without that system, Lyft and Motivate literally cannot operate. Throughout their existence, they have egregiously infringed the '730 Patent without paying any compensation to Professor Dickerson, despite earning up to $1 billion in annual revenue. Professor Dickerson seeks that compensation through this lawsuit.

A.    **NATURE OF ACTION**

1.    This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code, arising from Defendant's infringement of one or more claims of United States Patent No. 6,697,730 (the "'730 Patent").

B.    **PARTIES**

2.    Plaintiff RideApp, Inc. ("RideApp") is a company organized and existing under the laws of the State of Delaware with a place of business at 227 Sandy Springs Place, Suite D-273, Sandy Springs, Georgia 30328. RideApp develops transportation system software to reduce the social costs of traffic congestion and inefficient travel, as more fully described below.

3.    Defendant Lyft, Inc. ("Lyft") is a company organized and existing under the laws of the State of Delaware but with a principal place of business at 185 Berry Street, Suite 5000, San Francisco, CA 94107. Lyft has maintained a permanent business location with at least 80

engineering, marketing, and sales employees as of then at 245 West 17th Street, New York, New York, in this judicial district, since November 2017.  Lyft's agent for service of process is CT Corporation System, 111 Eighth Avenue, New York, NY 10011.  Lyft is a privately-held, for-profit corporation that provides on-demand transportation services to individuals.

4.       Defendant Motivate International Inc. ("Motivate") is a company organized and existing under the laws of the State of Delaware with its principal place of business at 220 36th Street, Suite 3A, Brooklyn, NY 11232.  Since in or about July 2018, Motivate has been wholly owned by defendant Lyft.

## C.    JURISDICTION AND VENUE

5.       This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.       This Court has personal jurisdiction over Defendants because, *inter alia*, Lyft maintains a regular and established place of business in this judicial district, Lyft and Motivate transact business in this district and have sufficient minimum contacts within the forum as a result of their business conducted within this judicial district.  Defendants also have engaged in infringing conduct within or directed at this district.

7.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## D.    FACTS AND BACKGROUND

### 1.    Professor Dickerson Invents A Coordinated Transportation System To Minimize The Social Costs Of Traffic Congestion.

8.       Dr. Stephen Dickerson received his Sc.D. degree from MIT in 1965.  He was then hired as an Assistant Professor at Georgia Institute of Technology ("Georgia Tech") in the

George W. Woodruff School of Mechanical Engineering.  Dr. Dickerson retired from Georgia Tech as a Professor Emeritus in 1996.

9.      Around the time of his invention, Professor Dickerson had serious concerns about the social costs of urban transportation, such as traffic congestion, environmental impacts, costs of and impact on infrastructure, travel time and uncertainty, and high costs of individual transportation borne by families.  Indeed, during this period, the city of Atlanta was undergoing explosive growth, with the increasingly negative effects of traffic usually attendant to such rapid expansion.  Nearly a decade before companies like Lyft and Motivate began operations, Professor Dickerson was a pioneer in developing the radical idea of what we have come to know as ride- and vehicle-sharing services.

10.      Professor Dickerson invented an automated transit system that uses wireless, hand-held devices to hail vehicles; includes integrated global positioning system ("GPS") matching and billing for rides; provides for an automated, cash-free transaction; and, with respect to automobiles, advises both the driver and the passenger of each other's GPS location and the time at which a driver is anticipated to arrive, and with respect to shared vehicles, advises the user of the availability and location of the vehicle.

11.      In approximately August 2006, Professor Dickerson donated $1.5 million in proceeds from another invention to Georgia Tech to endow a chair for a professor to study and develop such transportation solutions.

**2.      The Patent-In-Suit Discloses An Integrated, More Efficient Transportation System.**

12.      Professor Dickerson is listed as the inventor of the '730 Patent.

13.      On February 24, 2004, the United States Patent and Trademark Office ("USPTO") issued the '730 Patent, entitled "Communications and Computing Based Urban

Transit System."  The application that issued as the '730 Patent was filed on April 4, 2001, with priority claimed to a provisional patent application U.S. Ser. No. 60/273,286, also entitled "Communications and Computing Based Urban Transit System" (filed on March 1, 2001) and originally to U.S. Ser. No. 60/194,416, entitled "Communications and Computing Based Urban Transit System" (filed on April 4, 2000).

14.     As a faculty member of Georgia Tech, Professor Dickerson was initially obligated to assign his '730 Patent to the Georgia Tech Research Corporation, and this assignment was recorded by the USPTO on April 4, 2001.  The Georgia Tech Research Corporation licensed the '730 Patent but made no effort to enforce it against any infringing parties during the time that it held the patent by assignment.

15.     In early 2018, then retired but still interested in pursuing further development of the claimed technology, Professor Dickerson was able, in discussions with the Georgia Tech Research Corporation, to have the assignment for the '730 Patent returned to him.  This was accomplished in an assignment recorded on February 20, 2018, with a corrected assignment subsequently recorded on April 26, 2018.  Professor Dickerson subsequently assigned the '730 Patent to his newly formed transportation company, RideApp, Inc., with a recording date of May 7, 2018 in the USPTO.

16.     RideApp is the current owner by assignment of all right, title, and interest in and to the '730 Patent and has standing to sue for the past, present, and future infringement of the '730 Patent.  The claims of the '730 Patent are valid and enforceable.  A true and correct copy of the '730 Patent is attached.  *See* Ex. A.

17.     The claims of the '730 Patent generally are directed to an automated transit system that integrates digital cellular communications, GPS locating technology, automatic billing

and payment, and digital computers that interface with all of the foregoing to provide real-time command and control of passengers and vehicles.

18.     The '730 Patent addresses the economic and social problems of commuting; offers transportation services to underserved communities, such as the outer boroughs of New York City; reduces pollution; reduces the costs of purchasing, maintaining, owning, operating, and insuring motor vehicles; addresses the costs of building and maintaining highways, mass transportation systems, and other infrastructure required for individual transportation vehicles; addresses the inefficiencies attendant to the fact that, by some estimates, most passenger vehicles sit, idle and unused, more than 90% of the time; and mitigates the lack of sufficient parking for individual transport vehicles at retail establishments and business centers.

19.     Traditional mass transit systems cannot solve these problems due to the high costs of installing them, particularly rail systems, which are extremely expensive to install in highly populated areas, if the necessary land and easements can even be obtained, and extremely difficult to use in less populated areas.  Further, such systems inevitably have widely-spaced travel schedules, inefficiencies, and uncertainties that make use by many consumers inefficient and time-prohibitive.

20.     The invention disclosed in the '730 Patent radically changes the logistics, economies, impacts, and efficiencies of the transportation system.  The invention generally is an automated and integrated communications and computing system that uses a central assigning system and handheld devices to provide information between the passengers of the transit system, the vehicles and/or drivers, and the central assigning system itself, which is used to move the passengers between particular originating and destination sites. "The transit system preferably integrates mass transit needs by providing wireless communications between the passengers of the

6

transit system, the vehicles, and the central assigning system and destination sites." ('730 Patent, col.3, ll.48-52)

21.      The invention allows a passenger to use a hand-carried device to request or locate a vehicle and a central assigning system that tracks the geographic position of all vehicles in real time, to dispatch a vehicle in response to the passenger's request and/or provide the location of the vehicle to the requestor for the requestor's use.  "The central assigning system is capable of maximizing efficiencies in urban transportation with the information received from and sent to the passengers and vehicles." ('730 Patent, col.4, ll.6-9.)  "The system provides passengers with the greatest flexibility and convenience consistent with relatively low economic and environmental costs through the use of wireless communications to and from passengers, vehicles and the central assigning system." ('730 Patent, col.4, ll.9-14.)

### 3.   The '730 Patent Claims A Unified Ride- And Vehicle-Sharing System.

22.      The '730 Patent includes five independent and one dependent claims.

23.      Independent claim 2 of the '730 Patent is representative.  It claims:

> *An automated system for providing unified billing for passenger transport comprising:*
>
> *(a) a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and*
> *(b) a plurality of communication devices for proving wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage; and*
> *(c) a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system.*

('730 Patent, Claim 2, col.23, l.62 - col.24, l.23.)

24.      Independent Claim 3 of the '730 Patent is also representative.  Claim 3 reads as follows:

> *An automated system for providing unified billing for passenger transport comprising:*
>
> *(a) a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and*
> *(b) a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage;*
> *(c) a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system; and*
> *(d) a wireless means of informing the passenger of the assignment and updated arrival time.*

('730 Patent, Claim 3, col.24, ll.23-37.)

25.      Finally, independent Claim 6 of the '730 Patent states:

> *An automated system for providing unified billing for passenger transport comprising:*
>
> *(a) a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and*
> *(b) a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage; and*
> *(c) a wireless means of detecting the proximity of the passenger and alerting the passenger of the proximity of the vehicle.*

('730 Patent, Claim 6, col. 24, ll. 53-65.)

26.      The remaining claims of the patent generally share these essential limitations.

**4.      Lyft's Products And Services Rely On Professor Dickerson's Invention.**

27.      Lyft was founded in 2012 as Zimride and officially launched as Lyft in 2013.  In October 2017, Lyft announced that it had given over half a billion rides, having completed the last 100 million in just three months.  Lyft also announced that it was connecting passengers with drivers over 1 million times every single day.  *See* Ex. B (available at https://blog.lyft.com/posts/2017/10/10/half-a-billion-rides-and-counting).      Reportedly,   Lyft

realized over $480 million in revenue during the first half of 2017 alone. *See* Ex. H (available at https://techcrunch.com/2017/11/30/lyft-gained-from-ubers-scandals-sees-revenue-triple/).

28.     Lyft makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that practice the claims of the '730 Patent, including but not limited to Standard Lyft, Lyft Line, Lyft Shuttle Lyft Plus, Lyft Premier, Lyft Lux, and Lyft Lux SUV (collectively, the "Accused Products and Services").

29.     The foregoing Accused Products and Services are integrated into a system comprising a technology platform and smartphone applications to connect drivers and passengers:



(Integrated Screen captures above and in paragraphs 30-32 and 44 below are illustrative of the Lyft App and the Citibike App. *See, e.g.*, https://www.lifewire.com/lyft-4156217.)

30.     A passenger uses the Lyft App to request or locate a ride and, through the Lyft App, a driver accepts the request.   *See* Ex. C (available at https://help.lyft.com/hc/en-us/articles/115013080028-How-to-give-a-Lyft-ride).   When a passenger requests a ride, the Lyft App uses GPS to provide a map and allows the passenger to set a pickup location.   *See* Ex. D (available at https://help.lyft.com/hc/en-us/articles/115013079988-How-to-request-a-ride).



31.     The Lyft App and/or technology platform wirelessly detect the proximity of the passenger and alert the passenger of the proximity of the vehicle.   *See* Ex. E (available at https://help.lyft.com/hc/en-us/articles/115013080908-How-to-get-picked-up-as-a-passenger). The Lyft App displays the driver's estimated time of arrival and notifies the passenger when the driver is about to arrive.   *Id*.



32.     The Lyft App and/or the technology platform automatically calculate the passenger's fare, and the fare automatically is charged to the payment method linked to the passenger's account and invoiced through that account.   *See* Ex. F (available at https://help.lyft.com/hc/en-us/articles/115012926507-How-to-pay-for-a-Lyft-ride).              A passenger's receipt automatically is emailed to the passenger's email address upon completion of the trip.



33.     Lyft uses a plurality of communication devices – smartphones used by the passengers and drivers, its technology platform, and applications – to provide wireless communication between passengers, vehicles, and a central data system in order to operate its passenger transit system.   *See supra* Ex. C (available at https://help.lyft.com/hc/en-us/articles/115013080028-How-to-give-a-Lyft-ride).

34.     Lyft uses a wireless means – the Lyft App and/or other applications running on smartphones – to provide on-demand allocation of a passenger to a specific vehicle through its central data system.  *See* Ex. G ("Ridesharing matches you with a nearby driver who will pick you up and take you where you want to go.") (available at https://blog.lyft.com/posts/how-does-lyft-work).

35.     Once a driver has been assigned to a ride, the Lyft App wirelessly informs the passenger of the assignment and provides information on driver proximity and arrival time.  *See supra* Ex. G ("You'll see a photo of your driver and the car, as well as their ETA.") (available at https://blog.lyft.com/posts/how-does-lyft-work).

36.     Once a passenger enters the address or name of his/her destination, the Lyft Driver App will display the suggested route for the driver to take and an estimated time of arrival:



*See supra* Ex. C (available at https://help.lyft.com/hc/en-us/articles/115013080028-How-to-give-a-Lyft-ride).  It can thus be seen that the technology disclosed in Professor Dickerson's '730 Patent is absolutely core to the way in which Lyft operates its business.

**5.**      **Motivate's Products And Services Rely On Professor Dickerson's Invention.**

37.      Motivate was founded in or around 2009 as Alta Bicycle Share, Inc., and was acquired by Lyft in or around July 2018.   From its headquarters in New York City, Motivate develops and operates bicycle-sharing networks and services in many cities in the United States under various well-known brands, such as "Citibike" in New York City.   Using the infrastructure it has deployed – including many thousands of "smart" bicycles, stations, and back-end computer systems – Motivate allows user-passengers to use their smartphones to arrange for point-to-point transportation using borrowed vehicles (*i.e.*, "smart" bicycles).   Some of the bicycles used in Motivate's bikeshare systems are exclusively pedal-powered, while others are propelled by integrated electric motors.

38.      Motivate's services have proven very popular:  in New York City alone, Motivate's users have taken more than 60 million rides since the 2013 launch of Citibike.  *See* Ex. I (available at https://www.motivateco.com/where-we-do-it/new-york-ny/).

39.      Motivate makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that practice the claims of the '730 Patent, including but not limited to services known as Citibike, Ford GoBike, BlueBikes, Divvy, Capital Bikeshare, Cogo, Biketown, and Niceride (collectively, the "Accused Bikeshare Services").

40.      Each of the foregoing Accused Bikeshare Services are integrated systems comprising a technology platform and smartphone applications to connect riders and vehicles (*i.e.*, the "smart" bicycles).  As an example, a general description of the operation of one of the Accused Bikeshare Services, Citibike, follows:



(*See*  Ex. J (available at https://www.citibikenyc.com/how-it-works/app.)

41.     A user utilizes the Citibike App to locate a bicycle near where the user intends to start a trip.  *Id*.  The Citibike App uses GPS and the Motivate technology platform to identify the locations of the user and one or more bicycles available for allocation to the user, which may be either "docked" at a fixed station, or simply free-standing in a public area, such as a sidewalk.

42.     The Citibike App and Motivate technology platform wirelessly detect the proximity of the user and alert the user of the proximity of the bicycle or dock station.  *See* Ex. K (available at https://www.citibikenyc.com/how-it-works/docklessbronx).

43.     The Citibike App and Motivate technology platform also allow a user to enter a destination, and inform the user of an estimated time of trip, and, for vehicles that are stored in

dock stations, the drop-off location nearest the user's destination.   *See* Ex. L (available at https://www.citibikenyc.com/how-it-works/rules-of-the-road).

44.      Once a user commences a trip on a Citibike bicycle, the Motivate technology platform ensures that the allocated bicycle is not available for allocation to another user.   The bicycle only becomes available for re-allocation once the current user's trip has been completed.



45.      The Citibike App and/or the Motivate technology platform also "push" notifications and information to a user during a trip, including elapsed time, turn-by-turn

directions, location and destination information, and trip end confirmation.  *See* Ex. J (available at https://www.citibikenyc.com/how-it-works/app).

46.     The Citibike App and/or the Motivate technology platform automatically calculate the user's fare for the trip, and the fare automatically is charged to the payment method linked to the user's account and invoiced through that account.     *See* Ex. M     (available at https://www.citibikenyc.com/pricing).  Trips and payment receipt info are logged and accessible in a user's account, either through the Citibike App or website.  Users have the ability to choose fixed periodic billing (e.g., yearly) if desired.

47.     Motivate uses a plurality of communication devices in connection with all of the Accused Bikeshare Services, including Citibike, to provide wireless communication between user-passengers, the smart bicycles, and central data systems in order to operate its passenger transit systems.  These devices include smartphones used by the users and system maintainers/operators, electronic equipment built-in to the bicycles and docking stations to allow for tracking, identification, trip activation/completion, and billing.

48.     Motivate uses a wireless means – applications running on smartphones and other infrastructure – to provide on-demand allocation of users to available bicycles through its central data system.  *See* Ex. N (available at https://www.citibikenyc.com/how-it-works).  The technology disclosed in Professor Dickerson's '730 Patent is thus core to the way in which Motivate operates its business.

## COUNT I

### (Direct Infringement of the '730 Patent pursuant to 35 U.S.C. § 271(a))

### (Claim 2)

49.     Plaintiff hereby incorporates by reference the allegations of Paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     Defendants have directly infringed, literally or under the doctrine of equivalents, and continue to infringe, Claim 2 of the '730 Patent in this judicial district, in the State of New York, and throughout the United States under 35 U.S.C. § 271(a) by making, using, importing, selling, and/or offering for sale in the United States, without license, the Accused Products and Services and the Accused Bikeshare Services.

51.     Claim 2 reads as follows:

*An automated system for providing unified billing for passenger transport comprising:*

>  *(a)  a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and*
>  *(b)  a plurality of communication devices for proving wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage; and*
>  *(c)  a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system.*

('730 Patent, Claim 2, col.23, l.62 - col.24, l.23.)  The specific features that meet these limitations are referenced below.

18

52.     The Accused Products and Services and the Accused Bikeshare Services are an "*automated system for providing unified billing for passenger transport.*" (*See* Paragraphs 27-32; 41-46.)[1]

53.     The Accused Products and Services and the Accused Bikeshare Services comprise "*a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage.*" (*See* Paragraphs 29-30; 41-48.)

*54.*     The Accused Products and Services and the Accused Bikeshare Services comprise "*a plurality of communication devices for proving wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage.*" (*See* Paragraphs 33-36; 47-48.)

55.     The Accused Products and Services and the Accused Bikeshare Services include "*a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system.*" (*See* Paragraphs 29-36; 41-44.)

56.     Defendants' infringement of the '730 Patent has injured Plaintiff and will continue to cause severe and irreparable damage as long as Defendants' infringing activities continue.

57.     Plaintiff is entitled to recover damages adequate to compensate it for the injuries complained of herein but, in no event, no less than a reasonable royalty.

---

[1] These refer to the averments contained in the referenced paragraphs of this Complaint, *see supra*, which describe and establish infringement by the Lyft Accused Products and Services and the Motivate Accused Bikeshare Services.

## COUNT II

**(Indirect Infringement of the '730 Patent pursuant to U.S.C. 35 U.S.C. § 271(b))**

**(Claim 2)**

58.     Plaintiff hereby incorporates by reference the allegations of Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     As set forth above, Defendants directly infringed the '730 Patent in this judicial district, in the State of New York, and throughout the United States.

60.     Lyft's Accused Products and Services are "bundled up into a platform" in the form of the Lyft App, the Lyft Rider App, and the Lyft Driver App, all of which allow passengers to contact drivers and others.  (*See* Paragraphs 28-33.)  Lyft induces passengers, drivers, and others to download this platform in the form of a smartphone application to allow drivers and passengers to use the Accused Products and Services.

61.     Similarly, Motivate's Accused Bikeshare Services are "bundled up into a platform" in the form of Motivate's software (*e.g.*, the Citibike App), which allows users to connect with shared bicycles.  (*See* Paragraphs 41-45.)  Motivate induces users to download this platform in the form of a smartphone application to allow them to use the Accused Bikeshare Services.

62.     Defendants have indirectly infringed, literally or under the doctrine of equivalents, and continue to infringe, claim 2 of the '730 Patent within this judicial district, in the State of New York, and throughout the United States under 35 U.S.C. § 271(b) by inducing, instructing, directing, controlling, advertising, and/or requiring others to directly infringe claim 2 of the '730 Patent, including customers, purchasers, users, developers, passengers, drivers, and users of the Accused Products and Services and the Accused Bikeshare Services.

63.      Plaintiff has suffered, and will continue to suffer, substantial and irreparable harm if Defendants are not enjoined from infringing the '730 Patent.

64.      Plaintiff has no adequate remedy at law.

65.      Plaintiff is further entitled to have Defendants enjoined from inducing future acts of infringement that will subject Plaintiff to irreparable harm.

## COUNT III

**(Direct Infringement of the '730 Patent pursuant to U.S.C. 35 U.S.C. § 271(a))**

**(Claim 3)**

66.      Plaintiff hereby incorporates by reference the allegations of Paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.      Defendants have directly infringed, literally or under the doctrine of equivalents, and continue to infringe, claim 3 of the '730 Patent in this judicial district, in the State of New York, and throughout the United States under 35 U.S.C. § 271(a) by making, using, importing, selling, and/or offering for sale in the United States, without license, infringing products and services.

68.      Claim 3 of the '730 Patent claims:

*An automated system for providing unified billing for passenger transport comprising:*

*(a)      a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and*

*(b)      a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage;*

*(c)      a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system; and*

*(d)      a wireless means of informing the passenger of the assignment and updated expected arrival time.*

('790 Patent, Claim 3, col.24, ll.23-35.)  The specific features that meet these limitations are set forth below.

69.     The Accused Products and Services and the Accused Bikeshare Services comprise an "*automated system for providing unified billing for passenger transport*."  (*See* Paragraphs 27-32; 41-46.)

70.     The Accused Products and Services and the Accused Bikeshare Services provide "*a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage*."  (*See* Paragraphs 29-36; 41-48.)

71.     The Accused Products and Services and the Accused Bikeshare Services comprise "*a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage*."  (*See* Paragraphs 33-36; 47-48.)

72.     The Accused Products and Services and the Accused Bikeshare Services comprise "*a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system*."  (*See* Paragraphs 29-36; 41-44.)

73.     The Accused Products and Services and the Accused Bikeshare Services comprise "*a wireless means of informing the passenger of the assignment and updated expected arrival time*."  (*See* Paragraphs 29-36; 44-45.)

74.     Defendants' infringement of the '730 Patent has injured Plaintiff and will continue to cause severe and irreparable damage as long as Defendants' infringing activities continue.

75.     Plaintiff is entitled to recover damages adequate to compensate it for the injuries complained of herein but, in no event, no less than a reasonable royalty.

76.     Plaintiff has suffered, and will continue to suffer, substantial and irreparable harm if Defendants are not enjoined from infringing the '730 Patent.

77.     Plaintiff has no adequate remedy at law.

78.     Plaintiff is further entitled to have Defendants enjoined from committing future acts of infringement that will subject Plaintiff to irreparable harm.

## COUNT IV

**(Indirect Infringement of the '730 Patent pursuant to U.S.C. 35 U.S.C. § 271(b))**

**(Claim 3)**

79.     Plaintiff hereby incorporates by reference the allegations of Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.     As set forth above, Defendants directly infringed, and continue to infringe, claim 3 of the '730 Patent.

81.     Lyft's Accused Products and Services are "bundled up into a platform" in the form of the Lyft App, the Lyft Rider App, and the Lyft Driver App, all of which allow passengers to contact drivers and others.  (*See* Paragraphs 28-33.)  Lyft induces passengers, drivers, and others to download this platform in the form of a smartphone application to allow drivers and passengers to use the Accused Products and Services.

82.     Similarly, Motivate's Accused Bikeshare Services are "bundled up into a platform" in the form of Motivate's software (*e.g.*, the Citibike App), which allows users to connect with shared bicycles.  (*See* Paragraphs 41-45.)  Motivate induces users to download this platform in the form of a smartphone application to allow them to use the Accused Bikeshare Services.

23

83.     Defendants have indirectly infringed, literally or under the doctrine of equivalents, and continue to infringe, claim 3 of the '730 Patent within this judicial district, in the State of New York, and throughout the United States under 35 U.S.C. § 271(b) by inducing, instructing, directing, controlling, advertising, and/or requiring others to directly infringe, without license, claim 3 of the '730 Patent, including customers, purchasers, users, developers, passengers, drivers, and users of the Accused Products and Services and the Accused Bikeshare Services.

84.     Plaintiff has suffered, and will continue to suffer, substantial and irreparable harm if Lyft is not enjoined from infringing the '730 Patent.

85.     Plaintiff has no adequate remedy at law.

86.     Plaintiff is further entitled to have Defendants enjoined from inducing future acts of infringement that will subject Plaintiff to irreparable harm.

## COUNT V

### (Direct Infringement of the '730 Patent pursuant to U.S.C. 35 U.S.C. § 271(a))

### (Claim 6)

87.     Plaintiff hereby incorporates by reference the allegations of Paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88.     Defendants have directly infringed, literally or under the doctrine of equivalents, and continue to infringe, claim 6 of the '730 Patent in this judicial district, in the State of New York, and throughout the United States under 35 U.S.C. § 271(a) by making, using, importing, selling, and/or offering for sale in the United States, without license, infringing products and services.

89.     Defendants have directly infringed, literally or under the doctrine of equivalents, and continue to infringe, claim 6 of the '730 Patent in this judicial district, in the State of New

York, and throughout the United States under 35 U.S.C. § 271(a) by making, using, importing, selling, and/or offering for sale in the United States, without license, infringing products and services.

90.     Claim 6 of the '730 Patent reads as follows:

> *An automated system for providing unified billing for passenger transport comprising:*
>
> (a)     *a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage; and*
> (b)     *a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage; and*
> (c)     *a wireless means of detecting the proximity of the passenger and alerting the passenger of the proximity of the vehicle.*

('730 Patent, Claim 6, col.24, ll.53-65.)  The specific features that meet these limitations are set forth below.

91.     The Accused Products and Services and the Accused Bikeshare Services comprise an "*automated system for providing unified billing for passenger transport.*"  (*See* Paragraphs 27-32; 41-46.)

92.     The Accused Products and Services and the Accused Bikeshare Services comprise an "*a central data system for tracking passenger transportation vehicle usage and distributing periodic invoices for the usage.*"  (*See* Paragraphs 29-36; 41-48.)

93.     The Accused Products and Services and the Accused Bikeshare Services comprise "*a plurality of communication devices for providing wireless communication between passengers, vehicles, and the central data system in connection with the passenger transportation vehicle usage.*"  (*See* Paragraphs 33-36; 47-48.)

94.     The Accused Products and Services and the Accused Bikeshare Services comprise an "*a wireless means of detecting the proximity of the passenger and alerting the passenger of the proximity of the vehicle.*" (*See* Paragraphs 29-36; 41-42.)

95.     Defendants' infringement of the '730 Patent has injured Plaintiff and will continue to cause severe and irreparable damage as long as Lyft's infringing activities continue.

96.     Plaintiff is entitled to recover damages adequate to compensate it for the injuries complained of herein but, in no event, no less than a reasonable royalty.

97.     Plaintiff has suffered, and will continue to suffer, substantial and irreparable harm if Lyft is not enjoined from infringing the '730 Patent.

98.     Plaintiff has no adequate remedy at law.

99.     Plaintiff is further entitled to have Lyft enjoined from committing future acts of infringement that will subject Plaintiff to irreparable harm.

## COUNT VI

**(Indirect Infringement of the '730 Patent pursuant to U.S.C. 35 U.S.C. § 271(b))**

**(Claim 6)**

100.     Plaintiff hereby incorporates by reference the allegations of Paragraphs 1 through 99 of this Complaint as if fully set forth herein.

101.     As set forth above, Defendants directly infringed and continue to infringe Claim 6 of the '730 Patent within this judicial district, in the State of New York, and throughout the United States.

102.     Lyft's Accused Products and Services are "bundled up into a platform" in the form of the Lyft App, the Lyft Rider App, and the Lyft Driver App, all of which  allow passengers to contact drivers and others.  (*See* Paragraphs 28-33.)  Lyft induces passengers, drivers, and others

to download this platform in the form of a smartphone application to allow drivers and passengers to use the Accused Products and Services.

103.    Similarly, Motivate's Accused Bikeshare Services are "bundled up into a platform" in the form of Motivate's software (*e.g.*, the Citibike App), which allows users to connect with shared bicycles.  (*See* Paragraphs 41-45.)  Motivate induces users to download this platform in the form of a smartphone application to allow them to use the Accused Bikeshare Services.

104.    Defendants have indirectly infringed, literally or under the doctrine of equivalents, and continue to infringe claim 6 of the '730 Patent within this judicial district, in the State of New York, and throughout the United States under 35 U.S.C. § 271(b) by inducing, instructing, directing, controlling, advertising, and/or requiring others to directly infringe, without license, claim 6 of the '730 Patent, including customers, purchasers, users, developers, drivers, and users of the Accused Products and Services and the Accused Bikeshare Services.

## DEMAND FOR JURY TRIAL

105.    Plaintiff demands that all issues be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment in its favor and against Defendants and respectfully request the following relief:

A.    A judgment declaring that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of U.S. Patent No. 6,697,730;

B.    A finding that Defendants' infringement of the '730 Patent has been willful and a judgment for enhanced damages;

C.    A permanent injunction enjoining Defendants, their officers, agents, servants, employees, representatives, licensees, successors, assigns, and all those in privity, active concert, or participation with any of them from further infringement, inducting the infringement, and contributing to the infringement of the '730 Patent;

D.     A judgment awarding Plaintiff damages adequate to compensate for Defendants' infringement;

E.     Pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

F.     Attorneys' fees in this action as an exceptional case pursuant to 35 U.S.C. § 285;

G.     Costs and expenses in this action; and

H.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,


Dated:  September 28, 2018                    */s/ Marc E. Kasowitz*
                                              Marc E. Kasowitz
                                              mkasowitz@kasowitz.com
                                              Daniel R. Benson
                                              dbenson@kasowitz.com
                                              Stephen W. Tountas
                                              stountas@kasowitz.com

                                              KASOWITZ BENSON TORRES LLP
                                              1633 Broadway
                                              New York, New York 10019
                                              Tel. (212) 506-1700
                                              Fax. (212) 506-1800

                                              Jeffrey J. Toney (*pro hac vice*)
                                              jtoney@kasowitz.com
                                              Ralph E. Gaskins (*pro hac vice*)
                                              rgaskins@kasowitz.com
                                              Paul G. Williams (*pro hac vice*)
                                              pwilliams@kasowitz.com

                                              KASOWITZ BENSON TORRES LLP
                                              1349 W. Peachtree Street, N.W., Suite 1500
                                              Atlanta, Georgia 30309
                                              Tel. (404) 260-6080
                                              Fax. (404) 260-6081

                                              *Attorneys for Plaintiff RideApp, Inc.*