**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIDEAPP, INC. | Case No. 1:18-CV-06625-LGS |
| Plaintiff, | |
| v. | |
| LYFT, INC. | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LYFT, INC.'S
MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF
CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.  Introduction ............................................................................................................. 1

II.  Statement of Facts .................................................................................................... 1

    A. Background ............................................................................................................ 1

    B. Lyft Is Based in California and Its Presence in the Southern District of New York is At Most Incidental to This Case ............................................................................ 2

    C. RideApp is a Delaware Corporation with No Ties to New York ................................. 4

III.  Argument ................................................................................................................. 5

    A. Legal Standard ....................................................................................................... 5

    B. Transfer is Warranted Under 28 U.S.C. § 1404(a) ...................................................... 6

        1.  RideApp Could Have Filed this Action in the Northern District of California ...... 7

        2.  The Balance of Transfer Factors Weighs Heavily in Favor of Transfer ................ 8

        3.  In a Patent Case, the Forum's Familiarity with the Governing Law Is Given Little Weight in Federal Courts .................................................................................. 18

IV.  Conclusion ............................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
  457 F. Supp. 2d 474 (S.D.N.Y. 2006)...................................................................................18

*AVEMCO Ins. Co. v. GSV Holding Corp.*,
  No. 96-cv-8323 (LAP), 1997 WL 566149 (S.D.N.Y. Sept 11, 1997) ...................................14

*Azari v. B&H Photo Video*,
  No. 06-cv-7825 (DLC), 2007 WL 13101 (S.D.N.Y. Jan. 3, 2007) ...........................11, 16, 17

*Berman v. Informix Corp.*,
  30 F. Supp. 2d 653 (S.D.N.Y. 1998)....................................................................................15

*Bionx Implants, Inc. v. Biomet, Inc.*
  No. 99-cv-740 (WHP), 1999 WL 342306 (S.D.N.Y. May 27, 1999)....................................15

*Burgess v. Gerbing*,
  No. 15-cv-9256, 2017 WL 2992208 (S.D.N.Y. July 13, 2017).................................................6

*Coding Techs., LLC, v. Flipboard Inc.*,
  No. 17-cv-7783 (LGS), ECF No. 34 (S.D.N.Y. Jan. 17, 2018)................................................6

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006)...............................................................................................5, 6

*Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.*,
  No. 07-cv-975 (HB), 2007 WL 2068107 (S.D.N.Y. July 19, 2007).......................................11

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
  928 F. Supp. 2d 735 (S.D.N.Y. 2013)..................................................................................12

*Gross v. British Broad. Corp.*,
  386 F.3d 224 (2d Cir. 2004)................................................................................................17

*Hernandez v. Graebel Van Lines*,
  761 F. Supp. 983 (E.D.N.Y. 1991) .....................................................................................13

*Hix v. Morgan Stanley & Co. LLC*,
  No. 15-cv-217 (LTS) (JCF), 2015 WL 1726548 (S.D.N.Y. Apr. 15, 2015) ...........................17

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
  565 B.R. 241 (S.D.N.Y. 2017)..............................................................................................5

*In re CenturyLink, Inc. Sec. Litig.*,
No. 13-cv-3839 (LTS), 2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) ...................................5

*In re H.P. Inc.*,
No. 2018-149, slip op. (Fed. Cir. September 25, 2018) ............................................................10

*In re Link-A-Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011) ................................................................................................16

*Invivo Research v. Magnetic Resonance Equipment Corp.*,
119 F. Supp. 2d 433 (S.D.N.Y. 2000) ......................................................................................18

*It's a 10, Inc. v. PH Beauty Labs, Inc.*,
718 F. Supp. 2d 332 (S.D.N.Y. 2010) ......................................................................................15

*Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*,
No. 08-cv-8106 (PGG), 2009 WL 2252116 (S.D.N.Y. July 28, 2009) ...................................14

*IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*,
No. 14-cv-4355 (RJS), 2015 WL 4720293 (S.D.N.Y. Aug. 6, 2015) .....................................17

*Jackson v. Avis Rent A Car Sys., LLC*,
No. 14-cv-1658 (LLS), 2015 WL 1004299 (S.D.N.Y. Mar. 6, 2015) ..........................8, 13, 16

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014) ........................................................................................12

*McGraw-Hill Cos. Inc. v. Jones*,
No. 12-cv-7085 (AJN), 2014 WL 988607 (S.D.N.Y. Mar. 12, 2014) .......................................8

*Millennium, L.P. v. Hyland Software, Inc.*,
No. 03-cv-3900 (DC), 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ...................................16

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
599 F.3d 102 (2d Cir. 2010) .................................................................................................5, 6

*Romano v. Banc of Am. Ins. Servs.*,
528 F. Supp. 2d 127 (E.D.N.Y. 2007) .....................................................................................12

*Rosen v. Ritz-Carlton Hotel Co. LLC*,
No. 14-cv-1385 (RJS), 2015 WL 64736 (S.D.N.Y. Jan. 5, 2015) ..........................................14

*Sentegra, LLC v. Asus Comput. Int'l*,
No. 1:15-cv-3768-GHW, 2016 WL 3093988 (S.D.N.Y. June 1, 2016) ............8, 12, 14, 16, 18

*Simpson v. Rodas*,
No. 10-cv-6670 (CS), 2012 WL 4354832 (S.D.N.Y. Sept. 21, 2012) .....................................17

*Smart Skins LLC v. Microsoft Corp.*,
  No. 14-cv-10149 (CM), 2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015) ........................ 8-9, 18

*Toy Biz, Inc. v. Centuri Corp.*,
  990 F. Supp. 328 (S.D.N.Y. 1998) ....................................................................................15

*Walker v. Jon Renau Collection, Inc.*,
  423 F. Supp. 2d 115 (S.D.N.Y. 2005)...............................................................................14

*Whitehaus Collection v. Barclay Prods., Ltd.*,
  No. 11-cv-217, 2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011)...........................................5, 14

## STATUTES

28 U.S.C. § 1331 ...................................................................................................................8

28 U.S.C. § 1338(a) ..............................................................................................................8

28 U.S.C. § 1391 ............................................................................................................... 7-8

28 U.S.C. § 1400(b) ...........................................................................................................7, 8

28 U.S.C. § 1404................................................................................................................1

28 U.S.C. § 1404(a) .................................................................................................. *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii)............................................................................... 11-12

## I.  INTRODUCTION

Defendant Lyft, Inc. ("Lyft") respectfully requests that the Court exercise its discretion under 28 U.S.C. § 1404 to transfer this case to the Northern District of California, which is a more convenient venue for this matter.  Lyft is, and always has been, headquartered in the San Francisco Bay Area, and Plaintiff RideApp has no ties to New York other than this case.  The accused products and services were developed in the Northern District of California. The relevant party and non-party witnesses are located in the Northern District of California—and any necessary nonparty witnesses in California cannot be subpoenaed by this Court.

Because the factors overwhelmingly favor transfer, and for the reasons set forth below, Lyft respectfully requests that the Court exercise its discretion and transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## II.  STATEMENT OF FACTS

### A.  Background[1]

Plaintiff RideApp, Inc. ("RideApp") alleges that products and services developed by Lyft infringe certain claims of U.S. Patent No. 6,697,730 (the "'730 Patent").  The "Accused Products and Services" include various ride-sharing services offered through "a system comprising a

---

[1] Concurrent with Lyft's filing of the present motion, RideApp filed an Amended Complaint (Dkt. No. 29) naming Motivate International Inc. ("Motivate") as an additional defendant. RideApp's Amended Complaint is a blatant attempt to manipulate the balance of transfer factors for the parties involved.  RideApp made no mention of adding additional parties to the case at the initial conference or in the joint case management statement, and RideApp could have sued Motivate when it initially filed suit against Lyft.  Instead, RideApp waited until learning of Lyft's intentions to file the present motion before naming Motivate.  Lyft respectfully requests the Court reject RideApp's attempt to manipulate the transfer factors in this case and disregard RideApp's First Amended Complaint in determining whether to transfer this case to the Northern District of California.

- 1 -

technology platform and smartphone applications," referred to in the Complaint as the "Lyft App." Compl. (Dkt. No. 1) at ¶¶ 26–34.

### B.  Lyft Is Based in California and Its Presence in the Southern District of New York is At Most Incidental to This Case

Lyft's headquarters and main office are located in the Northern District of California, and its other primary offices for engineering are on the West Coast.  Declaration of Jatin Chopra ("Chopra Decl."), dated September 28, 2018, at ¶¶ 4–5.  Since its founding, Lyft has maintained its headquarters in the San Francisco Bay Area, which is in the Northern District of California. *Id*. at ¶ 4.  Lyft employs more than 2000 people on the West Coast, including over 1800 people in the San Francisco Bay Area.  *Id.* at ¶ 5.  This total includes more than 600 employees in Lyft's engineering organization who work in the San Francisco Bay Area and more than 140 more who work in Seattle, representing more than 90% of Lyft's engineering organization.  *Id.*  Lyft maintains other offices along the West Coast that are home to Lyft engineers, including an office in Palo Alto, California.  *Id.* at ¶¶ 5–7.

Employees with primary knowledge of the design, development, and implementation of the Lyft App reside and work in the San Francisco Bay Area.  Chopra Decl. at ¶ 7.  In addition to housing its engineers, the San Francisco Bay Area is home to Lyft's executives and management team for the Lyft App.  *Id.*  Key decisions concerning the design, structure, features, and content of the Lyft App (including the ride-sharing system) have been and continue to be overseen in the Northern District of California.  *Id.*  The implementation of these top-level decisions is carried out at the direction of Lyft managers, team leads, and other employees based in San Francisco. *Id.*  For example, all the engineering directors and managers for the locations, billing platform, pricing, and dispatch groups are based in San Francisco, California.  *Id.*  Further, for each of the

specific teams within Lyft whose work is most likely relevant to this case, all or almost all of the engineers on the given team are located in San Francisco:

- All engineers on Lyft's Locations team are located in San Francisco. *Id.*

- All engineers on Lyft's Billing Platform team are located in San Francisco. *Id.*

- More than 94% of engineers on Lyft's Pricing team are located in San Francisco. *Id.*

- More than 65% of engineers on Lyft's Dispatch team are located in San Francisco. *Id.*

In contrast, Lyft's non-California and non-West Coast office locations are primarily directed to functions other than developing Lyft's rideshare software. Chopra Decl. at ¶ 6. Lyft has opened offices in various cities around the country that provide local support for drivers or fulfill business development and community outreach roles in nearby areas. *Id.* For example, Lyft maintains a small office in Long Island City, New York. *Id.* No engineers are based in that office. *Id.* Another office, opened last year in Manhattan, is the home office for only approximately 50 engineering employees whose work is overseen by personnel in the San Francisco headquarters. *Id.* Personnel in the San Francisco Bay Area ultimately oversee all engineering and design work related to Lyft rideshare software. *Id.* at ¶ 5*; see also id.* at ¶ 7. Although rides are provided by drivers in New York City and other cities around the country, these services are provided through the Lyft App, which was designed and is managed by employees based in California. *See id.* at ¶¶ 5–7.

The vast majority of employee witnesses whose testimony may be necessary for this case live and work in San Francisco. Chopra Decl. at ¶¶ 5, 7. These witnesses include employees that have knowledge of the design, development, and implementation of the accused Lyft App. *Id.*

Lyft also may call as trial witnesses former employees who likely work and reside in the San Francisco Bay Area.  The San Francisco Bay Area is the major market for software engineers—employees who leave an employer in the area tend to stay in the area.  Many of Lyft's former employees are knowledgeable about the design, development and implementation Lyft rideshare software, and their testimony may be necessary to explain technical aspects of the Lyft App.  Such individuals are likely still located in the San Francisco Bay Area.

Furthermore, the testimony of several California-based corporate non-parties may be required in this case.  Accused features of the Lyft App incorporate and rely on systems and services developed by corporate non-parties who are likely the best sources of information regarding the technical details of these systems.  Chopra Decl. at ¶ 8.  These systems include billing and payment systems developed by Stripe, Inc., a payment processing company based in San Francisco, California and mapping and navigation services provided by Google, LLC, based in Mountain View, California, in the Northern District of California.  *Id.*  For example, the Lyft App incorporates mapping functions from Google Maps, provided by Google, LLC, and mapping and navigation features from Waze, now owned by Google, LLC.  *Id.*

Because key decisions regarding the design, development, and implementation of the Lyft App are made in the San Francisco Bay Area, physical records regarding these decisions are likely also in the San Francisco Bay Area.  *See id.* at ¶¶ 5, 7.  Furthermore, Lyft's documents, records, emails, and other related systems are accessed at Lyft's San Francisco headquarters.

### C.  RideApp is a Delaware Corporation with No Ties to New York

Plaintiff RideApp has no apparent ties to New York other than the filing of this lawsuit in this District.  RideApp is a foreign corporation, organized this year under the laws of the State of Delaware, with a place of business in Georgia.  Compl. at ¶ 2, 14.  RideApp was recently

incorporated by Georgia Tech Professor Emeritus Stephen Dickerson to exploit the '730 Patent, of which he is the only named inventor. *Id.* RideApp does not appear to have any products, or employees other than Prof. Dickerson, and Prof. Dickerson still appears to reside in Georgia.

## III.   ARGUMENT

### A.  Legal Standard

A district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . . transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  Courts in this district have held that § 1404(a) sets forth a two-part test: "First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent. . . . Second, the transfer must be in the interest of justice and convenience of the parties and witnesses." *In re CenturyLink, Inc. Sec. Litig.*, No. 13-cv-3839 (LTS), 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (alterations omitted) (quoting *Whitehaus Collection v. Barclay Prods., Ltd.*, No. 11-cv-217, 2011 WL 4036097, at *1 (S.D.N.Y. Aug. 29, 2011)).  The party moving for a change of venue bears the burden of showing that transfer is warranted. *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 250 (S.D.N.Y. 2017) (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).

District courts have "broad discretion" in determining whether transfer would be convenient and consider both convenience and fairness on a case-by-case basis. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  In determining whether to grant a motion to transfer venue, courts in this district consider the following factors:

    (1) the plaintiff's choice of forum,
    (2) the convenience of witnesses,

> (3) the location of relevant documents and relative ease of access to sources of proof,
> (4) the convenience of parties,
> (5) the locus of operative facts,
> (6) the availability of process to compel the attendance of unwilling witnesses, and
> (7) the relative means of the parties.

*N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (quoting *D.H. Blair & Co.*, 462 F.3d at 106–07); *accord Coding Techs., LLC, v. Flipboard Inc.*, No. 17-cv-7783 (LGS), ECF No. 34 at 2 (S.D.N.Y. Jan. 17, 2018).  Courts also consider "the forum's familiarity with the governing law" and "trial efficiency and the interests of justice, based on the totality of the circumstances." *Burgess v. Gerbing*, No. 15-cv-9256, 2017 WL 2992208, at *9 (S.D.N.Y. July 13, 2017).

This Court has recently held that transfer to the Northern District of California was appropriate under similar circumstances.  *See Coding Techs., LLC, v. Flipboard Inc.*, No. 17-cv-7783 (LGS) ECF No. 34 (S.D.N.Y. Jan. 17, 2018).  In *Coding Techs., LLC,* as here, the plaintiff was an out-of-state corporation with no ties to either the transferor or transferee jurisdiction.  *Id.* at 1.  As in this case, the defendant-movant had its primary place of business in the Northern District of California and had no significant ties to the Southern District of New York.  *Id.*  All identified witnesses resided outside the Southern District of New York, and the defendant's employee witnesses resided on the West Coast.  *Id.* at 3.  Similarly, the "locus of operative facts," including the location of all decisions concerning the "design, structure, features, and content" of the accused product, was in California.  *Id.* at 4.  This Court recognized that these facts favored transfer for the convenience of the parties.  As detailed in the following sections, the same is true here.

### B.  Transfer is Warranted Under 28 U.S.C. § 1404(a)

Transfer is warranted in this case because the development of the accused product occurred in San Francisco, California, where Lyft is based, and the transfer factors favor transfer.

RideApp acknowledges that Lyft's principal place of business is in San Francisco, California, located within the Northern District of California.  Compl. ¶ 3.  Lyft designs, builds, and manages the Lyft App from its San Francisco headquarters.  Chopra Decl. at ¶ 4, 7.  A key issue in this case will be whether products developed by Lyft infringe the asserted patent by practicing each claimed element of the '730 Patent as alleged.

RideApp therefore could have brought this action in the Northern District of California, meeting the threshold question for transfer under § 1404(a).  With respect to the transfer factors, listed above, the balance of convenience strongly weighs in favor of transfer to the Northern District of California.  In particular, transfer would be far more convenient for Lyft and nearly all potential party and non-party witnesses, without materially increasing the inconvenience to RideApp or any potential witnesses.  Without the requested transfer, a significant number of critical non-party witnesses cannot be compelled to testify at trial.  *Infra* Section III.B.2.b.  As a result, the Court should transfer this action to the Northern District of California.

1.  <u>RideApp Could Have Filed this Action in the Northern District of California</u>

This matter could have been brought in the Northern District of California because venue is proper there and the transferee court would have personal and subject matter jurisdiction over the action.  "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

This standard is unquestionably met here—Lyft's San Francisco headquarters, a "regular and established" business, is squarely in the Northern District of California.  Lyft employs over 1800 people in the Northern District of California, including the vast majority of the engineers who worked on the Lyft App and its features at issue in this action.  Chopra Decl. at ¶ 5.  The

Northern District of California would be an appropriate, and far more convenient venue.  *See* 28 U.S.C. §§ 1391, 1400(b).  Additionally, the Northern District of California would have subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a).  Accordingly, RideApp could have filed this case in the Northern District of California.

2.   The Balance of Transfer Factors Weighs Heavily in Favor of Transfer

The balance of transfer factors, particularly the convenience of witnesses, locus of operative facts, convenience of parties, and location of documents, strongly favors transfer to the Northern District of California.  The remaining factors are neutral or should be given little weight.  The evidence clearly shows that transfer would increase convenience to Lyft and nearly all potential witnesses without materially increasing inconvenience to RideApp, especially considering its lack of ties to the Southern District of New York.  Therefore, Lyft has met its burden to show that transfer is appropriate, and Lyft respectfully requests the Court to exercise its discretion and transfer this case to the Northern District of California.

a)   *California Is Home to Multiple Party and Non-Party Witnesses*

The Northern District of California would be much more convenient than the Southern District of New York for the vast majority of likely witnesses in this case.  "Courts typically regard the convenience of witnesses as **the most important factor** in considering a § 1404(a) motion to transfer."  *Sentegra, LLC v. Asus Comput. Int'l*, No. 1:15-cv-3768-GHW, 2016 WL 3093988 at *2 (S.D.N.Y. June 1, 2016) (emphasis added) (quoting *Jackson v. Avis Rent A Car Sys., LLC*, No. 14-cv-1658 (LLS), 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015)).  Courts "weigh[] more heavily the convenience of non-party witnesses than party witnesses . . . ." *McGraw-Hill Cos. Inc. v. Jones*, No. 12-cv-7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014) (citations omitted).  In particular, "[i]n the context of a patent infringement suit, a court

should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions." *Smart Skins LLC v. Microsoft Corp.*, No. 14-cv-10149 (CM), 2015 WL 1499843, at *6 (S.D.N.Y. Mar. 27, 2015) (citations omitted).

Transfer would enable Lyft to subpoena relevant non-party witnesses who would otherwise be outside the subpoena power of this District.  Although the current breadth of RideApp's allegations make it difficult to determine precisely which former employees may be required, employees who may be able to provide testimony in this lawsuit likely still work and reside in the San Francisco Bay Area.  In addition, accused features of the Lyft App rely on systems and services developed by non-parties located in the Northern District of California.  *Id.* at ¶ 8.  These include billing and payment features developed by Stripe, Inc. and mapping and navigation systems maintained by Google, LLC.  *Id*.  All these non-parties are based in the Northern District of California.  *Id*.  These non-parties are the best sources of information as to how these features operate.  Because billing, navigation, and mapping features are related to the claims of the '730 Patent, the testimony of these non-parties may be essential to Lyft's non-infringement defenses.  As discussed *infra* in Section III.B.2.b, because of the geographically limited subpoena power of district courts, if forced to go to trial in this District, Lyft would have no available mechanism to compel the attendance of these important witnesses.  Lyft also expects to rely on discovery from these third-parties regarding their respective services.

Transfer to the Northern District of California, where Lyft's potential technical witnesses knowledgeable about the accused products reside, would be considerably more convenient than the Southern District of New York for those witnesses.  Chopra Decl. at ¶¶ 1, 5–7.  These witnesses include engineers and managers with information regarding the design, development, and implementation of the accused Lyft App. *See id*. at ¶¶ 5, 7.  All of Lyft's potential employee

witnesses work on the West Coast, primarily at Lyft's San Francisco headquarters in the Northern District of California.  *Id.* at ¶¶ 5–7.  Further, any employee witnesses whose knowledge becomes apparent later in this case will almost certainly be located in San Francisco. As discussed in the facts section, for the teams whose work appears most relevant to this case (Locations, Billing Platform, Pricing, and Dispatch) all or almost all of the engineers on those teams are located in San Francisco.  Chopra Decl. at ¶ 7.

Because Lyft's employee witnesses, engineers who are members of relevant teams, and the vast majority of its employees generally are located in the San Francisco Bay Area, transfer would be more convenient for Lyft's witnesses.  Such witnesses would otherwise face the disruption of traveling across the country to provide technical testimony.  The Federal Circuit recently held that a district court abused its discretion when it refused to transfer a case where the potential employee witnesses resided in the Northern District of California, as did non-party witness Google, and where the inventor of the patents resided outside the district—even though the plaintiff resided in the district.  *In re H.P. Inc.*, No. 2018-149, slip op. at 2, 7 (Fed. Cir. Sept. 25, 2018).  As in *In re H.P. Inc.*, the location of all relevant witnesses favors transfer.

Any inconvenience to RideApp is minimal by comparison.  As both founder of RideApp and the only named inventor of the patent-in-suit, Prof. Stephen Dickerson, will likely be called as a witness by both parties.  According to the Complaint, Prof. Dickerson founded RideApp in Georgia, where its principal, and apparently only, place of business is located, and RideApp does not appear to have any other employees.  *See* Compl. ¶¶ 2, 14.  Neither RideApp nor Prof. Dickerson, RideApp's founder and the sole named inventor in the patent, reside in the Southern

District of New York.[2]  "[D]istrict courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum."  *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.*, No. 07-cv-975 (HB), 2007 WL 2068107, at \*4 (S.D.N.Y. July 19, 2007) (citation omitted).  Courts in this district have routinely refused to assign any weight to the purported "convenience" of a New York forum, even to plaintiffs, where both parties would have to travel.  Indeed, courts in this district have specifically found that travel to California from Georgia is "roughly as easy" as to the Southern District of New York.  *Azari v. B&H Photo Video*, No. 06-cv-7825 (DLC), 2007 WL 13101 at \*1-3 (S.D.N.Y. Jan. 3, 2007) (comparing the ease of travel from Georgia to the Central District of California with the ease of travel to the Southern District of New York).  The Northern District of California has three major international airports served by flights from Georgia daily.  Thus, the most important factor at issue, witness convenience, heavily favors transfer.

### b)  Key Non-Party Witnesses Cannot Be Compelled to Testify in Trial in This District

Transfer is further warranted because Lyft will be unable to compel the testimony of key non-party witnesses if the trial occurs in the Southern District of New York.  This Court may only compel a witness to attendance at a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person; or . . . within the state where the person resides, is employed or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii).  "This factor is closely aligned with the first—witness convenience.  It reflects the dislocations and inequities that can arise when a court is unable to compel witnesses to testify." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735,

---

[2] The location of RideApp's attorneys has no impact on the relative convenience to witnesses and is otherwise discussed further below in Section B.2.c on convenience to parties.

746 (S.D.N.Y. 2013) (*citing Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 133 (E.D.N.Y. 2007)).

As explained previously, Lyft may rely on material non-party witnesses, including former employees and non-party corporate witnesses, who are believed to reside and work in the Northern District of California and who may not be willing to testify voluntarily.  *See supra* Section III.B.2.a.  These witnesses are likely the best sources of information for material details of features incorporated in the Lyft App.  *See* Chopra Decl. at ¶ 8.  Because the key witnesses who may provide evidence supporting Lyft's non-infringement arguments overwhelmingly reside in California, and none in New York, it is more likely that the Court will be unable to compel personal attendance of key witnesses in connection with a New York-based trial, creating a "condition not satisfactory to court, jury[,] or most litigants."  *Everlast*, 928 F. Supp. 2d at 746. Accordingly, this factor favors transfer.

### c)   *California Is Far More Convenient for Defendant and No More Inconvenient for Plaintiff*

As with the witnesses, weighing the balance of convenience to the parties strongly favors transfer because it is significantly more convenient for Lyft and no more inconvenient for RideApp.   "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Sentegra*, 2016 WL 3093988, at *4 (citing *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014)).   Here transfer to the Northern District of California would not increase the inconvenience to RideApp, which is located outside of both the transferor and transferee forums and does not appear to have any employees other than Prof. Dickerson, yet

would be much more convenient for Lyft, which has its principal place of business in that district.

As explained previously, RideApp will be required to travel regardless of whether this matter is litigated in the Southern District of New York or the Northern District of California and thus its purported convenience should be disregarded. *See Jackson*, 2015 WL 1004299, at *3 ("[Plaintiff] chose to bring this action outside of her home district. As she will have to travel regardless of venue, moving the action . . . will cause little additional inconvenience."); *supra* Section III.B.2.a. Additionally, courts in this District have held that the location of RideApp's *counsel* is irrelevant—"any inconvenience that might enure [*sic*] to counsel is unpersuasive and generally not a factor to consider." *Id.* (*citing Hernandez v. Graebel Van Lines,* 761 F. Supp. 983, 988 (E.D.N.Y. 1991)).

Meanwhile, because Lyft's engineering and operations employees involved with the Lyft App work in Lyft's San Francisco headquarters, most of Lyft's likely employee witnesses work and reside in the Northern District of California. Chopra Decl. at ¶¶ 5, 7. Although Lyft has regional offices in Manhattan and Long Island City, no employees in these offices would be able to provide testimony as complete as persons in the San Francisco headquarters. *See id.* at ¶ 6. The Long Island City office employs no engineers, and the employees in the Manhattan office include a comparatively small number of Lyft's engineering employees who receive direction from personnel in San Francisco. *See id.* at ¶¶ 5–7.

Given the location of Lyft's relevant employees and documents, Lyft and its witnesses would incur significant time, expense, and inconvenience if it is required to travel to the Southern District of New York to litigate this matter. It would be far more convenient and less burdensome for Lyft to litigate this action in the Northern District of California. Thus, this factor

weighs in favor of transfer.  *See Sentegra*, 2016 WL 3093988 at *4 (granting motion to transfer where movant had its principal place of business in California and the nonmovant had its principal place of business in Colorado).

> d)  *Because Defendant Developed the Accused Product in California, the Locus of Operative Facts Is in California*

Transfer is further warranted because the accused product—the Lyft App—is and was developed, implemented, and maintained in California.  "The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer."  *Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-cv-1385 (RJS), 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus*, 2011 WL 4036097, at *2).  Operative facts in a patent infringement action include facts relating to the design, development, and production of an allegedly infringing product.  *See Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118–19 (S.D.N.Y. 2005).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises."  *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08-cv-8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009) (quoting *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96-cv-8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept 11, 1997)).

The operative facts in this case occurred in the Northern District of California, where Lyft designed, developed, and implemented the Lyft App.  Chopra Decl. at ¶¶ 4–7.  Lyft's headquarters have always been in the Northern District of California, and the primary design and engineering decisions have been and continue to be made in San Francisco, California.  *Id.* at ¶¶ 4-5.  While some engineers work in other Lyft offices, more than 90% of Lyft's engineering organization work out of Lyft's West Coast offices and all engineering and design work related

to the Lyft App is ultimately overseen by personnel in the San Francisco headquarters. *Id.* at ¶¶ 5, 7.

RideApp's allegations that the Accused Products and Services have been *used* in the Southern District of New York (*e.g.*, Compl. at ¶¶ 36, 47) are irrelevant to this inquiry given that (a) Lyft manages and directs the design and engineering activities from its office in the Northern District of California, and (b) as RideApp acknowledges (*id.*), the Accused Products and Services have been used throughout the United States. "[W]here a defendants' products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." *Bionx Implants, Inc. v. Biomet, Inc.* No. 99-cv-740 (WHP), 1999 WL 342306, at *2 (S.D.N.Y. May 27, 1999). As a result, because the locus of operative facts occurred in California, this factor supports transfer.

### e)  The Relative Means of the Parties Carries Little Weight Because Both Parties Are Corporate Entities

The parties are both corporate entities, and as such, "this factor is not entitled to great weight where plaintiff and defendant are both corporations." *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (*quoting Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)). Even when considering Prof. Dickerson as an individual this factor is neutral—neither he nor RideApp would face significant hardship caused by transfer to the Northern District of California. *See Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); *supra* Section III.B.2.c. Prof. Dickerson appears to have considerable financial resources at his disposal. For example, he "donated $1.5 million in proceeds from another invention to Georgia Tech to endow a chair" in August 2006. Compl. at ¶ 10. Therefore, while disparity between the parties "such as an individual plaintiff suing a large corporation," may

prompt consideration of "the relative means of the parties[,]" Prof. Dickerson is not the type of individual plaintiff envisioned by this transfer factor. *Sentegra*, 2016 WL 3093988 at *6 (internal quotations omitted). Furthermore, RideApp (and presumably Prof. Dickerson) elected not to bring this suit in its or Prof. Dickerson's home jurisdiction, acknowledging that travelling to another jurisdiction to litigate this matter is no hardship. *See also Azari*, 2007 WL 13101 at *1–3 (finding that travel to California from Georgia is "roughly as easy" as to the Southern District of New York). This factor is therefore neutral.

### f)  Plaintiff's Documents and Records Are More Easily Accessed from Its San Francisco Headquarters

The convenience of the location of documents and records favors transfer to the Northern District of California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the **defendant's documents** are kept weigh in favor of transfer to that location." *Sentegra*, 2016 WL 3093988 at *5 (emphasis added; quoting *Millennium, L.P. v. Hyland Software, Inc.*, No. 03-cv-3900 (DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003)). "While technological advances in storing, transferring, and reproducing documents have rendered this factor less important, it cannot be ignored." *Jackson*, 2015 WL 1004299, at *5; *accord In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).

Because Lyft and its employees and engineers are in the Northern District of California, any physical documents are likely to be found in that District, this factor weighs in favor of transfer.

> g)  *Plaintiff's Choice of Forum Should Be Given Little Weight Because Plaintiff and the Locus of Operative Facts Have Minimal Ties to New York*

As explained previously, neither RideApp nor the facts underlying its allegations have a significant relationship to New York.  This factor should therefore be afforded less weight.  Typically, a "plaintiff's choice of forum is presumptively entitled to substantial deference." *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004).  However, "the weight afforded to a plaintiff's choice [of forum] is diminished where the operative facts lack a meaningful connection to the chosen forum."  *IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*, No. 14-cv-4355 (RJS), 2015 WL 4720293, at *8 (S.D.N.Y. Aug. 6, 2015) (internal quotations omitted); *see also Simpson v. Rodas*, No. 10-cv-6670 (CS), 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012) (importance of plaintiff's choice "measurably diminishes" where operative facts "have few meaningful connections" to plaintiff's chosen forum) (citation omitted).  Moreover, "a plaintiff's choice of forum is given less deference when it is not her home district." *Hix v. Morgan Stanley & Co. LLC*, No. 15-cv-217 (LTS) (JCF), 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015).

The Southern District of New York is not RideApp's home forum and the operative facts have at most a limited connection to this District.  *See infra* Section III.B.2.e.  RideApp did not file its complaint in the state where it resides (Georgia) or was recently incorporated (Delaware); nor did it choose a forum that corresponds to the locus of operative facts (California, *see supra* Section III.B.2.e).  Accordingly, because the Plaintiff, RideApp, "[does] not reside in New York . . . the defendants are not located in New York, and the critical decisions that underlie the [P]laintiff's claims were made outside New York, the [P]laintiff's choice of forum is entitled to reduced deference." *Azari*, 2007 WL 13101 at *2.  Overall, the balance weighs heavily in favor of transfer to the Northern District of California.

### 3. In a Patent Case, the Forum's Familiarity with the Governing Law Is Given Little Weight in Federal Courts

Notably, "[f]amiliarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts . . . ." *Sentegra*, 2016 WL 3093988 at *7 (*quoting Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006)). "[A]ny district court may handle a patent case with equal skill." *See id.* (*citing Smart Skins LLC*, 2015 WL 1499843, at *11; *Invivo Research v. Magnetic Resonance Equipment Corp.*, 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000).

## IV.   CONCLUSION

The balance of factors favors transfer to the Northern District of California: Lyft's headquarters is in California, the design and development of the Lyft App was overwhelmingly in California, and almost all witnesses are in California.  For at least the reasons set forth above, Lyft respectfully requests that the Court transfer this action to the United States District Court for the Northern District of California.


Dated: September 28, 2018                    */s/ Jennifer C. Tempesta*

                                             Jennifer C. Tempesta
                                             BAKER BOTTS L.L.P.
                                             30 Rockefeller Plaza
                                             New York, NY 10112
                                             Phone: (212) 408-2500
                                             Fax: (212) 408-2501

                                             Jeremy J. Taylor (*pro hac vice pending*)
                                             BAKER BOTTS L.L.P.
                                             101 California Street
                                             Suite 3600
                                             San Francisco, California 94111
                                             Phone: (415) 291-6200
                                             Fax: (415) 291-6300

- 18 -

Bryant C. Boren, Jr. (*pro hac vice pending*)
Elizabeth K. Boggs (*pro hac vice pendin*g)
H. Christopher Han (*pro hac vice pending*)
Keith M. Jurek (*pro hac vice pending*)
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Phone: (650) 739-7500
Fax: (650) 739-7699

*Attorneys for Defendant Lyft, Inc.*

- 19 -