Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3600
San Francisco, CA 94111
Tel: (415) 291-6200
Fax: (415) 291-6300

Bryant C. Boren, Jr. (SBN 260602)
bryant.c.boren@bakerbotts.com
Elizabeth K. Boggs (SBN 280555)
betsy.boggs@bakerbotts.com
John F. Gaustad (SBN 279893)
john.gaustad@bakerbotts.com
Keith M. Jurek (SBN 310856)
keith.jurek@bakerbotts.com
**BAKER BOTTS L.L.P.**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Phone: (650) 739-7500
Fax: (650) 739-7699

Jennifer C. Tempesta (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, NY 10112
Phone: (212) 408-2500
Fax: (212) 408-2501

*Attorneys for Defendant LYFT, INC.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| RIDEAPP, INC.<br><br>                    Plaintiff,<br><br>         v.<br><br>LYFT, INC.<br><br>                    Defendant. | Case No. 18-CV-07152-JST<br><br>**LYFT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br><br>Judge:   Hon. Jon S. Tigar<br>Date:    January 22, 2020<br>Time:    2:00 p.m.<br>Courtroom: 6 – 2nd Floor |

BAKER BOTTS L.L.P.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ......................................................... 3

III.  FACTUAL BACKGROUND ..................................................................................... 3

   A.   July–November 2018: Case Filed in S.D.N.Y. and Transferred to N.D. Cal. After No
      Bona Fide Connection to the Forum Found ........................................................... 3

   B.   December 2018–May 2019: IPR Petitions Filed and RideApp Provides Construction of
      "On-Demand Allocation" in Response ................................................................... 3

   C.   June 2019: RideApp Confirms the Construction of "On-Demand Allocation" and Fails
      to Identify Any Algorithms in Claim Construction Disclosures ........................... 5

   D.   July–August 2019:  The Patent Office Finds Asserted Claims Indefinite and RideApp
      Refuses to Dismiss Case ........................................................................................ 5

   E.   August–September 2019:  RideApp Introduces Its New Construction for "On-Demand
      Allocation" ............................................................................................................. 6

   F.   October 2019: The Court Invalidates the Claims and Enters Final Judgment .................. 7

IV.   ARGUMENT ............................................................................................................... 7

   A.   This Is an Exceptional Case Under 35 U.S.C. § 285 ............................................. 7

     1.   Legal Standards .......................................................................................... 7

     2.   RideApp Knowingly Pursued a Frivolous Litigation Position After the Patent Office
        Decisions ..................................................................................................... 8

     3.   RideApp Litigated This Case in an Unreasonable Manner ......................... 11

   B.   Lyft's Requested Attorneys' Fees Are Reasonable ............................................... 17

     1.   Legal Standards ........................................................................................ 17

     2.   The Hourly Rate Paid by Lyft to Its Attorneys Was Reasonable ................ 18

     3.   The Number of Hours Billed to Litigate This Case Was Reasonable .......... 19

     4.   The Attorneys' Fees which Lyft Seeks are Reasonable .............................. 19

V.    CONCLUSION .......................................................................................................... 20

BAKER BOTTS L.L.P.

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*3Form, Inc. v. Lumicor, Inc.*,
    No. 2:12-CV-293, 2018 WL 4688348 (D. Utah Sept. 28, 2018) ..............................11

*Automated Bus. Cos. v. NEC Am., Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000) ...............................................................................17

*Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983) .........................................................................18, 20

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
    279 F.3d 1022 (Fed. Cir. 2002) .................................................................................8

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
    No. 13-cv-04057-BLF, 2016 WL 4242216 (N.D. Cal. Aug. 11, 2016) .....................8

*Highmark Inc., v. Allcare Health Mgmt. Sys., Inc.*,
    572 U.S. 559 (2014) ...................................................................................................8

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
    112 F. Supp. 3d 888 (D. Minn. 2015) (*Octane Fitness II*) ...................................12–13

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) ...............................................................................11

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302 (Fed. Cir. 2013) .................................................................................8

*Kilopass Tech., Inc. v. Sidense Corp.*,
    No. C 10–02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ...................10–11

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) .....................................................................17

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
    745 F. App'x 153 (Fed. Cir. 2018) ...........................................................................17

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
    No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ..........................11

*LookSmart Grp., Inc. v. Microsoft Corp.*,
    386 F. Supp. 3d 1222 (N.D. Cal. June 28, 2019) ................................................16, 17

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    811 F.3d 479 (Fed. Cir. 2016) .................................................................................17

*Mathis v. Hydro Air Indus. Inc.*,
    No. CV 80-4481, 1986 WL 84360 (C.D. Cal. Feb. 20, 1986) ................................18

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988) ...................................................................17–18, 20

*Motivate Int'l, Inc. v. Inlow*,
   No. 1:15-09948 (N.D. Ill. 2015) ..............................................................................12

*Octane Fitness, LLC v. ICON Health & Fitness*, Inc.,
   572 U.S. 545 (2014) ........................................................................................7–8, 10

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
   781 F.2d 198 (Fed. Cir. 1986) .....................................................................................8

*Segan LLC v. Zynga Inc*,
   131 F. Supp. 3d 956 (N.D. Cal. 2015) ......................................................................11

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
   No. C 16-03463 WHA, 2019 WL 6219220 (N.D. Cal. Nov. 20, 2019) .............10, 15

*Takeda Chem. Indus., Ltd., v. Mylan Labs., Inc.*,
   549 F.3d 1381 (Fed. Cir. 2008) ................................................................................18

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) ................................................................................11

*View Eng'g, Inc. v. Robotic Vision Sys, Inc.*,
   208 F.3d 981, 987–88 (Fed. Cir. 2000) ....................................................................18

**STATUTES**

35 U.S.C. § 112 .............................................................................................................1

35 U.S.C. § 285 .........................................................................................1, 7, 8, 17

**OTHER AUTHORITIES**

Fed. R. of Civ. Proc. 15 ........................................................................................ 13-14

Patent L. R. 3-6 .................................................................................................... 13-14

1  | **NOTICE OF MOTION AND MOTION**
2  | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:
3  | PLEASE TAKE NOTICE that on January 22, 2020 or as soon thereafter as the matter may
4  | be heard, in Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Defendant Lyft, Inc.
5  | ("Lyft") moves the Court for attorneys' fees under 35 U.S.C. § 285. This motion is based on this
6  | Notice of Motion, the attached memorandum of points and authorities in support thereof, the
7  | pleadings and documents on file in this case, and such other evidence and argument as may be
8  | presented at the hearing on this motion.
9  | **STATEMENT OF RELIEF REQUESTED**
10 | Lyft asks the Court to find this case "exceptional" under 35 U.S.C. § 285 and award Lyft a
11 | portion of the reasonable attorneys' fees it has incurred since July 17, 2019—the day the Patent
12 | Office first found the asserted claims (claims 2, 3, and 6) of U.S. Patent No. 6,697,730 (the "'730
13 | Patent") indefinite under 35 U.S.C. § 112, ¶ 2.  Lyft specifically requests the Court award Lyft
14 | $569,254.34, in addition to any further reasonable attorneys' fees incurred by Lyft in pursuing this
15 | motion.[1]
16 | **MEMORANDUM OF POINTS AND AUTHORITIES**
17 | **I.    INTRODUCTION**
18 | This case is exceptional.  From the beginning of the case, Lyft asserted that RideApp Inc.'s
19 | ("RideApp") Patent was invalid as indefinite under 35 U.S.C. § 112.  Lyft explained this in its
20 | Answer, in its Invalidity Contentions, in its Petition for *Inter Partes* Review ("IPR") filed with the
21 | Patent Office, and finally in its claim construction disclosures and briefing which resulted in this
22 | Court confirming the invalidity of the '730 Patent.  Although RideApp's pre-suit diligence should
23 | have revealed the invalidity of the '730 Patent, when the Patent Office confirmed the invalidity of
24 | the '730 Patent, not once, but twice, RideApp was fully aware its patent was invalid.  Despite this,
25 | RideApp refused to dismiss the case and offered no explanation of how RideApp could continue to
26 | plausibly assert the '730 Patent in light of the Patent Office's invalidity findings.

BAKER BOTTS L.L.P.

---

[1] Lyft reserves the right to also seek fees in defending against any appeal of this Court's Judgment by RideApp or any fees incurred in collecting on any judgment in this case.

Instead of acknowledging the invalidity of the '730 Patent after the Patent Office twice confirmed its invalidity—as Lyft argued from the beginning of the case—RideApp adopted a frivolous interpretation of the '730 Patent for purposes of claim construction that directly contradicted even RideApp's own previous interpretation.  As soon as the Patent Office dismissed the IPR challenges, RideApp did an about face, abandoning its old interpretation of the '730 Patent and offering a new, contradictory one, better suited for the upcoming claim construction process.

While this Court ultimately rejected RideApp's new interpretation of the '730 Patent and found the asserted claims indefinite for the same, and additional, reasons found by the Patent Office, RideApp's tactics unnecessarily prolonged this case, wasting judicial resources and forcing Lyft to incur needless attorneys' fees defending itself.

In addition to RideApp's shifting claim construction positions, RideApp employed unreasonable tactics throughout this case that unnecessarily increased the cost for Lyft to defend itself.  RideApp's improper tactics started the day RideApp filed this case in the Southern District of New York, a venue convenient for neither party to which RideApp unsuccessfully tried to manufacture a connection by inappropriately adding (and then quickly dismissing) a party. RideApp's unreasonable tactics continued in the Northern District of California when it unsuccessfully tried to skirt the requirements of the Patent Local Rules by seeking to improperly add assertions to the case under the inapplicable amended pleading standard rather than properly seeking leave to amend its infringement contentions.

As a result of RideApp's unreasonable litigation positions and tactics, Lyft spent considerable resources defending itself in this case, but seeks only a portion—$569,254.34—in compensation for attorneys' fees incurred since July 17, 2019, when the Patent Office first found the asserted claims of the '730 Patent indefinite.  This amount covers only 882 of the nearly 3,000 total hours that Lyft's outside counsel spent defending this case and only includes fees incurred by Lyft's four outside attorneys who spent more than 50 hours on the matter after the Patent Office first found the asserted claims indefinite.  Lyft never would have incurred these attorneys' fees if RideApp had dismissed this case after the Patent Office confirmed the invalidity of the '730 Patent, when RideApp unmistakably knew its case was untenable.

2

BAKER BOTTS L.L.P.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether this case is exceptional in view of RideApp's frivolous litigating position and the unreasonable manner in which it litigated this case.

2.     Whether Lyft is entitled to attorneys' fees in view of the exceptional nature of this case.

3.     Whether Lyft's requested attorneys' fees are reasonable.

## III.    FACTUAL BACKGROUND

### A.     July–November 2018: Case Filed in S.D.N.Y. and Transferred to N.D. Cal. After No Bona Fide Connection to the Forum Found

On July 23, 2019, RideApp, a Delaware corporation located in Georgia, filed this case in the Southern District of New York against Lyft, a San Francisco-based company with the bulk of its engineering team also in the San Francisco Bay Area.  ECF No. 1.  At the initial case management conference, Lyft informed RideApp and the New York court that it intended to file a motion to transfer the case to the Northern District of California for convenience of the witnesses and parties. Ex. A[2] at 4; ECF No. 21.  On the day Lyft's motion to transfer was due, RideApp filed an amended complaint, naming Motivate International, Inc. ("Motivate"), a New York-based company that Lyft was in the process of acquiring, as a second defendant.  *See* ECF No. 29 ¶ 37; ECF No. 43 at 2–3. RideApp's new complaint prominently featured New York and Motivate's ties to New York.  Ex. A at 4:9–14.  Less than a week later, RideApp dismissed Motivate from the case without explanation, but continued to attempt to leverage its allegations against Motivate to keep the case in New York. *Id*. at 4:15–5:17.  Despite this, the New York court granted Lyft's motion to transfer the case to the Northern District of California, finding "no factual basis for Lyft to be held liable for Motivate's acts." *Id*. at 5:8–9.  The New York court found none of the convenience factors favored maintaining the case in New York and concluded the "allegations in the complaint do not show a bona fide connection to the forum." *Id*. at 5:18–19; *id.* at 5:19–9:25.

### B.     December 2018–May 2019: IPR Petitions Filed and RideApp Provides Construction of "On-Demand Allocation" in Response

On December 12, 2018, a third party—Unified Patents Inc. ("Unified")—filed an IPR

---

[2] All exhibits are exhibits to the Declaration of Keith Jurek, filed herewith.

BAKER BOTTS L.L.P.

1   Petition with the Patent Office, arguing that the asserted claims of the '730 Patent were both

2   anticipated and rendered obvious by a number of prior art references.  *See* Ex. B.  Lyft filed its own

3   IPR Petition on February 12, 2019, also arguing that a number of prior art references both anticipated

4   and rendered obvious the asserted claims.  *See* Ex. C.  Both Unified and Lyft interpreted the plain

5   meaning of "on-demand allocation" to be "assigning" or "matching" a passenger to a vehicle.  *See,*

6   *e.g.*, Exs. B at 5 ("The central assigning system allocates (assigns) a passenger . . . to one or more

7   vehicles . . . ."); C at 25 ("Behnke thus discloses a 'wireless means of' matching riders and drivers

8   responsive to the rider's ride request in the same fashion as the '730 Patent.").  Both Unified and

9   Lyft also recognized the asserted claims contained several means-plus-function terms.  *See, e.g.*,

10  Exs. B at 9, 12, and 14; C at 17–18.  Lyft argued that (1) these means-plus-function limitations were

11  implemented by a general-purpose computer running an algorithm for performing the claimed

12  functions and (2) "[t]he '730 Patent describes no innovative algorithms for assigning a passenger to

13  a driver, no novel communication devices, and no inventive method for tracking vehicle position."

14  Ex. C at 7, 18–20.

15       On May 9, 2019, RideApp filed its Preliminary Response to Unified's IPR Petition, and

16  confirmed that "on-demand allocation" included "assignment," among other things:

17          "Assignment" is a part of "on-demand allocation," but "on-demand
            allocation" in the Patent is much more. During "allocation," the
18          central assigning system processes, integrates and transmits data
            including:
19
20          (1) communications with passengers to schedule their trips and give
            them precise information on trip times and sites; (2) vehicle (and in
21          some instances passenger) location communications using GPS
            technology; (3) communications to ***allocate*** routes, schedules and
22          passengers; and (4) communications between passengers and vehicles
            to monitor system usage. These communications pertain to both ride-
23          sharing and vehicle rental. Under normal operations, digital
            computers monitor and control the system without manual
24          intervention so as to both minimize costs and make the complex data
            processing possible in a timely manner."
25
26  Ex. D at 16–18 (emphasis in original).  Using this definition, RideApp argued that the "prior art

27  systems do not provide on-demand allocation."  *Id.* at 18.  RideApp also argued that Unified's

28  Petition should be dismissed because Unified failed to identify an algorithm for any of the means-

1    plus-function claim elements, including "on-demand allocation." *Id.* at 13–15.

2           Nearly two weeks later, on May 22, 2019, RideApp filed its Preliminary Response to Lyft's

3    IPR Petition echoing the arguments made in its response to Unified's IPR Petition. Ex. E. RideApp

4    again argued that "on-demand allocation" includes assignment. *Id.* at 18 ("*On-demand allocation*

5    *includes* 'assignment,' but *on-demand allocation* in the '730 Patent is more robust.") (emphasis in

6    original); *see also id.* at 11–14, 18–20.  RideApp also argued that Lyft's IPR Petition should be

7    denied because (1) the prior art lacked "on-demand allocation" under this definition and (2) Lyft did

8    not identify algorithms for the claimed means-plus-function elements.  *Id.*

9          **C.      June 2019: RideApp Confirms the Construction of "On-Demand Allocation"**
              **and Fails to Identify Any Algorithms in Claim Construction Disclosures**
10
           On June 24, 2019, the parties exchanged proposed constructions.  Once again, RideApp
11
     advanced its position that "on-demand allocation" included the assignment of a passenger to a
12
     specific vehicle:
13
                     This term means "the processing, integration and transmission of data
14                   ***to assign a passenger to a specific vehicle*** and vice-versa based on
                     current passenger transportation vehicle usage information (including
15                   passenger parameters) and current vehicle data."

16   Ex. F at 3 (emphasis added).

17         For the alleged algorithms corresponding to the means-plus-function elements, RideApp

18   cited large swaths of the specification, including 1079 lines from the '730 Patent (including the

19   entirety of Table 1) along with seven of the patent's nine figures.  *See id.* at 4–5.

20         **D.      July–August 2019:  The Patent Office Finds Asserted Claims Indefinite and**
              **RideApp Refuses to Dismiss Case**
21
           On July 17, 2019, the Patent Office issued its decision denying Unified's IPR Petition.  ECF
22
     No. 105-1.  The Patent Office analyzed the '730 Patent and found it failed to disclose a requisite
23
     algorithm for the "on-demand allocation" function.  *Id.* at 5–13.  In reaching its decision, the Patent
24
     Office relied on RideApp's definition of "on demand allocation" that included the assignment of a
25
     passenger to a vehicle.  *Id.*  The Patent Office also found the '730 Patent failed to disclose a requisite
26
     algorithm for the claimed "detecting the proximity of the passenger" function.  *Id.* at 13–14.
27
     Because the specification failed to disclose algorithms for the claimed functions, the Patent Office
28

BAKER BOTTS L.L.P.

1    was "unable to apply the claim language to the prior art" and rejected Unified's IPR Petition,

2    recognizing that this deficiency renders the claims indefinite.  *See id.* at 7–8, 14.

3           The day after the Patent Office dismissed Unified's IPR Petition, RideApp changed its

4    position, arguing the Court should afford "on-demand allocation" its plain meaning, which RideApp

5    later alleged excluded assigning a passenger to a vehicle.  *See* Exs. G & H at 6.  In the Joint Claim

6    Construction and Prehearing Statement, filed the next day, RideApp dropped "on-demand

7    allocation" entirely from its list of terms to construe.  *See* Exs. I & J; ECF No. 93.  RideApp again

8    broadly cited to large portions of the specification including "descriptive prose from the intrinsic

9    evidence" in the Joint Claim Construction Statement without identifying specific algorithms.  *See*

10   ECF No. 93, App'x A at 1–5.

11          In view of the Patent Office finding the asserted claims indefinite, Lyft sent RideApp a letter

12   on July 22, 2019, requesting that RideApp promptly dismiss the case.  Ex. K at 1.  RideApp did not

13   respond to this request.

14          On August 12, 2019, the Patent Office issued a decision denying Lyft's IPR Petition for

15   reasons similar to those discussed in the Unified IPR decision, finding that because the specification

16   failed to disclose the requisite algorithms for the claimed functions, it was "unable to apply the claim

17   language to the prior art" and that this deficiency renders the claims indefinite.  ECF No. 105-2 at

18   8, 15.

19          Following the Patent Office's second decision finding the asserted claims of the '730 Patent

20   indefinite, Lyft again requested RideApp dismiss the case, explaining that the Patent Office's

21   finding made RideApp's litigation position meritless.  *See* Ex. L.  In response, RideApp confirmed

22   it "d[id] not intend to dismiss the action at this juncture," without an explanation of how RideApp

23   believed the case remained meritorious in light of the multiple Patent Office decisions finding the

24   asserted claims indefinite.  Ex. M.

25          **E.     August–September 2019:  RideApp Introduces Its New Construction for "On-
                     Demand Allocation"**

26

27          On September 6, 2019, in its opening claim construction brief, RideApp introduced a brand-

28   new construction for the term "on-demand allocation" that excluded assigning a passenger to a

BAKER BOTTS L.L.P.

vehicle. *See* ECF No. 101 at 8. Contrary to its previous position, RideApp now argued that "'allocation' and 'assignment' are two different things." ECF No. 107 at 4. RideApp confirmed its new construction was motivated by the Patent Office decisions finding the '730 Patent invalid under RideApp's previous definition of "on demand allocation." *See* ECF No. 101 at 8, n.6.

**F.      October 2019: The Court Invalidates the Claims and Enters Final Judgment**

On October 16, 2019, the Court rejected RideApp's new definition of "on-demand allocation" and found the asserted claims of the '730 Patent indefinite, confirming Lyft's position from the beginning of this case and the Patent Office's two decisions. *See* ECF No. 117. According to this Court, "[t]he interpretation of 'allocation' as including assignment is persuasive," and "[t]he patent discloses no algorithm for assigning passengers to vehicles." *Id*. at 13:24–28, 16:2–3. The Court specifically recognized that RideApp's eleventh-hour construction for the term "on-demand allocation" was not "conducive to the orderly progress of th[e] case" and that the Court disapproved of it. *Id*. at 13:3–7.

In addition to the "on-demand allocation" term, the Court found four other claim terms indefinite rendering the asserted claims of '730 Patent invalid for multiple independent reasons. With respect to the tracking function, the first limitation in each asserted claim of the '730 Patent, the Court concluded that "the '730 Patent contains no algorithm whatsoever – simple or otherwise – describing how the invention performs the tracking function." *Id*. at 11.

On October 31, 2019, the Court entered final judgment in the case, finding all asserted claims of the '730 Patent invalid. *See* ECF No. 122.

**IV.      ARGUMENT**

**A.      This Is an Exceptional Case Under 35 U.S.C. § 285**

**1.      Legal Standards**

The Patent Act provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District

BAKER BOTTS L.L.P.

1   courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion,

2   considering the totality of the circumstances." *Id.* Relevant considerations include "frivolousness,

3   motivation, objective unreasonableness (both in the factual and legal components of the case) and

4   the need in particular circumstances to advance considerations of compensation and deterrence."

5   *Id.,* n.6. The exceptional nature of a case and entitlement to fees under Section 285 need only be

6   shown by a preponderance of the evidence. *Id.* at 557–558.

7         All aspects of a Section 285 determination are left to the discretion of the district court.

8   *Highmark Inc., v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 561 (2014). "The trial judge is in

9   the best position to weigh considerations such as the closeness of the case, the tactics of counsel,

10  the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens

11  of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc*., 781

12  F.2d 198, 201 (Fed. Cir. 1986)). A prevailing party may demonstrate an exceptional case by

13  showing: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and

14  otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v.*

15  *Bauer Compressors, Inc*., 279 F.3d 1022, 1034 (Fed. Cir. 2002). Ultimately, "the aim of § 285 is

16  to compensate a defendant for attorneys' fees it should not have been forced to incur." *Gilead Scis.,*

17  *Inc. v. Merck & Co, Inc.*, No. 13-CV-04057-BLF, 2016 WL 4242216, at \*2 (N.D. Cal. Aug. 11,

18  2016) (quoting *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013)).

      **2.    RideApp Knowingly Pursued a Frivolous Litigation Position After the Patent Office Decisions**

19

20        RideApp's decision to continue pursuing this case against Lyft after July 17, 2019, when the

21  Patent Office found the asserted claims of RideApp's Patent indefinite, makes this case exceptional.

22  RideApp's pre-suit diligence should have revealed the invalidity of the '730 Patent, but after the

23  Patent Office twice confirmed the invalidity of the '730 Patent, RideApp was fully aware that its

24  patent was invalid and should have dismissed the case. RideApp's attempt to abandon its

25  interpretation of the '730 Patent following the Patent Office decisions finding the asserted claims

26  indefinite further confirms the frivolousness of RideApp's litigation position.

27        When the Patent Office issued its decision on July 17, 2019, finding the asserted claims of

28

BAKER BOTTS L.L.P.

the '730 Patent indefinite, RideApp should have dismissed this case.  The Patent Office confirmed what Lyft had argued from the beginning of the case—RideApp's litigation position lacked merit because the asserted claims were indefinite.  On August 12, 2019, the Patent Office again confirmed the indefiniteness of the asserted claims in dismissing Lyft's IPR Petition.  Despite this, RideApp refused to dismiss the lawsuit.

Instead, after beating the Patent Office challenges, RideApp pivoted.  No longer needing to maintain the position taken to avoid the IPR petitions, RideApp adopted a brand-new interpretation of the '730 Patent that directly contradicted RideApp's previous position consistently taken throughout this case.

From the beginning of the case, RideApp argued the term "on-demand allocation" included (amongst other things) assigning a passenger to a vehicle.  In its opposition to Lyft's § 101 motion, for example, RideApp stated that "'[a]llocation' is a function of the wireless communication devices . . . in which, at least, *a passenger is assigned to a vehicle*, and vice versa . . . ."  ECF No. 78 at 5, n.3 (emphasis added).  Similarly, in its response to both Lyft's and Unified's IPR Petitions, RideApp confirmed that "*[o]n-demand allocation* includes 'assignment . . . .'"  Ex. E at 18 (describing assignment as part of a robust process of allocation) (emphasis in original); *see* Ex. D at 16–18.  A few weeks before the Patent Office's decision, RideApp again confirmed, in its preliminary claim construction disclosure, that "on-demand allocation" means "the processing, integration and transmission of data *to assign a passenger to a specific vehicle* and vice-versa . . . ."  Ex. F at 3:15–18 (emphasis added).

After RideApp defeated the IPR petitions in the Patent Office, however, it pivoted to a new position better suited for the upcoming claim construction process in this Court.  In a blatant attempt to avoid its previous admissions under which it knew the asserted patent would be found invalid, RideApp argued that "on-demand allocation" no longer included assigning a passenger to a vehicle.  *See* ECF No. 101 at 8:10–11:6; ECF No. 107 at 4–6.  RideApp specifically linked its new position to the Patent Office decisions finding the asserted claims indefinite.  *See* ECF No. 101 at 8, n.6.  According to RideApp's claim construction briefing, "[t]he '730 Patent makes it clear that 'allocation' and 'assignment' are two different things"—in direct contradiction to every other filing

BAKER BOTTS L.L.P.

1    and disclosure RideApp had made up to that point in the case.  ECF No. 107 at 4.  At the claim

2    construction hearing, RideApp went even further, suggesting to the Court that its new position

3    wasn't really new at all and that perhaps the Patent Office was confused when it issued its decisions:

> The PTAB took the position, perhaps misunderstanding ours, that
> allocation and assignment are essentially the same thing. In actual
> fact, you can see from Figure 9 alone, it's two different messages that
> do two different things . . . .

7    Ex. N (Oct. 15, 2019 Claim Construction Hearing Transcript) at 45:20–23.

8         While this Court ultimately rejected RideApp's new construction of "on-demand

9    allocation," finding it unpersuasive and inconsistent with the usage in the '730 Patent and the

10    ordinary meaning of the term, RideApp's decision to adopt an entirely new claim construction

11    position after leveraging its former position to defeat the Patent Office challenges demonstrates the

12    exceptionality of this case.  ECF No. 117 at 13–15.  As this Court noted, RideApp's eleventh-hour

13    maneuvering was "not conducive to the orderly progress of this case, and the [Court] disapproves

14    of it."  *Id.* at 13.

15         RideApp used tactics similar to those of plaintiff Straight Path in *Straight Path v. Cisco*

16    where Judge Alsup recently awarded attorneys' fees.  *See Straight Path IP Grp., Inc. v. Cisco Sys.,*

17    *Inc.*, No. C 16-03463 WHA, 2019 WL 6219220 (N.D. Cal. Nov. 20, 2019).  In the *Straight Path*

18    matter, the plaintiff "saved its patents from invalidity by making clear-cut representations to the

19    Federal Circuit," then tried to disavow those representations to prove its infringement case.  *Id.* at

20    *4*.  The plaintiff took one position on claim interpretation in the Federal Circuit while defending

21    its IPR win, and, after achieving its goals, took a second, incompatible position in district court.

22    Judge Alsup stated that the plaintiff's tactics rendered the case one "that stand[s] out from others"

23    and exceptional under a totality of the circumstances.  *Id.* at *7 (quoting *Octane Fitness*, 572 U.S.

24    at 554).  "[T]elling the Federal Circuit one thing and telling this Court the opposite on a critical

25    point ma[de] this an 'exceptional case.'"  *Id.* at *4.

26         The *Kilopass* court similarly found a case exceptional due to gamesmanship when the

27    plaintiff "attempt[ed] to argue one thing to this Court, then argue a different thing to the BPAI

28    [Board of Patent Appeals and Interferences], and then attempt to change its position before the BPAI

BAKER BOTTS L.L.P.

only after it resulted in an unfavorable ruling from this Court." *Kilopass Tech., Inc. v. Sidense Corp.*, No. C 10–02066 SI, 2014 WL 3956703, *10, *14 (N.D. Cal. Aug. 12, 2014); *see also Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *5 (N.D. Cal. Sept. 15, 2014) (finding case exceptional where the plaintiff continued to assert baseless infringement claims following unfavorable claim constructions by two other forums).

Courts have also awarded, and the Federal Circuit has affirmed, attorneys' fees where a party failed to reevaluate its litigation position in light of an unfavorable ruling.  *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379–80 (Fed. Cir. 2017) (finding no abuse of discretion in finding the case exceptional where the plaintiff failed to adequately reassess the strength of its case under *Alice* and the confining fee award to fees accrued after *Alice* issued); *3Form, Inc. v. Lumicor, Inc.*, No. 2:12-CV-293, 2018 WL 4688348, at *5 (D. Utah Sept. 28, 2018) (finding the case exceptional where the plaintiff "knowingly ignored repeated warnings about the inconsistency of its very weak position" in view of inconsistent arguments raised to the Patent Office and the Court).  Litigants "must continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (affirming exceptional case finding), *see also id.* at 1327 ("When patentees have sought unreasonable claim constructions divorced from the written description, this court has found infringement claims objectively baseless."); *Segan LLC v. Zynga Inc*, 131 F. Supp. 3d 956, 961 (N.D. Cal. 2015) (finding the case exceptional based on the unreasonableness of patentee's proposed claim construction).

RideApp's failure to reevaluate the validity of the asserted claims following the Patent Office's findings of indefiniteness render this case exceptional.  RideApp's decision to take one position before the Patent Office to avoid prior art and another, contradictory position before this Court to try and avoid indefiniteness, further supports a finding that this case is exceptional.

### 3.   RideApp Litigated This Case in an Unreasonable Manner

In addition to RideApp's untenable and conflicting claim construction positions taken in this case, the tactics RideApp used during this litigation further support finding that this case is exceptional.

BAKER BOTTS L.L.P.

a.   **RideApp Filed This Case in New York Without a Connection to the Forum and Tried to Manipulate Venue by Adding a Party**

RideApp, a Delaware corporation located in Georgia, filed this case in the Southern District of New York against Lyft, a company headquartered in the San Francisco Bay Area where the overwhelming majority of its engineering organization is located.  *See* ECF Nos. 1, 31-2 ¶¶ 4–5. Lacking any meaningful connection to the forum, Lyft informed RideApp and the New York court that it would file a motion to transfer the case to the Northern District of California for the convenience of the parties and witnesses.  *See* Ex. A at 4:2–3.  The *same day* Lyft's transfer motion was due, RideApp blatantly attempted to manipulate the transfer factors by filing an amended complaint naming Motivate International, Inc.—a company based in New York that Lyft intended to acquire—as a second defendant.  *See* ECF No. 29.  By adding Motivate to the lawsuit, RideApp no doubt hoped to tip the balance of transfer factors in its favor and keep the case in New York to the great inconvenience of Lyft and its employees.

RideApp's gamesmanship backfired, however, when Motivate was dismissed less than a week later (ECF No. 33), likely because RideApp's law firm and lead counsel also represented Motivate in other matters.  *See, e.g.*, *Motivate Int'l, Inc. v. Inlow*, case No. 1:15-09948 (N.D. Ill. 2015).  Despite the voluntary dismissal of Motivate, RideApp refused to drop the allegations against Motivate and instead continued to press for Motivate's actions to be attributed to Lyft, a separate company that had not yet acquired Motivate.

The New York court rejected RideApp's attempts to attribute Motivate's actions to Lyft, finding "no factual basis for Lyft to be held liable for Motivate's acts," and concluding that the "allegations in the complaint do not show a bona fide connection to the forum."  Ex. A at 5:8–19. The New York court went on to find that *none* of the convenience factors favored maintaining the case in New York and transferred the case to the Northern District of California over RideApp's objections.  *See id.* at 5–9.

Courts have found cases exceptional under circumstances nearly identical to those in the present case.  *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 892–93, 896 (D. Minn. 2015) (*Octane Fitness II*).  In *Octane Fitness II*, the plaintiff, Icon Health & Fitness, Inc. ("Icon"), based in Utah, originally named two defendants, Octane Fitness, LLC

BAKER BOTTS L.L.P.

("Octane"), a Minnesota-based company, and Nellie's Exercise Equipment Inc. ("Nellie's"), a California-based distributor. *Id.* The claims against Nellie's were premised on alleged infringement of a different patent than Icon's claims against Octane. *Id.* By naming Nellie's as a defendant, Icon was able to file suit in the inconvenient-to-Octane forum in California, as opposed to Minnesota. *Id.* The California court recognized that Icon's claims against Nellie's were peripheral to the dispute between Icon and Octane and severed the case before transferring the matter to Minnesota, as all the convenience factors favored that venue. *Id.* Soon after, Icon dropped the allegations relating to the peripheral patent. *Id.* In deciding the motion for attorneys' fees, the court found this behavior relevant to the question of whether Icon litigated the case in an "exceptionally unreasonable manner." *Id.* The court found that, "[t]he inclusion of a peripheral party to establish venue in an inconvenient and high-cost district—particularly where the claim that supposedly provided the basis for including the peripheral party was voluntarily dismissed with prejudice shortly after the action was transferred—is highly suspicious." *Id.*

RideApp's decision to file this case in New York and failed attempt to manipulate the transfer factors to keep the case in New York by adding and quickly dismissing Motivate, demonstrates the unreasonable manner in which RideApp litigated this case from the very beginning and further supports a finding that this case is exceptional.

b.   **RideApp Ignored the Patent Local Rules in Attempting to Assert Additional Claims and Accuse Additional Products**

Five months after serving its infringement contentions and nearly nine months after the start of the case, RideApp decided to assert additional patent claims and target additional Lyft products. *See* ECF No. 77-1 at ¶¶ 65–74, 132–179. Although the Patent Local Rules in both the Southern District of New York and the Northern District of California specifically required RideApp to disclose all asserted patent claims and all accused products, RideApp waited until well after the deadline to disclose the additional assertions. ECF No. 70 at 5. Furthermore, instead of filing a motion to amend its infringement contentions to add these new assertions, RideApp decided to file a motion to amend its complaint. *See* ECF No. 77.

RideApp no doubt filed a motion to amend its complaint instead of a motion to amend its

BAKER BOTTS L.L.P.

infringement contentions because the standard for amending a complaint is far lower than the standard to amend infringement contentions.  Under Federal Rule of Civil Procedure 15(a)(2), courts should "freely give leave [to amend a pleading] when justice so requires;" whereas, Patent Local Rule 3-6 requires a "timely showing of good cause" to amend infringement contentions.  *See* Fed. R. of Civ. Proc. 15; Patent L. R. 3-6.  Aware that it would be unable to meet the high standard to amend its infringement contentions, RideApp tried to improperly insert new issues into the case under the much lower standard of amending its complaint.  *See* ECF No. 77 at 4:8–26.

This Court ultimately rejected RideApp's attempt to use Federal Rule 15 to undercut the Patent Local Rules, finding such an approach would "eviscerate the Patent Local Rules."  ECF No. 84 at 4.  As a result, the Court refused to let RideApp add new claims or products to the case because "RideApp has not persuaded the Court that it has acted diligently."  ECF No. 84 at 7.  Despite the favorable result, RideApp's tactics still forced Lyft to unnecessarily incur attorneys' fees in defending against RideApp's unreasonable tactics.

RideApp's attempt to improperly amend its infringement contentions through an amendment of its complaint rather than under the Patent Local Rules is another example of RideApp's unreasonable litigation tactics and further supports a finding that this case is exceptional.

          c.     **RideApp Adopted a Contradictory Construction of "On-Demand Allocation" During Claim Construction**

As previously discussed in Sections III.D–E of this Motion, RideApp took an untenable and contradictory position on the meaning of "on-demand allocation" after the Patent Office's decision finding the asserted claims of the '730 Patent indefinite.  The approach RideApp used to reach this untenable position further demonstrates RideApp's unreasonableness in litigating this case.

From the beginning of the case, RideApp adopted a definition of "on-demand allocation" that included assigning a passenger to a vehicle.  *See* Sections III.B–C, above.  As previously discussed, RideApp advanced this position before both this Court and the Patent Office, and the Patent Office relied on this position in denying both Lyft's and Unified's Petition for Inter Partes Review.  *See* Section III.D; ECF No. 105-1 at 5–13; ECF No. 105-2 at 5–13.

As soon as RideApp exhausted the usefulness of this position—relying on it to get the IPR

Baker Botts L.L.P.

challenges denied—RideApp did an about-face in favor of a new one, more favorable to the upcoming claim construction dispute.  Immediately following the Patent Office's decision to reject Unified's IPR Petition, RideApp dropped the term "on-demand allocation" from its list of terms to be construed, and without notice, introduced a brand-new definition of the term in its claim construction briefing.  *See* ECF No. 107 at 4–6; ECF No. 101 at 8, n.6 (explicitly tying RideApp's new position to the Patent Office's rejection of Lyft's and Unified's IPR Petitions).  This Court recently awarded attorneys' fees for nearly identical tactics.  *See Straight Path*, 2019 WL 6219220, at *4, *7.

While this Court ultimately rejected RideApp's tactics as "not conducive to the orderly progress of this case" and expressed disapproval of RideApp's actions, RideApp still forced Lyft to incur needless attorneys' fees defending against its unreasonable tactics.  ECF No. 117 at 13.  RideApp's shifting construction of "on-demand allocation" further supports a finding that this case is exceptional.  This Motion directly seeks reimbursement for the unnecessary expenses incurred by Lyft in conjunction with this unreasonable litigation tactic.

### d.   RideApp Failed to Articulate Any Alleged Algorithms Until After It Filed Its Opening Claim Construction Brief

As previously explained in Section IV.A.2, throughout the claim construction process, RideApp took an untenable position with respect to the indefiniteness of the asserted claims which the Patent Office confirmed on July 17, 2019 and again on August 12, 2019 in conjunction with its decisions on IPR Petitions filed by Unified and Lyft.

During this process, RideApp failed to specifically identify any algorithms for performing the claimed functions, choosing instead to indiscriminately cite to large swaths of the specification without explanation.  *See* Ex. F at 4–5.  For example, in its preliminary constructions, for the phrase "a wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system," RideApp cited 927 lines from the '730 Patent (including the entirety of Table 1)— approximately 60% of the written specification—along with seven of the patent's nine figures.  *See id*. at 4.  In the Joint Claim Construction Statement, RideApp again failed to identify any specific algorithms.  Although RideApp identified a number of specific items in figures and specific software

BAKER BOTTS L.L.P.

BAKER BOTTS L.L.P.

1    elements from Table 1, RideApp continued indiscriminately citing large swaths of the written

2    description by claiming "descriptive prose from the intrinsic evidence" corresponded to the claimed

3    functions. *See* ECF No. 93, App'x A at 1–5.

4       In its claim construction briefing, RideApp continued to avoid disclosing specific algorithms

5    for the claimed functions. RideApp's attempts at defining the required algorithm primarily

6    consisted of identifying inputs and output of the claimed functions and swapping terms in claimed

7    functions with their synonyms. *See* ECF No. 101 at 6:26–7:5 (describing inputs and outputs of

8    central data system for "tracking"), 11:1–15 (same for "informing the passenger of the assignment"),

9    13:7–23 (same for "detecting the proximity"); ECF No. 107 at 2:26–3:16 (describing inputs and

10    outputs of "tracking"), 3:28–4:11 ("The 'tracking' algorithm receives inputs (data about the usage,

11    including location and loading) and provides outputs (data about the usage for distribution of

12    periodic invoices) . . . "), 10:1–14 (describing inputs (monitored locations) and outputs (messages)

13    for the "detecting proximity" functions). As this Court noted for the "on-demand allocation" term,

14    "[g]iven the lack of an algorithm, RideApp has in effect claimed everything that performs the task

15    under the sun." ECF No. 117 at 16 (internal quotations omitted).

16       RideApp's failure to properly disclose the purported step-by-step algorithms corresponding

17    to the claimed functions in its claim construction disclosures or briefing further demonstrates the

18    weakness of RideApp's litigation position and supports a finding that this case is exceptional.

19          e.    **RideApp Sought an Unreasonable Amount in Damages**

20       Damages contentions were added to the Northern District of California Patent Local Rules

21    to "inform the parties and the court on issues of relevance and proportionality, and also to create a

22    potential opportunity for meaningful settlement discussions." *LookSmart Grp., Inc. v. Microsoft*

23    *Corp.*, 386 F. Supp. 3d 1222, 1229 (N.D. Cal. June 28, 2019) (internal quotations omitted).

24       The damages contentions served by RideApp in this case sought a "reasonable" royalty of

25    $584 million dollars for the three years ending in 2018 alone, ***plus*** another 4% of all bookings

26    through April 2021, when the '730 Patent expires. Ex. P at 5:14–24. RideApp never amended or

27    adjusted its damages contentions despite the Patent Office finding the asserted claims indefinite

28    eight days later.

1    Although any amount paid for an invalid patent would be too much, RideApp's demand of

2    over half a billion dollars for only a portion of the damages period is outrageous, especially after the

3    Patent Office found the asserted claims indefinite. As this Court previously noted, damages

4    contentions must be updated "[i]f parties know that damages contentions may bear no relation to a

5    party's ultimate theories and thus become stale." *LookSmart*, 386 F. Supp. 3d at 1230. RideApp's

6    unreasonable damages contentions and failure to provide any amendment to the damages

7    contentions after the Patent Office decisions serve as yet additional examples of the extraordinary

8    and unrealistic positions RideApp took throughout this case, contributing to the attorneys' fees Lyft

9    was forced to incur to defend against RideApp's invalid patent.

**B.     Lyft's Requested Attorneys' Fees Are Reasonable**

11    Lyft's attorneys' fees incurred since July 17, 2019, when the Patent Office first found the

12    claims indefinite, are reasonable and should be awarded in full.

**1.     Legal Standards**

14    In patent cases "[t]he methodology of assessing a reasonable award under 35 U.S.C. § 285

15    is within the discretion of the district court." *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353,

16    1355 (Fed. Cir. 2000) (citing *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988)). The use of a

17    lodestar analysis "provides a presumptively reasonable fee award." *Large Audience Display Sys.,*

18    *LLC v. Tennman Prods., LLC*, 745 F. App'x 153, 157 (Fed. Cir. 2018); *see also Lumen View Tech.*

19    *LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) ("[T]he lodestar

20    method . . . provides a presumptively reasonable fee amount by multiplying a reasonable hourly

21    rate by the reasonable number of hours required to litigate a comparable case."). In establishing the

22    reasonable hourly rate, courts in this district have considered such factors as: "(1) the novelty and

23    complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of

24    representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d

25    1154, 1170 (N.D. Cal. 2015) (citations omitted).

26    "Where . . . a prevailing party has obtained excellent results, his attorney should recover a

27    fully compensatory fee. Normally this will encompass all hours reasonably expended on the

28    litigation." *Mathis*, 857 F.2d at 755 (internal citations omitted). This includes the time spent seeking

1    fees.  *See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983);

2    *Mathis v. Hydro Air Indus. Inc.*, No. CV 80-4481, 1986 WL 84360, at *33 (C.D. Cal. Feb. 20, 1986),

3    *aff'd on attorney fee award*, 857 F.2d 749 (Fed. Cir. 1988) ("It is proper to include in the award of

4    attorney's fees the attorney time expended in connection with the Defendants' claim for attorney's

5    fees.").   In addition to fees, disbursements and expenses incurred in defending a case also are

6    recoverable.  *Takeda Chem. Indus., Ltd., v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008);

7    *Automated*, 202 F.3d at 1356; *Mathis*, 857 F.2d at 759.

8                    2.         **The Hourly Rate Paid by Lyft to Its Attorneys Was Reasonable**

9            As detailed in the Declaration of Keith Jurek, Lyft seeks reimbursement for the fees of the

10   four attorney timekeepers who billed over fifty hours during the relevant time period.  The standard

11   billing rates for these attorneys are $970 per hour for partners and range from $670 to $900 per hour

12   for associates.  ("Jurek Decl.") ¶¶ 11, 14, 17, 20.  After discounts and other fee reductions, the rates

13   charged to Lyft are effectively $500–$670 per hour for associates and $826 per hour for partners,

14   which is consistent with rates in the American Intellectual Property Law Association 2019 Report

15   of the Economic Survey ("AIPLA Report") for experienced patent litigation attorneys in the San

16   Francisco market.  Jurek Decl. ¶¶ 22–24; *see also* Ex. O (AIPLA Report) at I-29, I-42.  The Federal

17   Circuit has recognized the appropriateness of using the AIPLA Report to determine comparable

18   reasonable hourly rates.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987–88 (Fed.

19   Cir. 2000) (approving lodestar calculation by a trial court using AIPLA survey); *Mathis*, 857 F.2d

20   at 755–56 (district court's conclusion that billing rates "generally corresponded to those presented

21   in the [AIPLA] surveys and were [thus] reasonable in view of those surveys" was, "as the law makes

22   clear," appropriate).  The Jurek Declaration describes the qualifications, including the special skills

23   and experience, of the attorneys for whose work Lyft seeks compensation.  Jurek Decl. ¶¶ 9, 12, 15,

24   18.  These four attorneys collectively have more than 30 years of experience litigating patents before

25   the United Statement Patent and Trademark Office, the United States International Trade

26   Commission, and various district courts and in preparing and prosecuting patent applications.  *Id.*

27   The attorneys are experienced in technology areas relevant to this case, including networking and

28   telecommunications, consumer electronics, transportation and automotive technologies, location-

BAKER BOTTS L.L.P.

1   based services, and computer software.  *Id.*  Additionally, two of Lyft's attorneys served as law

2   clerks for judges sitting on the United States Court of Appeals for the Ninth Circuit and the Los

3   Angeles Superior Court.

4           The legal issues presented in this case required additional skills beyond that of even a typical

5   patent litigator.  The Court found the asserted claims indefinite on the grounds that the specification

6   failed to describe sufficient corresponding structure, in the form of an algorithm, for the functions

7   claimed in means-plus-function limitations of the asserted claims.  This is an uncommon and

8   complex issue requiring both additional work and skill as compared to more common claim

9   construction issues.  In addition, the results obtained—an order invalidating the asserted claims of

10  the '730 Patent in the claim construction stage of the proceedings—demonstrate the quality of

11  representation provided by Baker Botts to Lyft.  The hourly rates charged by the Baker Botts

12  attorneys are therefore reasonable.

13              3.      **The Number of Hours Billed to Litigate This Case Was Reasonable**

14          Since July 17, 2019, Lyft's attorneys and legal professionals at Baker Botts have spent a

15  total of 882 hours on this case for which Lyft seeks compensation.  This total includes time spent

16  on discovery, claim construction, and motion practice after July 17, 2019 until the Court's order of

17  judgment on October 31, 2019, finding the asserted claims of the '730 Patent invalid and dismissing

18  the case.  This total does not include the hours spent pursuing attorneys' fees in this Motion to which

19  Lyft is entitled.  A description of the hours spent is provided in the concurrently-filed Jurek

20  Declaration.  Jurek Decl. ¶¶ 10, 13, 16, 19.  Upon request, Lyft can provide the Court *in camera*

21  inspection of the billing records kept by Baker Botts which demonstrate the reasonableness of the

22  amount of time spent by the attorneys during the relevant time periods.

23              4.      **The Attorneys' Fees which Lyft Seeks are Reasonable**

24          The $569,254.34 in attorneys' fees Lyft is seeking resulting from the hours worked and rates

25  charged is reasonable for several reasons.  ***First***, Lyft only seeks fees incurred after July 17, 2019,

26  when the Patent Office found the asserted claims of the '730 Patent indefinite.  Lyft is not seeking

27  fees incurred from the beginning of the case, despite RideApp's unreasonable tactics throughout the

28  case starting with RideApp filing the case in S.D.N.Y., a forum that lacked any meaningful

BAKER BOTTS L.L.P.

BAKER BOTTS L.L.P.

1  connection to the case or parties.  *See Cent. Soya Co., Inc.*, 723 F.2d at 1578; *Mathis*, 857 F.2d 749

2  at 755.  Lyft only seeks those attorneys' fees associated with litigating beyond the point when the

3  indefiniteness of the asserted claims became undeniable due to the Patent Office's decision, which

4  sets this case apart from others and makes it exceptional.  Lyft also only seeks reimbursement for

5  attorneys who spent more than fifty hours on the case after July 17, 2019.  ***Second***, a very favorable

6  result was obtained—invalidity of all asserted claims of the '730 Patent after claim construction—

7  avoiding intensive pretrial and trial phases of the case and the latter phases of fact discovery.

8      ***Third***, the fees Lyft seeks are reasonable for high-stakes patent litigation.  RideApp sought

9  over $580 million in damages for just three of the ten years in the purported damages period, and

10  RideApp initially sought an injunction that would have prevented Lyft from operating its ridesharing

11  business.  *See* Ex. P (RideApp's damages contentions); ECF No. 1.  Lyft incurred substantially less

12  attorneys' fees than the median amount expected through claim construction in cases where non-

13  practicing entities seek over $25 million in damages.  Jurek Decl. ¶ 27; *see also* Ex. O (AIPLA

14  Report), at I-145 (median estimated cost of litigation through claim construction where more than

15  $25 million at risk was $2,375,000), I-169 (same median estimated cost in litigation defending

16  against non-practicing entity was $2,500,000).  The fees Lyft seeks, a subset of reasonable fees paid

17  by Lyft, are appropriate, and they should be awarded in full.

18  **V.      CONCLUSION**

19      For the reasons stated herein, Lyft respectfully requests the Court award Lyft $569,254.34

20  in attorneys' fees incurred after July 17, 2019 through October 31, 2019 and the attorneys' fees

21  incurred preparing this motion, any reply in support of this motion, and related hearings.

23  Dated:  December 2, 2019                    Respectfully submitted,

24                                              **BAKER BOTTS L.L.P.**

25                                              */s/ Jeremy J. Taylor*

26                                              Bryant C. Boren, Jr. (SBN 260602)
27                                              bryant.c.boren@bakerbotts.com
                                                Elizabeth K. Boggs (SBN 280555)
28                                              betsy.boggs@bakerbotts.com

John F. Gaustad (SBN 279893)
john.gaustad@bakerbotts.com
Keith M. Jurek (SBN 310856)
keith.jurek@bakerbotts.com
**BAKER BOTTS L.L.P.**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Phone: (650) 739-7500
Fax: (650) 739-7699

Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3600
San Francisco, CA 94111
Tel: (415) 291-6200
Fax: (415) 291-6300

Jennifer C. Tempesta (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, NY 10112
Phone: (212) 408-2500
Fax: (212) 408-2501

*Attorneys for Defendant LYFT, INC.*