Jeffrey J. Toney (*admitted pro hac vice*)
jtoney@kasowitz.com
Ralph E. Gaskins (*admitted pro hac vice*)
rgaskins@kasowitz.com
Jackie L. Toney (*admitted pro hac vice*)
jatoney@kasowitz.com
Paul G. Williams (*admitted pro hac vice*)
pwilliams@kasowitz.com
Hala S. Mourad (*admitted pro hac vice*)
hmourad@kasowitz.com
KASOWITZ BENSON TORRES LLP
1349 West Peachtree Street NW, Suite 1500
Atlanta, Ga 30309
Telephone:  (404) 260-6080
Facsimile:  (404) 260-6081

Lyn R. Agre (SBN 178218)
lagre@kasowitz.com
Margaret A. Ziemianek (SBN 233418)
mziemianek@kasowitz.com
KASOWITZ BENSON TORRES LLP
101 California Street, Suite 3000
San Francisco, California  94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

Attorneys for Plaintiff RideApp, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIDEAPP, INC., <br><br> Plaintiff, <br><br> v. <br><br> LYFT, INC. <br><br> Defendant. | Case No.  4:18-CV-07152-JST <br><br> **RIDEAPP, INC.'S RESPONSE TO LYFT, INC.'S MOTION FOR ATTORNEYS' FEES** |

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED .................................................. 1

III.  STATEMENT OF RELEVANT FACTS ............................................................. 2

    A.  Professor Dickerson invents integrated transit system, seeks to develop it. ........ 2

    B.  RideApp sues Lyft, later Juno, in SDNY ............................................. 3

    C.  Lyft obtains transfer to NDCal for forum non *conveniens*. ................................. 4

    D.  Lyft Petitions for IPR in which RideApp submits a Preliminary Response. ........ 4

    E.  RideApp Reevaluated Its Case And Decided To Seek Its Day In Court. ............. 5

IV.  LEGAL ARGUMENT ........................................................................................ 5

    A.  This Case Is Not "Exceptional" and Does Not Merit a Fee Award. ..................... 5

        1.  Only the Rare "Exceptional Case" Merits Discretionary Fee Shifting. ........................................................................................ 5

        2.  PTAB Dicta Did Not Render RideApp's Case "Frivolous." .................... 6

        3.  RideApp Litigated Reasonably and in Good Faith. ............................... 12

            a.  RideApp Reasonably Filed in New York, added Bikesharing. ........................................................................ 12

            b.  RideApp Followed Federal and Local Rules in Good Faith. ....... 14

            c.  RideApp Consistently Sought Reasonable Construction of "Allocation." ................................................................. 15

            d.  RideApp And Its Experts Disclosed Consistent Algorithms. ................................................................... 18

            e.  RideApp disclosed a damages *theory*, informed by public information, without the benefit of discovery from Lyft. ........... 20

    B.  Lyft's Motion for RideApp to Pay Fees is Unwarranted and Unreasonable. ................................................................................ 21

        1.  Over a Half-Million Dollars for a Responsive Brief is Excessive. ......... 21

        2.  Alternatively, the Court Should Defer Ruling on Lyft's Motion or Deny it Without Prejudice Pending RideApp's Appeal. ....................... 24

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3form, Inc. v. Lumicor, Inc.*,
    No. 2:12-CV-293, 2018 WL 4688348 (D. Utah Sept. 28, 2018) ....................8

*In re Acacia Media Techs. Corp.*,
    No. C 05-01114 JW, 2010 WL 2179875 (N.D. Cal. May 25, 2010)...............7

*AG et al v. Under Armour Inc.*,
    Case No. 1:14-cv-00130, D.I. 201, Slip. Op. (D. Del. Dec. 15, 2015)............8

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    No. 2018-2140, 941 F.3d 1320 (Fed. Cir. Oct. 31, 2019) ............................11

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808
    F.2d 1373 (9th Cir. 1987) ..............................................................................21

*Checkpoint Systems, Inc. v. All-Tag Security, S.A.*,
    858 F.3d 1371 (Fed. Cir. 2017) ..................................................................6, 19

*Cuozzo Speed Technologies, LLC v. Lee*,
    136 S. Ct. 2131 (2016)....................................................................................9

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*,
    656 F. Supp. 1343 (D. Del. 1987), *aff'd in part, vacated in part, rev'd in part
    on other grounds*, 849 F.2d 1430 (Fed. Cir. 1988).......................................11

*G.P.P., Inc. v. Guardian Prot. Prods., Inc.*,
    No. 1:15-CV-00321-SKO, 2018 WL 932087 (E.D. Cal. Feb. 16, 2018).......24

*Gametek LLC v. Zynga, Inc.*,
    No. CV 13-2546 RS, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014) ..........6, 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................21

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
    112 F. Supp. 3d 888 (D. Minn. 2015)............................................................13

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) .......................................................................8

*J & J Sports Prods., Inc. v. Duong*,
    No. 13-CV-02002-LHK, 2014 WL 1478498 (N.D. Cal. Apr. 14, 2014) .......21

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

*Joe Hand Promotions, Inc. v. Be*,
   No. 11-CV-01333-LHK, 2011 WL 5105375 (N.D. Cal. Oct. 26, 2011)........22

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014)................8

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014).................8

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
   No. CV 17-14-JFB-SRF, 2019 WL 1873281 (D. Del. Apr. 26, 2019)............9

*Microwave Vision, S.A. v. ETS-Lindgren Inc.*,
   209 F. Supp. 3d 1322 (N.D. Ga. 2016)...................................8, 9, 10

*Modine Mfg. Co. v. Allen Grp., Inc.*,
   917 F.2d 538 (Fed. Cir. 1990) ..........................................6

*Nautilus Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)....................................................9

*Novartis AG v. Noven Pharm. Inc.*,
   853 F.3d 1289 (Fed. Cir. 2017) .........................................9

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
   572 U.S. 545 (2014)...............................................5, 6, 13

*Papst Licensing Gmbh & Co. KG v. Xilinx Inc.*,
   No. 16-cv-00926-LHK, 2016 WL 4398376 (N.D. Cal. Aug. 18, 2016) ........12

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .......................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   No. 09-CV-05235-MMC, 2017 WL 130236 (N.D. Cal. Jan. 13, 2017)...........6

*In re Protegrity Corp.*,
   No. 3:15-md-02600-JD, 2017 WL 747329 (N.D. Cal. Feb. 27, 2017)...........12

*Reading Int'l, Inc. v. Malulani Grp., Ltd.*,
   No. CV 13-00133..................................................25

*Riddell, Inc. v. Kranos Corp.*,
   No. 16 C 4496, 2017 WL 2349714 (N.D. Ill. May 30, 2017) ........................9

*RideApp v. Juno USA, Inc.*,
   No. 18-cv-11579 (S.D.N.Y filed Dec. 11, 2018)......................4, 12

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

*Ryujin Fujinomaki v. Google, LLC*,
No. 3:16-cv-03137-JD, 2018 WL 3632104 (N.D. Cal. July 31, 2018) ..........12

*Sarif Biomedical LLC v. Brainlab, Inc.*,
725 F. App'x 996 (Fed. Cir. 2018) ......................................................7, 10, 17

*Segan LLC v. Zynga Inc*,
131 F. Supp. 3d 956 (N.D. Cal. 2015) .................................................................8

*Small v. Implant Direct Mfg. LLC*,
No. 06 Civ. 683 (NRB), 2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014) ...........6

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
No. C 16-03463 WHA, 2019 WL 6219220 (N.D. Cal. Nov. 20, 2019)...........7

*SunPower Corp. v. PanelClaw, Inc.*,
1:12-cv- 1633-MPT, 2016 WL 1293479 (D. Del. Apr. 1, 2016) ....................8

*TainoApp, Inc. v. Amazon.com Inc.*,
No. 15-CV-00101-JSW, 2015 WL 13404107 (N.D. Cal. Sept. 22, 2015) .....21

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) .........................................................................8

*Think Prods., Inc. v. ACCO Brands Corp.*,
No. 14-CV-6659 (KAM) (SIL), 2019 WL 5694131 (July 22, 2019
E.D.N.Y.).............................................................................................17, 18

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
846 F.3d 1190 (Fed. Cir. 2017) .....................................................................8, 9

*UUSI, LLC v. United States*,
No. 12-216C, 131 Fed. Cl. 244 (Fed. Cl. 2017) ............................................9

*Vasudevan Software, Inc. v. Microstrategy, Inc.*,
No. 11-cv-06637 RS, 2015 WL 4940635 (N.D. Cal. Aug. 19, 2015) .............6

*Zynga Game Network Inc. v. Erkan*,
No. 09-3264 SC, 2010 WL 3463630 (N.D. Cal. Aug. 31, 2010) ..................22

**Statutes**

35 U.S.C. § 285 ...........................................................................................................5

35 U.S.C. § 311(b)......................................................................................................10

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

## I.   **INTRODUCTION**

Professor Dickerson was ahead of his time.  He conceived of a transit system in 1999 that would form that basis of a multi-billion dollar industry ten years later.  He filed a patent application for his invention at a time when means-plus-function limitations were commonplace, even favored, so long as the patent was drafted in language that a skilled artisan understood how to practice the claims.  The Patent Office examined that patent thoroughly over more than 3 years; while the examiner challenged Professor Dickerson on many aspects of his claims, not once did the examiner question the definiteness of the means-plus-function limitations.  The '730 Patent ultimately issued on February 24, 2004.

RideApp is a small company and the '730 Patent is one of its most important assets.  It hopes to develop the system disclosed in the patent—the entire system, not just ridesharing, but integrating that with mass transit, rental cars, vanpools—and believes in good faith that its patent is sound and that Lyft infringes.  So it filed suit.  It retained world-renowned experts and was guided by their expertise.  And it has worked hard to get its day in court against an opponent with limitless resources, before a constitutionally-appointed Article III judge, as our system provides.

The Court found against RideApp.  But despite this loss, RideApp's good-faith efforts to enforce its patent in court should not be penalized as requested by Lyft.  RideApp respectfully requests that the Court deny the motion to award Lyft its substantial—indeed excessive—fees.

## II.   **STATEMENT OF ISSUES TO BE DECIDED**

Whether this is a rare "exceptional case" that justifies a fee award against RideApp?

Whether RideApp engaged in litigation conduct so "egregious" that a fee award is warranted?

Whether, in any event, the Court should exercise its discretion to award fees against a small company attempting to protect its single most important asset, the '730 Patent?

Whether Lyft has sufficiently proved its fees and demonstrated they are reasonable?

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

III.   **STATEMENT OF RELEVANT FACTS**

A.   **Professor Dickerson invents integrated transit system, seeks to develop it.**

Professor Stephen Dickerson retired from Georgia Tech as a Professor Emeritus in 1996, although he continued to teach mechanical engineering for years.  He also had a longstanding interest in transit.  As set forth in the Second Amended Complaint and previous briefing, he developed the first commercial van-pool company in the southeast in 1975.  By the late 1990s, he became interested in developing a more comprehensive transit system that would incorporate mass transit, rental cars and ride-sharing to provide greater convenience and service to passengers, and to reduce the social and personal costs of commuting.

In 1999, Professor Dickerson developed a comprehensive transit system that integrated ride-sharing, car rental, and mass transit; GPS geo-location technology; and secure automated billing.  He drafted a patent application that disclosed his system and filed it with the U.S. Patent Office on April 4, 2000.  The patent application was extensively prosecuted by an examiner in the Patent Office.  After more than three years of examination, the Patent Office issued U.S. Patent No. 6,697,730 (the "'730 Patent") on February 24, 2004.  As required by university policy, Professor Dickerson assigned his patent to the Georgia Tech Research Corporation.  Notably, at no time during the three years of examination did the Examiner question the definiteness of any of the '730 Patent's means-plus-function claim terms.

Over a decade after Professor Dickerson filed his patent application, Lyft, Inc. ("Lyft") was formed.  The core of Lyft's business and technical platforms for its rideshare and bikeshare services practice the transportation system of Professor Dickerson's invention.  Lyft is a Delaware company with significant operations in San Francisco and New York.

As the '730 Patent neared expiration, Professor Dickerson formed RideApp and reacquired the '730 Patent, intending to practice the invention by (at first) integrating all of the transit modes supervised by the Atlanta Transit Agency Board, to which he has been elected. He hoped to finance that development through licensing and enforcement of the '730 Patent as has been described in these proceedings.  He was aware that multiple companies practiced his

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

invention, including Lyft (which has significant engineering presence in New York) and Juno and certain bikesharing companies (these operate *only* in New York).

### B.    RideApp sues Lyft, later Juno, in SDNY

After a months-long pre-suit investigation of the prior art and the strength of the '730 Patent, Lyft's transit system, Lyft's system architecture, and Lyft's applications, RideApp concluded that Lyft's ridesharing system practiced certain claims of the '730 Patent.  RideApp sued Lyft on July 23, 2018.  The Complaint was specific and extensive.  It included detailed averments of Lyft's transit system, including the functionality of Lyft's software and hardware for the passenger and for the driver, and the way the two interacted with each other, with the cellphone system, and with current GPS systems.  The averments of the Complaint evidence a thorough pre-suit investigation of the architecture of Lyft's system.

Shortly before RideApp filed suit against Lyft, Lyft made public announcements that it had acquired Motivate.  Motivate operated a bike-sharing system in New York ("CitiBike").  RideApp commenced but was not able to complete a thorough pre-suit investigation of Motivate before filing suit against Lyft.  After approximately two months of analysis and investigations, RideApp determined that Motivate's bikesharing system also infringed the '730 Patent.  RideApp therefore amended its Complaint to add Motivate, and included averments about its bikesharing system that were as detailed and thorough as those asserted against Lyft.

Lyft's counsel and Lyft's subsequent public statements indicated that Lyft had acquired only certain operations of Motivate, but not the company itself.  Lyft further represented that, contrary to public statements, the acquisition of Lyft had not yet "closed" and that Lyft did not yet provide bikesharing.  RideApp therefore dismissed Motivate without prejudice.  (Dkt. 33.) In a Declaration filed over a month after Lyft filed its Motion to Transfer, in connection with its Reply Brief, Lyft confirmed under oath that the acquisition of Motivate had not yet closed. (Dkt. 45 at ¶ 2 [Van Houten Decl. 10/31/2018].)

In parallel, RideApp investigated the system employed by Juno USA, Inc., a similar ridesharing business that operates *only* in New York and the surrounding area.  RideApp

1    concluded that Juno's system infringed the claims of the '730 Patent and began to prepare that

2    suit, hoping to consolidate it with this case in the Southern District of New York ("SDNY").

3    RideApp filed its suit against Juno in New York.  *See RideApp v. Juno USA, Inc.*, No. 18-cv-

4    11579 (S.D.N.Y filed Dec. 11, 2018).

5            **C.    Lyft obtains transfer to NDCal for forum non *conveniens*.**

6            Lyft admitted that it maintained business locations within SDNY and a New York agent

7    for service of process.  (Dkt. 40 at ¶ 3.)  Lyft has offices in Jersey City and lower Manhattan,

8    the latter housing 50 engineers.  (Dkt. 37 at 3.)  Lyft further conceded to the court in SDNY that

9    it did not intend to dispute subject matter jurisdiction or venue in SDNY.  (Dkt. 17 at 3.)  In

10   short, RideApp filed suit in a jurisdiction in which Lyft could not contest venue.  (*See, e.g.*, Dkt.

11   41 at 2-3; Dkt. 42-1; Dkt. 42-2 at 3-4.)

12           Lyft sought transfer to N.D. Cal. under Section 1404(a), seeking the more convenient

13   forum.  The court in SDNY granted that motion by Order dated Nov. 16, 2018.  (Dkt. 46)

14           **D.    Lyft Petitions for IPR in which RideApp submits a Preliminary Response.**

15           In parallel to the litigation proceedings, Lyft filed a petition seeking *Inter Partes* Review

16   ("IPR") of the asserted claims of the '730 Patent.  In that Petition, Lyft asserted a total of 15

17   different primary and secondary sources, in various combinations of up to three combined

18   references, and argued seven different grounds on which the '730 Patent should be held invalid.

19   Regarding claim construction, Lyft argued that the Patent disclosed only a "general purpose

20   computer" but did not point to any of the algorithms disclosed in the specification as

21   corresponding structure.  (Dkt. 105-7 at 18-19.)

22           RideApp was not required to file a response to this Petition, and all deadlines for claim

23   construction disclosures in the district court were still months away.  RideApp nevertheless

24   elected to file a Preliminary Response that focused on the algorithms and structure in the '730

25   Patent that Lyft had overlooked.  Thus, RideApp pointed to the essential structure set forth in

26   Figure 9 and Table 1, including the subroutines described in Figures 5 and 6, and the intrinsic

27   evidence that described the interaction between those algorithms at columns 7-8 and 14-15.

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

RideApp also noted that, even in combination, the references cited in the Petition failed to disclose essential elements of the '730 Patent, including *on-demand allocation* and *tracking*. This preliminary response did not include formal or complete claim constructions.

The PTAB reviewed Lyft's Petition and RideApp's Preliminary Response to discern corresponding structure.  PTAB concluded that it could not, on its own without benefit of a Formal Response from RideApp, discern sufficient structure.  It concluded that the claims were not sufficiently definite to institute the IPR.  RideApp had no right to appeal; its only avenue for review was before this Article III Court.

**E.    RideApp Reevaluated Its Case And Decided To Seek Its Day In Court.**

While the PTAB opinion was dicta, RideApp took its opinion seriously.  RideApp already had retained Mr. Roger Jellicoe as an expert.  (Declaration of Jeffrey J. Toney in Support of RideApp, Inc.'s Response to Lyft, Inc.'s Motion for Attorneys' Fees ("Toney Decl.") at ¶ 6.)  Mr. Jellicoe is one of the leading experts in wireless communications; his qualifications are of record, include being the leader of the development of the Motorola RAZR cell phone, which quickly became one of the largest selling cellphones in history.  (Id.) RideApp sought his analysis.  (Id. at ¶ 12, 14.)  RideApp also had consulted with Mr. David Yen, and sought a second opinion from him.  (Id. at ¶ 13, 14.)  Mr. Yen's qualifications are of record, but included managing 1300 engineers at Motorola, including the team that wrote software for RAZR.  Both experts, consulted independently, rejected the PTAB's opinion, opining that the algorithms disclosed in the '730 Patent set forth precisely the detailed algorithms with which engineers of ordinary skill—that is, their subordinate engineers—worked from regularly.  (Id. at ¶ 12-16.)

**IV.    LEGAL ARGUMENT**

**A.    This Case Is Not "Exceptional" and Does Not Merit a Fee Award.**

**1.    Only the Rare "Exceptional Case" Merits Discretionary Fee Shifting.**

The Patent Act allows recovery of attorneys' fees only when a case is "exceptional," and an exceptional case is "rare."  *See* 35 U.S.C. § 285; *Octane Fitness, LLC v. Icon Health &*

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1   *Fitness, Inc.*, 572 U.S. 545, 554-55 (2014).  The Supreme Court has held that an "exceptional"

2   case is "one that stands out from others with respect to the substantive strength of a party's

3   litigating position (considering both the governing law and the facts of the case) or the

4   unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.  A case

5   "presenting either subjective bad faith or exceptionally meritless claims" may set itself apart

6   sufficiently to warrant a fee award.  *Id.* at 555.

7      "[W]here a party has set forth some good faith argument in favor of its positions it will

8   generally not be found to have advanced exceptionally meritless claims."  *Power Integrations,*

9   *Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-CV-05235-MMC, 2017 WL 130236, at *6

10  (N.D. Cal. Jan. 13, 2017); *Small v. Implant Direct Mfg. LLC*, No. 06 Civ. 683 (NRB), 2014 WL

11  5463621, at *3 (S.D.N.Y. Oct. 23, 2014) (same).  Fee awards "are not to be used 'as a penalty

12  for failure to win a patent infringement suit.'"  *Checkpoint Systems, Inc. v. All-Tag Security,*

13  *S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (citing *Octane Fitness*, 572 U.S. 548-549).

14     With respect to the manner of litigation, post-*Octane* decisions awarding fees involve

15  cases of "egregious behavior."  *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL

16  4351414 at *3 (N.D. Cal. Sept. 2, 2014).  "[M]erely taking an aggressive stance while positing

17  stretched or unsuccessful infringement theories does not, without more, warrant fee-shifting."

18  *Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-06637 RS, 2015 WL 4940635, at *5

19  (N.D. Cal. Aug. 19, 2015).

20     If a case is determined to be exceptional, "[t]he decision whether or not to award fees is

21  still committed to the discretion of the trial judge, and even an exceptional case does not require

22  in all circumstances the award of attorney fees."  *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d

23  538, 543 (Fed. Cir. 1990) (internal quotation and citation omitted).

24     **2.**    **PTAB Dicta Did Not Render RideApp's Case "Frivolous."**

25     Lyft argues that RideApp's case was rendered "frivolous" when the PTAB opined that

26  two of its means-plus-function limitations were not definite.  (Dkt. 127 at 8.)  In fact, that

27  opinion was at best dicta, rendered by a body that is statutorily *not permitted* to reach such a

28

1    conclusion, that includes administrative judges that were unconstitutionally appointed, and from

2    which there is no appeal.  RideApp's good-faith efforts to have its day in court, before an

3    Article III judge from which appeal can be had, do not warrant fee shifting.

4        *First*, courts do not impose fee awards on parties that clarify claim construction in light

5    of PTAB or court comment and criticism.  In a nearly identical case, the Federal Circuit

6    affirmed the district court's denial of the defendant's request for attorney fees.  In *Sarif*

7    *Biomedical LLC v. Brainlab, Inc.*, the defendant in a district court litigation petitioned for IPR.

8    No. 13-846-LPS, 2016 WL 5422479, at *1 (D. Del. Sept. 27, 2016), aff'd, 725 F. App'x 996

9    (Fed. Cir. 2018).  The PTAB declined to institute IPR because it believed certain claims to be

10   indefinite.  *Id.*  The patentee continued to assert those same claims in the district court litigation.

11   *Id.*  The patentee also repeatedly and substantially changed its claim construction positions

12   throughout the litigation, including in light of the PTAB's decision.  *Id.* at *2.  That court

13   determined that nothing about the case stood out as "exceptional" in any respect.  *Id.* at *3.

14   Although ultimately incorrect, the plaintiff had a good faith belief that its claims were not

15   indefinite and supported its constructions with detailed arguments and evidence, including

16   expert testimony.  *Id.* at *2.  The Court noted that claim construction positions routinely evolve

17   over the course of litigation and further acknowledged the "reasonable[ness] for a patentee

18   which believes in the validity of its claims to revise, clarify, or refine its claim construction

19   strategy in light of a PTAB opinion that the claims are indefinite."  *Id.*; *see also In re Acacia*

20   *Media Techs. Corp.*, No. C 05-01114 JW, 2010 WL 2179875, at *4 (N.D. Cal. May 25, 2010)

21   ("it would hinder litigation and the claim construction process to find a change in claim

22   construction position to be vexatious or improper, since the Court's role is to determine the

23   proper construction, which may entail an evolving understanding of the claim terms.  Thus, the

24   Court finds that this act by Plaintiff does not support finding the case exceptional.")

25       In contrast, the cases Lyft cites involve parties that take *directly contradictory* positions,

26   taking positions that contradict opinions of counsel, or winning (not losing) on a position in one

27   forum, *e.g.*, to preserve validity, then taking the opposite positions in another, *e.g.*, to prove

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

28

infringement.  None of Lyft's citations resemble this matter.  *See Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, No. C 16-03463 WHA, 2019 WL 6219220, at *4 (N.D. Cal. Nov. 20, 2019) (patentee made *opposite* representations to the Federal Circuit and Northern District of California as they related to validity and infringement, respectively); *3form, Inc. v. Lumicor, Inc.*, No. 2:12-CV-293, 2018 WL 4688348, at *5 (D. Utah Sept. 28, 2018) (patentee, among other things, distinguished a prior art product before the Patent Office to preserve validity and then *accused the same product of infringement*).  *See Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *10, *11 (N.D. Cal. Aug. 12, 2014) (patentee alleged infringement literally and under doctrine of equivalents despite having *an opinion of counsel* stating no literal infringement and no basis as to the doctrine of equivalents); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *5 (N.D. Cal. Sept. 15, 2014) (patentee "repeatedly attempted to broaden the reach of its patents to capture technology it knew it did not invent" and continued to litigate meritless infringement positions); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017) (patentee ignored *binding* Federal Circuit precedent and continued to litigate meritless infringement positions); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (patentee demonstrated subjective bad faith); *Segan LLC v. Zynga Inc*, 131 F. Supp. 3d 956, 960 (N.D. Cal. 2015) (asserted patent described an invention completely different from product patentee accused of infringing.)

    **Second**, PTAB decisions—especially those rendered at the preliminary stages, without benefit of a formal Patent Owner's Response—are not binding in any way on the district court. *See Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 n.7 (Fed. Cir. 2017) ("The PTAB's decision is not binding on this court[.]"); *Microwave Vision, S.A. v. ETS-Lindgren Inc.*, 209 F. Supp. 3d 1322, 1327 (N.D. Ga. 2016) ("The PTAB decision . . . has no binding effect on this Court."); *SunPower Corp. v. PanelClaw, Inc.*, 1:12-cv- 1633-MPT, 2016 WL 1293479, at *9 (D. Del. Apr. 1, 2016) (PTAB analysis on indefiniteness not binding); Ex.

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1     B, *Adidas AG et al v. Under Armour Inc.*, Case No. 1:14-cv-00130, D.I. 201, Slip. Op. at 2 n.1

2     (D. Del. Dec. 15, 2015) ("The court is not bound by a preliminary claim construction used by

3     the PTAB for the limited purpose of denying an IPR request.").

4     The Federal Circuit has indicated that even the PTAB itself is not bound by findings it

5     makes in decisions to institute IPRs—that is, decisions made only after a Patent Owner's

6     Preliminary Response, without benefit of a Formal Response—because the findings are

7     inherently preliminary and made without the benefit of a full record. *Riddell, Inc. v. Kranos*

8     *Corp.*, No. 16 C 4496, 2017 WL 2349714, at *4 (N.D. Ill. May 30, 2017) (citing *Trivascular,*

9     *Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016)).  District courts *frequently* reach

10    conclusions contrary to those of the PTAB.  *See Tinnus*, 846 F.3d at 1202 n.7 (finding that the

11    district court did not abuse its discretion in issuing a preliminary injunction barring the sale of

12    products accused of infringing patent claims held indefinite by the PTAB); *UUSI, LLC v.*

13    *United States*, No. 12-216C, 131 Fed. Cl. 244, 265 (Fed. Cl. 2017) (rejecting PTAB

14    construction, which was only preliminary and "did not have any input from the patent owner");

15    *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. CV 17-14-JFB-SRF, 2019 WL 1873281, at *6 (D. Del.

16    Apr. 26, 2019) (entering a preliminary injunction barring the sale of products accused of

17    infringing patent claims held unpatentable by the PTAB); *Microwave Vision*, 209 F. Supp. 3d at

18    1331 (refusing to adopt the PTAB's finding of indefiniteness and explaining that "the PTAB

19    and this Court simply disagree that the '170 Patent fails to 'clearly associate' the structures in

20    Figures 1 and 2 with the 'both' pivot function.").  The PTAB and district court may also

21    properly reach different conclusions based on the same evidence because of the different

22    standards of evidence.  *See, e.g.*, *Novartis AG v. Noven Pharm. Inc.*, 853 F.3d 1289, 1294 (Fed.

23    Cir. 2017).  A PTAB petitioner has the burden to prove unpatentability only by a preponderance

24    of the evidence, whereas a defendant in a district court case must prove indefiniteness by the

25    higher clear and convincing standard set forth by the Supreme Court in *Nautilus Inc. v. Biosig*

26

27    ¹ All references to "Ex. __" are to the exhibits attached to the Toney Decl. filed concurrently
      herewith.

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1    *Instruments, Inc.*, 572 U.S. 898 (2014).

2        ***Third***, the PTAB has no authority to opine that the '730 Patent is indefinite, and any

3    such opinion is pure dicta.  The Supreme Court has expressly recognized that the PTAB lacks

4    authority to determine indefiniteness under Section 112.[2]  *See Cuozzo Speed Technologies, LLC*

5    *v. Lee*, 136 S. Ct. 2131, 2141-42 (2016) ("nor does our interpretation enable the agency to act

6    outside its statutory limits by, for example, canceling a patent for 'indefiniteness under § 112' in

7    *inter partes* review"; "Such 'shenanigans' may be properly reviewable [and] reviewing courts

8    [may] 'set aside agency action' that is 'contrary to constitutional right,' "in excess of statutory

9    jurisdiction,' or 'arbitrary [and] capricious.'"); *see also* 35 U.S.C. § 311(b) ("A petitioner in an

10   *inter partes* review may request to cancel as unpatentable . . . claims of a patent only on a

11   ground that could be raised under section 102 or 103 and only on the basis of prior art

12   consisting of patents or printed publications.").  It was Lyft's burden to present the correct

13   construction of the claim terms and having failed to do so, the PTAB attempted to do so without

14   the benefit of a full record.  *See Microwave Vision*, 209 F. Supp. 3d at 1327 (declining to alter

15   claim construction in view of contrary PTAB decision where the PTAB "ruled based on a more

16   limited record than that before this Court").  As the Federal Circuit has stated, relying on this as

17   evidence of the weakness of a party's position "places too much significance on the PTAB's

18   determination" because "[t]he PTAB does not have authority to institute an *inter partes* review

19   under § 112." *Sarif Biomedical LLC v. Brainlab, Inc.*, 725 F. App'x 996, 1000 (Fed. Cir. 2018).

20       ***Fourth***, determining that RideApp must accept PTAB dicta or face a fee award deprives

21   RideApp of its constitutional right to due process.  Decisions *denying* institution of IPR

22   petitions are not appealable, so an opinion in dicta that a patent term is indefinite cannot be

23   ───────────────

24   [2] Commentators have noted that this topic should be welcomed by the Supreme Court for
     judicial review.  *See* Ex. C, John Alemanni & Michael Morlock, "Are PTAB Non-Institution
     Decisions Based on Indefiniteness Defensible post_SAS," available at

25   http://kilpatrickpostgrant.com/alerts/are-ptab-non-institution-decisions-based-on-indefiniteness-
     defensible-post-sas/ (last accessed January 3, 2020).  There is also a strong public interest in

26   resolving this question because it touches upon the adjudication of property rights and the

27   proper role of the PTAB, which is of particular importance given the Federal Circuit's recent
     ruling of the PTAB's unconstitutionality.

28

reversed or corrected on appeal.[3]  If this PTAB dicta compels a patentee to dismiss their case in district court or face a fee award, RideApp and other patentees would be deprived of their right to be heard in any Article III court, effectively extinguishing their intellectual property rights. The cancellation of RideApp's rights under those circumstances would be particularly egregious because RideApp was not afforded a full and fair opportunity to litigate this issue at the PTAB. *See E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 656 F. Supp. 1343, 1353 (D. Del. 1987), *aff'd in part, vacated in part, rev'd in part on other grounds*, 849 F.2d 1430 (Fed. Cir. 1988).  Multiple commentaries have noted that the Board declining to institute based on indefiniteness grounds is a topic ripe for judicial review.  *See, e.g.*, Ex. C .

*Fifth*, as pointed out below, RideApp did not take "contradictory positions" about claim construction somehow to game the system.  RideApp was not obliged to take *any* position in the IPR, but elected to point to the many algorithms overlooked by Lyft.  The PTAB performed its own construction analysis without the benefit of a full record for the limited purpose of deciding whether to institute an IPR request.  RideApp considered the PTAB's comments and— expressly, in full view—clarified and refined its claim construction positions.  Lyft, for its part, was able to articulate structure before the Court, albeit in the alternative.

RideApp did exactly that.  The goal is to achieve correct claim construction without imposing improper limitations on the claims.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005).  The fact that RideApp did not prevail does not render its position frivolous. The purpose of Section 285 is to avoid gross injustices, not to impose penalties for not winning.

*Sixth and finally*, the PTAB comprises administrative judges that were not appointed constitutionally.  The constitutionality of the PTAB has long been in question and, at the time the Lyft IPR was pending, was the subject of multiple attacks in the courts.  Two weeks after the Court issued its claim construction decision in this matter, the Federal Circuit ruled that the

---

[3] While Lyft contends that RideApp was the prevailing party in the IPR because it "beat the Patent Office challenges" (Dkt. 127 at 9), that directly contradicts Lyft's argument that RideApp should have accepted its IPR loss and dismissed this matter (Id. at 8-9).

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1   PTAB judges were not constitutionally appointed, determining that portions of the PTAB

2   implementing statutes violate the Appointments Clause of the U.S. Constitution. *Arthrex, Inc.*

3   *v. Smith & Nephew, Inc.*, No. 2018-2140, 941 F.3d 1320 (Fed. Cir. Oct. 31, 2019); *see* U.S.

4   Const., art II, §2, cl. 2. Given that uncertainty, RideApp reasonably sought its day in an Article

5   III court.

6          **3.      RideApp Litigated Reasonably and in Good Faith.**

7                 a.      **RideApp Reasonably Filed in New York, added Bikesharing.**

8          As set forth above, Lyft has not disputed its significant presence in New York. The fact

9   that the S.D.N.Y. court chose to transfer the case based on convenience factors does not belie

10  the fact that jurisdiction and venue were proper in that court.

11         Contrary to Lyft's description (Dkt. 127 at 2-3, 12-13), there were significant

12  connections between Lyft and S.D.N.Y. Presumably, if there were none, Lyft would have

13  easily obtained a dismissal—better than a transfer. Lyft's assertion that that there was "no

14  connection" to New York is demonstrably false. Further, Lyft's conjecture and innuendo about

15  RideApp's nefarious intentions aside, RideApp was on the verge of bringing suit against at least

16  one other company that is located *only* in SDNY and sought the economies that would result.

17  RideApp brought that suit shortly thereafter. *See RideApp v. Juno USA, Inc.*, No. 18-cv-11579

18  (S.D.N.Y filed Dec. 11, 2018).

19         Courts decline to impose sanctions, let alone fee awards, simply because a case is

20  subsequently transferred under Section 1404. The transfer *is* the proper relief. *See Ryujin*

21  *Fujinomaki v. Google, LLC*, No. 3:16-cv-03137-JD, 2018 WL 3632104, at *3 (N.D. Cal. July

22  31, 2018) ("Although the Texas court transferred the lawsuit to the Northern District after

23  considering the Section 1404 factors, that alone fails to show that plaintiff's opposition was

24  egregious so as to warrant sanctions. Motions to transfer for the convenience of the parties and

25  witnesses are commonplace in federal district court. Defendants did not contest venue, and at

26  least one defendant had its North American headquarters in the Eastern District of Texas.");

27  *Papst Licensing Gmbh & Co. KG v. Xilinx Inc.*, No. 16-cv-00926-LHK, 2016 WL 4398376, at

28

*3 (N.D. Cal. Aug. 18, 2016) (holding plaintiff's decision to file suit in Delaware and oppose transfer to California did not make case "exceptional"); *In re Protegrity Corp.*, No. 3:15-md-02600-JD, 2017 WL 747329, at *5 (N.D. Cal. Feb. 27, 2017) (rejecting defendants' argument that plaintiff improperly asserted venue in District of Connecticut and noting that the "venue issue is a good example of how defendants' complaints fail to catch the eye as evidence of egregiousness").

This is anything but a "fraudulent joinder" case, and Lyft's only cited case, *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888 (D. Minn. 2015), is utterly inapposite. In *Icon Health*, the court held that that the plaintiff included a second defendant (a distributor rather than a manufacturer) so that it initially could file the case in California, which the court noted was "a venue known for heightened litigation costs." *Id.* at 896. The *Icon Health* court severed the distributor after finding that case was properly between the manufacturers and that the distributor's role was peripheral; the plaintiff subsequently dismissed the case against the distributor. *Id.* The court held that the inclusion of the distributor was likely for the sole purpose of "establish[ing] venue in an inconvenient and high-cost district," but even so that was not enough of a basis to find the case exceptional. *Id.* Instead, it was the totality of the circumstances – including plaintiff's failure to articulate a pre-filing infringement analysis and internal e-mails showing improper, competitive business motivations for the lawsuit – that led the court to find the case exceptional. *Id.* at 896-899 ("Viewed individually, each of these circumstances might not suffice to make the case exceptional. However, when viewed cumulatively, these circumstances demonstrate that the case was litigated in a manner that stands out from more routine patent cases.").

Here, venue in Southern District of New York was established by Lyft's presence. This Court denied Lyft's attempt to dismiss those same bikeshare claims in the Second Amended Complaint; it was reasonable for RideApp to attribute that bikeshare business to Lyft given Lyft's own public filings after it finally closed the acquisition of Motivate. (Dkt. 97 at 3-6.) Lyft's conjecture and innuendo that RideApp impleaded Motivate to "game" the transfer

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

analysis is demonstrably false, given (1) the thoroughness of the allegations against Motivate after more than two months of investigation, and (2) the fact that RideApp voluntarily dismissed Motivate (but not the bikeshare claims) on the word of counsel *before* the court in SDNY ruled on transfer.

### b. **RideApp Followed Federal and Local Rules in Good Faith.**

RideApp sought leave to amend its complaint to, among other things, add averments regarding Lyft's recently-acquired (and infringing) scooter-sharing services and to address recent changes in the law regarding patent eligibility under *Alice*. (Dkt. 77 at 2.) RideApp, in good faith, also noted that the new claims accusing scooter-sharing would require amendment of its patent infringement contentions to add disclosures regarding these new claims. (Id. at 6.) Lyft asserts that this is "egregious" litigation misconduct, conjecturing that "RideApp no doubt filed a motion to amend its complaint instead of a motion to amend its infringement contentions because the standard for amending a complaint is far lower than the standard to amend infringement contentions." (Dkt. 127 at 14-15.)[4]

RideApp accused additional products because Lyft acquired those products *months after* RideApp completed its pre-trial investigation and filed suit. The case was largely on hiatus from the time it was transferred in November 2018 until the parties filed their Joint Case Management Statement and Rule 26(f) Report on March 11, 2019. (Dkt. 70.) In that joint statement, RideApp *fully disclosed* that it intended to amend its complaint and it reiterated that intention during the initial conference on March 20, 2019. (*Id*. at 5.) It was not until Lyft filed its Form S-1 in conjunction with its IPO on March 1, 2019 – shortly before the joint statement –

---

[4] Lyft claims that RideApp's motion to amend was an improper attempt to supplement its infringement contentions, which is clearly false—RideApp sought to add *new* infringement claims, not change those already in the record—but contemporaneously, Lyft was demanding that RideApp supplement its contentions to comply with this Court's Local Patent Rules, which differ from those of S.D.N.Y. under which RideApp initially served its contentions. (Dkt. 80 at 1-2; Dkt. 81 at 4, n. 1.) During meet-and-confer discussions prior to the proposed amendment, RideApp assured Lyft that it would "fully supplement our infringement contentions after the newly asserted patent claims and counts regarding scooters are formally in the case." (Dkt. 77, Ex. B at 1.)

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

that RideApp finally learned the actual closing date of Lyft's acquisition of Motivate's bikesharing business and the extent of its scooter sharing business. Lyft, until then, was a private company. After Lyft's Form S-1 was made public, RideApp promptly moved to amend its complaint—*three months before* the July 10, 2019 deadline for amending pleadings. (Dkt. 74.) In the exercise of good faith, RideApp sought to expressly accuse those products and moved under Rule 15 to do so.

While the patent infringement disclosure rules in N.D. Cal. are uniquely strict, RideApp properly sought to amend its pleadings under FRCP 15 before seeking to amend its patent disclosures. The Court later found that the local patent rules trump the Federal Rules, but the Court acknowledged that this was a first statement of that doctrine in his courtroom and that other judges in this district have held to the contrary. (Dkt. 84 at 3-4 (*citing SAP Aktiengesellschaft v. i2 Techs., Inc.*, 250 F.R.D. 472, 475 (N.D. Cal. 2008).) RideApp could have moved to amend its complaint under Rule 15 and then, days later, moved to amend its infringement contentions and thereby avoided this dispute, but its approach does not constitute "egregious" misconduct or evidence objective bad faith. Further, Lyft was not harmed in any way; the Court granted RideApp's Motion to Amend, in part, such that Lyft was required to respond in any event.

        c.    **RideApp Consistently Sought Reasonable Construction of "Allocation."**

Contrary to Lyft's assertions, RideApp has not fundamentally changed its proposed construction of "allocation." RideApp has attempted to clarify its position that "allocation" is not *merely* "assignment," it is something more, and that "something more" includes algorithmic steps that occur after "assignment."

Lyft argued throughout that inputs and outputs are not algorithms, and that the various modules connected with "allocation" are mere inputs, not part of an algorithm. (Dkt 104 at 11.) RideApp consistently rejected that notion; inputs and outputs, as RideApp has maintained, can be part of the same algorithm, and converting inputs to outputs sometimes constitutes the

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

algorithm itself.  (Dkt 107 at 1 ("Lyft repeatedly complains that a step-by-step algorithm, or outputs, inputs, etc., are merely functional because they do not teach 'how' to perform the function. But functional steps in an algorithm are the 'how'."); *id.* at 3-4 ("the '730 Patent describes inputs and outputs, but then provides step-by-step algorithms that turn inputs *into* outputs.").  A "wireless means of on-demand allocation of a passenger to a specific vehicle through the central data system" includes, and follows, an "assignment" and occurs through integration of data and messaging to a vehicle.  This was RideApp's position in its Patent Local Rule 4-2 disclosures.  (Dkt. 105-12 at 4.)  RideApp's presented that preliminary construction before the PTAB.  (Dkt. 105-7 at 18.)  PTAB acknowledged that this was RideApp's position.  (Dkt. 105-2 at 7.)  RideApp was consistent in the Joint Claim Construction and Prehearing Statement.  (Dkt. 93 at Appx. A (structure includes Fig. 9, Tab. 1, "Find Best Trip" [i.e., perform assignment], "Notify Passenger" & "Notify Driver").)  And this was the position taken by RideApp in its Opening Claim Construction Brief, where RideApp noted that "essential structure for this claim element ["on-demand allocation"] includes a *central assigning system* that monitors all vehicles for location, projected future location, in-service status, assigned passengers, driver information, and actual loading by pick-up location."  (Dkt. 101 at 8.)

The bottom line is that RideApp's language may have evolved, but its evolved language has not resulted in positions that are "contradictory" or "opposite."  And RideApp has argued in good faith for many months that claim construction is necessary, since Lyft filed its first *Alice* Motion.  (Dkt. 78 at 7.)  Most importantly, the positions RideApp took were reasonable and proffered in good faith.  For example, RideApp's description of "assignment" as choosing routes and methods is supported by the language of the specification.  The same is true of "allocation"—when that term is used in the '730 Patent, it occurs after "assignment," and includes messaging of the results (passengers, schedules, routes) of the assignment.  (Dkt. 101 at 8-9.)  A proposed claim construction that finds support in the specification, and is supported by testimony of renowned experts, cannot be frivolous or baseless—even if the court disagrees.

Lyft criticizes RideApp for proposing claim constructions before this Court that differ

KASOWITZ BENSON TORRES LLP
101 California Street, Suite 3000
San Francisco, California 94111

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

from the proposals in its IPR Preliminary Response, but that is not supportable.  RideApp's IPR

positions were preliminary and essentially consisted of pointing out algorithms that Lyft

ignored.  (Dkt. 105-7 at 18-20.)  It was *Lyft's burden*, not RideApp's, to propose proper

constructions, and RideApp declined the implied invitation to do Lyft's work in that regard.  In

any event, our system does not allow dicta of an unconstitutionally-appointed panel of

administrative judges, reviewing only an incomplete record, to bind a patentee to a preliminary

claim construction proposal.  Our system is not so rigid.

Most importantly, courts allow such changes and clarifications all the time.  The court in

*Sarif Biomedical* considered a similar issue and held that it was appropriate for a plaintiff to

clarify its proposed constructions in accord with PTAB decisions.  2016 WL 5422479.  After

being sued for patent infringement, the defendant petitioned for IPR.  *Id.* at *3.  PTAB instituted

the IPR for method claims but declined to institute for the apparatus claims because it believed

the apparatus claims to be indefinite.  *Id.*  Plaintiff continued to assert the apparatus claims in

district court.  *Id.*  The district court found all of the claims invalid for indefiniteness.  *Id.*

Defendant sought fees under Section 285, arguing that Plaintiff failed to conduct a legitimate

pre-filing investigation, continued litigating after PTAB found indefiniteness, and "repeatedly

changed its claim construction positions throughout the litigation."  *Id.*  The *Sarif* court denied

the motion for Section 285 fees.  *Id.* at *3.  The court found that plaintiff had "a good faith,

though ultimately incorrect, belief that its claims were not indefinite."  *Id.* at *2.  "At each stage

of litigation, [p]laintiff provided detailed arguments, grounded in the intrinsic evidence, in

support of its proposed constructions" and "obtained expert opinion which supported its

constructions."  *Id.*

That court was unpersuaded that plaintiff's conduct after the PTAB proceeding

constituted an "unreasonable approach to litigation or demonstrates that [p]laintiff's case was

extraordinarily weak."  *Id.*  The court explained, "[i]t is not unusual for a party to refine and

revise its claim construction positions over the course of litigation" and, further, "[i]t can also be

reasonable for a party to [do so]."  *Id.*  "It can also be reasonable for a party to propose different

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

constructions in PTAB and District Court proceedings." *Id.* "***It can also be reasonable for a patentee which believes in the validity of its claims to revise, clarify, or refine its claim construction strategy in light of a PTAB opinion that the claims are indefinite***." *Id.* (emphasis added); *see also Think Prods., Inc. v. ACCO Brands Corp.*, No. 14-CV-6659 (KAM) (SIL), 2019 WL 5694131, at \*7 (July 22, 2019  E.D.N.Y.) (Magistrate Judge Steven I. Locke) ("[P]arties often advance a litany of arguments when advocating for a desired result, and thus concludes that it is within the ordinary constructs of adversarial proceedings to assert arguments that sometimes stray from previous positions. . . .  Further, the [c]ourt is hesitant to find this case exceptional in light of the potential chilling effect such an award might have on future patent holders, and thus does not see an overarching need to advance considerations of deterrence.")  "Plaintiff's modifications to its [claim construction] positions, while substantial, do not strike the Court as evidence that plaintiff's clause was extraordinarily weak." *Sarif Biomedical*, 2016 WL 54422479, \*2.  Similarly here, RideApp has acted reasonably throughout the litigation.  It "provided detailed arguments, grounded in the intrinsic evidence, in support of its proposed constructions" and "obtained expert opinion which supported its constructions." *Id.*  It was reasonable for RideApp to refine its proposed construction of on-demand allocation in light of the PTAB's decisions and its proposed constructions are supported by the '730 Patent's specification.

### d.    RideApp And Its Experts Disclosed Consistent Algorithms.

Lyft's argument that "RideApp failed to specifically identify any algorithms for performing the claimed functions, choosing instead to indiscriminately cite to large swaths of the specification without explanation" is simply false.  RideApp has pointed throughout this process—and, for that matter, in the IPR—to the essential structures found in Figure 9 and Table 1.  This point was not lost on the PTAB.  PTAB examined Figure 9 and Table 1 and the supporting subroutines Figures 5 and 6.  Dkt. 101-1 at 12-13.  PTAB further examined Figures 5 and 6, which are sub-routines—that is, smaller algorithms that implement discrete steps found in Figure 9.  *Id.* at 9-12.  While PTAB found these insufficient, PTAB recognized that

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1    RideApp's reference to these figures "potentially illustrate an algorithm for 'on-demand

2    allocation of a passenger to a specific vehicle.'"  *Id.* at 9.

3         RideApp's presentation in the Joint Claim Construction Statement was hardly

4    "indiscriminate."  Again focusing on the "wireless means of on-demand allocation" term,

5    RideApp pointed to the same structure to illustrate an algorithm that it relied upon at the claim

6    construction hearing.  Specifically, RideApp cited to Figure 9 and Table 1—each describing an

7    algorithm—and *specifically pointed* only to those algorithms found at the modules "Individual

8    Status"; "Report Position"; "Find Best Trip"; "Notify Driver"; "Acknowledge Trip"; "Notify

9    Passenger, Updates"; "Command Route"; and "Find Best Car."  (Dkt. 93, Appx. A at 2.)

10   RideApp clearly did not cite "the entirety of Table 1."  The citations to the subroutines found at

11   Figures 4-6 constitute a concise description of supporting structure, nothing more.  (*Id.*)

12        Lyft's further suggestion that RideApp "indiscriminately cite[d] to large swaths of the

13   specification without explanation," including "approximately 60% of the written specification"

14   (Dkt. 127 at 15) is, to be courteous, false.  Those citations that Lyft criticizes *are to intrinsic*

15   *evidence*, not to the essential structure.  Lyft is tacitly acknowledging that there is ample

16   intrinsic evidence describing and enabling the algorithms in Figure 9 and Table 1, which is

17   generally considered laudable, *hardly* sanctionable, and directly contradicts Lyft's "they hid the

18   ball" narrative.

19        RideApp and Lyft disagree regarding what constitutes sufficient structure.  Each

20   retained and relied on experts to support their respective positions.  This is an essential

21   disagreement—RideApp and its experts take the view in complete good faith that the '730

22   Patent recites sufficient structure, while Lyft asserts that the Patent discloses no relevant

23   algorithm at all.  While the Court agreed with Lyft's position, RideApp submits that losing this

24   argument is not the sort of "egregious behavior" that should result in a fee award.  *Gametek*,

25   2014 WL 4351414 at *3.  Fee awards "are not to be used 'as a penalty for failure to win a patent

26   infringement suit.'"  *Checkpoint Systems*, 858 F.3d at 1376  (citing *Octane Fitness*, 572 U.S. at

27   548).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

e.   **RideApp disclosed a damages *theory*, informed by public information, without the benefit of discovery from Lyft.**

Lyft argues in support of its quest for fees that RideApp sought excessive damages. This is a distortion.  RideApp disclosed its *theory* as the rules require.  *See* Patent L.R. 3-8. RideApp explained, then and repeatedly, that it was seeking to recover a reasonable royalty, not lost profits or other, more lucrative measures of damages, for infringement of the '730 Patent. RideApp further identified the deficiencies in Lyft's discovery responses that would allow RideApp to provide a more precise and proportionate response.

In its damages contentions, RideApp explained the *basis* for its damages theory, relying on the only datapoints available to it then:  the standard licensing rate offered by Georgia Tech Research Corporation ("GTRC"), had Lyft sought a license in 2012, and public estimates of Lyft's revenues.  RideApp diligently sought better information regarding Lyft's revenues and the royalties it had paid to license other patents in discovery.  *See* Ex. D; Ex. E,; Ex. F.  Lyft utterly failed to provide any meaningful discovery on this point.  Simply put, RideApp asked for more and better information to construct a damages model, and Lyft refused to comply.  Lyft instead insisted that it should not be required to engage in discovery and repeatedly asked for a stay of discovery of Lyft's financial information instead.  *See* Ex. G; Ex. H; Ex. I.  Faced with Lyft's obstructionist conduct and working to minimize motion practice until claim construction was complete, RideApp relied on the information available in propounding its damages contentions, including publicly available information.  RideApp further consulted with a renowned licensing expert with experience regularly handling licensing matters for GTRC to inform its damages contentions.  RideApp disclosed its damages contentions well before the PTAB decision Lyft argues commences the period for which it is entitled to recover fees.

Lyft does not dispute the facts supporting RideApp's damages theory or explain why RideApp's damages contentions are "outrageous."  Lyft does not point to any facts RideApp could have but failed to consider in forming its damages theory.  Lyft does not identify any

flaws in RideApp's methodology or what damages amount would instead be reasonable.[5]  At no point did Lyft approach RideApp with what it believed to be a more reasonable damages figure.[6]  RideApp's damages structure is reasonable and well-supported.  To the extent Lyft possessed better information than what was available to RideApp, Lyft was obligated to identify and produce it rather than stall and delay.  *See TainoApp, Inc. v. Amazon.com Inc.*, No. 15-CV-00101-JSW, 2015 WL 13404107, at *3 (N.D. Cal. Sept. 22, 2015) ("The Court will not fault [plaintiff] for failing to address the merits of infringement, given the timing of that motion and the fact that the parties had not yet engaged in extensive discovery.").

### B. Lyft's Motion for RideApp to Pay Fees is Unwarranted and Unreasonable.

#### 1. Over a Half-Million Dollars for a Responsive Brief is Excessive.

Lyft fails at the outset to meet its burden of showing that the requested attorneys' fees are reasonable by failing to submit any time records.  "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Time records are necessary to exclude hours that are not "reasonably expended," including hours that are "excessive, redundant, or otherwise unnecessary."  *See id.* at 433-34.  Lyft's offering of an *in camera* inspection does not relieve it of its burden.  *See J & J Sports Prods., Inc. v. Duong*, No. 13-CV-02002-LHK, 2014 WL 1478498, at *3 (N.D. Cal. Apr. 14, 2014) (denying request for attorneys' fees and according "little weight to the figures provided by [p]laintiff" without "the submission of detailed

---

[5] Lyft complains that "any amount paid for an invalid patent would be too much," an irrelevant point since RideApp served damages contentions well before the PTAB decision Lyft argues alerted RideApp to alleged invalidity, and those contentions were expressly preliminary given the lack of discovery from Lyft.

[6] Lyft suggests RideApp's damages contentions stymied possible settlement but Lyft never produced information that would allow a meaningful evaluation of settlement value.

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1   contemporaneous time records justifying the hours claimed to have been expended on this

2   case"); *Joe Hand Promotions, Inc. v. Be*, No. 11-CV-01333-LHK, 2011 WL 5105375, at *7

3   (N.D. Cal. Oct. 26, 2011) ("Without actual billing records, however, the [c]ourt gives little

4   weight to these figures."); *Zynga Game Network Inc. v. Erkan*, No. 09-3264 SC, 2010 WL

5   3463630, at *2 (N.D. Cal. Aug. 31, 2010) (denying motion for attorneys' fees where party

6   failed to attach "actual billing records"). The Court should deny Lyft's request at the outset for

7   failing to meet its initial burden.

8         Even unaccompanied by the requisite time records, Lyft's request for over half a million

9   dollars for essentially submitting a responsive claim construction brief is on its face patently

10  unreasonable. Lyft's request for $569,254.43 worth of attorneys' fees over a period of

11  approximately 100 days incurred through "time spent on discovery, claim construction, and

12  motion practice" does not withstand facial scrutiny. There was no motion practice during this

13  time period. Lyft studiously avoided engaging in discovery, beyond drafting three letters

14  totaling approximately 10 pages and seeking a stay on discovery. *See* Ex. G; Ex. H; Ex. I. Lyft

15  did not supplement its interrogatories or substantively produce any documents during this time

16  period.[7] In association with its responsive claim construction briefing, Lyft collectively took

17  and defended less than nine hours of deposition testimony, including taking a deposition lasting

18  less than three hours and defending a deposition lasting less than six hours. Lyft attended two

19  hearings (a technology tutorial and a claim construction hearing) collectively totaling less than

20  four hours at a location just minutes from its counsel's office. The sum total of Lyft's activity

21  does not justify its exorbitant request.

22        Even without the benefit of time records to assess the reasonableness of Lyft's request,

23  Lyft's rationale is flawed and contradictory. First, as set forth above in Section IV(A)(2), the

24  PTAB decisions did not render RideApp's claims frivolous and RideApp was entitled to pursue

25  its good faith and well-supported allegations against Lyft. Also, Lyft does not establish that the

26

27         [7] Lyft only reproduced documents, comprising less than a thousand pages, that were originally
produced months earlier in an unreadable format.

28  RIDEAPP'S OPPOSITION TO LYFT'S       - 22 -       CASE NO. 18-CV-07152-JST
MOTION FOR ATTORNEYS' FEES

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

benchmarks it presents are applicable to this case.  Lyft touts the reasonableness of its request by comparing it to figures for cases from inception and inclusive of "discovery, motions, and claim construction."  But Lyft's requested fees are not from inception and do not include any meaningful discovery activity or motions practice.  They only include claim construction, and only a slice of the claim construction activity occurring over approximately 100 days.  Further, Lyft uses the amount of RideApp's purported damages request to demonstrate the reasonableness of its fees while simultaneously assailing that figure as "outrageous" and using it as a basis to allege that RideApp litigated its case in an unreasonable manner and should be penalized with fees.  This is contradictory and inconsistent.  It also ignores the fact set forth above that RideApp *never made a damages demand*, and Lyft would not engage in discovery sufficient to allow RideApp to do so.

Lyft may argue that its success merits a large fee; it is difficult to quantify the extent to which the enormous resources brought to bear against a small company that was forced to fight on multiple fronts (*e.g.*, the IPR) and take premature positions on important issues, then be bound by them, contributed to that success.

Moreover, it could/should not have cost a fraction of the fees Lyft claims because Lyft already engaged in claim construction analysis in the context of its IPR Petition—it would be vexing in the extreme if Lyft had subjected RideApp to the time and expense of an IPR without doing so—such that claim construction in this district court case should be largely duplicative. It was Lyft's decision to engage in parallel litigation—the IPR in addition to prosecuting this matter—that amplified the proceedings.

Despite the Court's invitation, Lyft declined to seek a stay in light of the IPR.  For its part, RideApp has tried to minimize the expense and burden of litigation on both parties until it had its day in court.  RideApp has not engaged in any discovery motion practice, despite Lyft's refusal to engage in meaningful discovery; RideApp has not noticed fact depositions, served additional discovery, or otherwise engaged in litigation activities, instead waiting to benefit from the Court's claim construction ruling.  A fee award of this magnitude is not warranted.

### 2. Alternatively, the Court Should Defer Ruling on Lyft's Motion or Deny it Without Prejudice Pending RideApp's Appeal.

RideApp filed its Notice of Appeal to the Federal Circuit of this Court's decision on the validity of the '730 Patent on December 2, 2019.  Respectfully, for the many reasons set forth above, the Court should deny the motion outright; alternatively, the Court should defer its ruling or deny the motion without prejudice while the appeal is pending.  A court may defer its ruling on a motion for fees until after an appeal on the underlying issue is resolved.  *See* 1993 Advisory Committee Notes to Fed. R. Civ. P. 54(d) ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.").  Courts in the Ninth Circuit apply this advice to defer rulings pending appeal.  *See G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, No. 1:15-CV-00321-SKO, 2018 WL 932087, at *2 (E.D. Cal. Feb. 16, 2018) ("[T]he Court finds it most prudent to defer ruling on the parties' requests for costs and the attorney's fees motions until the appeal is resolved.").

In determining whether to stay an order pending an appeal, courts consider the following factors:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  On balance, these factors favor a deferred ruling.

Regarding RideApp's *likelihood of success*, the Court would not have issued its Order without confidence that its analysis was sound.  But both opinions on appeal—What constitutes sufficient algorithmic structure?  Do local patent rules trump the Federal Rules of Civil Procedure?—involve areas of the law that are unsettled and as to which very reasonable litigants (and scholars) disagree.  There is a non-zero chance that RideApp will prevail on appeal, and a much greater chance that the Federal Circuit will attempt to clarify the law in a manner that will require remand for further proceedings.  Regarding *irreparable injury to RideApp*, since the PTAB's decisions, Lyft has continued its onslaught—following its motions

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111

1  to transfer to a venue that is extremely burdensome to a small East-coast company; motions to

2  dismiss; a refusal to engage in discovery; the *incredible burden of an IPR*—with this motion

3  threatening RideApp with the specter of a fee award if RideApp "refuse[d] to promptly dismiss

4  the case" solely on the basis of the PTAB's indefiniteness comments.  *See* Ex. J.  RideApp is a

5  small company seeking to enforce rights against an international behemoth.  Absent a deferred

6  ruling, it may be unable to seek appellate review—which is perhaps Lyft's strategy—or even

7  continue operations.  Regarding ***whether a stay would injure Lyft***, Lyft will not be materially

8  affected.

9      Regarding ***the public interest***, deferring a ruling pending appeal will serve many

10  interests, not least promoting judicial economy.  Evaluating Lyft's request would require

11  reviewing the time records of four attorneys billing nearly 1,000 hours, a substantial endeavor.

12  *See Reading Int'l, Inc. v. Malulani Grp., Ltd.*, No. CV 13-00133 JMS-KSC, 2014 WL

13  12772247, at *1 (D. Haw. Sept. 25, 2014) (staying defendant's motion for attorneys' fees and

14  costs pending appeal in view of the significant amount of fees requested and time necessary to

15  evaluate defendant's time records).  Such a practice would also preserve the due process rights

16  of litigants to have judicial review of break-the-company litigation, especially the rights of

17  small family companies.  And it might do just a little to strengthen our patent system, in which

18  large companies use their superior resources to scorch the earth during litigation, then seek fees

19  to deter future enforcement because our patent system (as opposed to litigation to protect most

20  every other property right) affords a chance to seek fees.  Fee awards are rare and only for the

21  most egregious cases, as they should be, but even the slightest threat surely discourages

22  enforcement of patent rights, especially by small entities like inventors, research foundations,

23  and universities, and in some small way thereby devalues our patent system.

24

25

26

27

28

Dated:  January 3, 2020

/s/ Jeffrey J. Toney

Jeffrey J. Toney (*pro hac vice*)
Ralph E. Gaskins (*pro hac vice*)
Jackie L. Toney (*pro hac vice*)
Paul G. Williams (*pro hac vice*)
Hala S. Mourad (*pro hac vice*)
KASOWITZ BENSON TORRES LLP
1349 West Peachtree Street, N.W., Suite 1500
Atlanta, Georgia 30309
Telephone:  (404) 260-6080
Facsimile:  (404) 260-6081
jtoney@kasowitz.com
rgaskins@kasowitz.com
jatoney@kasowitz.com
pwilliams@kasowitz.com
hmourad@kasowitz.com


Lyn R. Agre (SBN 178218)
Margaret A. Ziemianek (SBN233418)
KASOWITZ BENSON TORRES LLP
101 California Street, Suite 3000
San Francisco, California 94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030
lagre@kasowitz.com
mziemianek@kasowitz.com

*Attorneys for Plaintiff RideApp, Inc.*

KASOWITZ BENSON TORRES LLP
101 CALIFORNIA STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94111