Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3600
San Francisco, CA 94111
Tel: (415) 291-6200
Fax: (415) 291-6300

Elizabeth K. Boggs (SBN 280555)
betsy.boggs@bakerbotts.com
John F. Gaustad (SBN 279893)
john.gaustad@bakerbotts.com
Keith M. Jurek (SBN 310856)
keith.jurek@bakerbotts.com
**BAKER BOTTS L.L.P.**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Phone: (650) 739-7500
Fax: (650) 739-7699

Jennifer C. Tempesta (*admitted pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, NY 10112
Phone: (212) 408-2500
Fax: (212) 408-2501

*Attorneys for Defendant LYFT, INC.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| RIDEAPP, INC. | Case No. 18-CV-07152-JST |
| Plaintiff, | **DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES** |
| v. | |
| LYFT, INC. | Judge: Hon. Jon S. Tigar |
| Defendant. | Date: February 12, 2020<br>Time:  2:00 p.m.<br>Courtroom: 6 – 2nd Floor |

BAKER BOTTS L.L.P.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER BOTTS L.L.P.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .......................................................................................... 1

II.     RIDEAPP'S UNREASONABLE LITIGATION CONDUCT MAKES THIS CASE
        EXCEPTIONAL ............................................................................................ 2

        A.      RideApp Took Directly Contradictory Positions Before This Court and
                the Patent Office in an Attempt to Preserve Its Patent's Validity          2

        B.      RideApp's Cited Cases Support an Award of Fees When Directly
                Contradictory Positions are Taken in Different Forums                      5

        C.      Whether the PTAB's Decisions Were Preliminary or Dicta Is Immaterial      6

        D.      RideApp Added (and Promptly Dismissed) Motivate in an Attempt to
                Keep This Case in an Inconvenient District                                7

        E.      RideApp Ignored the Patent Local Rules                                    9

        F.      RideApp Improperly Withheld Its Frivolous Algorithm Arguments Until
                Well into the Claim Construction Process                                  10

III.    RIDEAPP'S MERITLESS LITIGATION POSITION ALSO MAKES THIS CASE
        EXCEPTIONAL ............................................................................................ 10

        A.      There Is No Competent Evidence that RideApp Formed a Good-Faith Basis
                that Its Patents Are Definite                                             11

        B.      The Court Found the Claims Indefinite for More Reasons than the PTAB     12

IV.     LYFT'S REQUESTED ATTORNEYS' FEES ARE REASONABLE ............................. 12

V.      THE COURT SHOULD NOT DEFER RULING ON THIS MOTION ........................... 14

VI.     CONCLUSION ......................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER BOTTS L.L.P.

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
  No. 14-cv-01012-SI, 2017 WL 2774339 (N.D. Cal. June 26, 2017) ...........................................9

*Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ......................................................................................................10

*Baker v. Baker*,
  No. 16-cv-08931 VAP, 2018 WL 6190597 (C.D. Cal. Aug. 31, 2018)......................................15

*Castillo-Antonio v. Iqbal*,
  No. 14-cv-03316-KAW, 2017 WL 1113300 (N.D. Cal. Mar. 24, 2017)...................................15

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992) .........................................................................................................9

*Fujinomaki v. Google, LLC*,
  No. 3:16-cv-03137-JD, 2018 WL 3632104 (N.D. Cal. July 31, 2018)................................. 7-8

*G.P.P., Inc. v. Guardian Prot. Prods., Inc.*,
  No. 1:15-cv-00321-SKO, 2018 WL 932087 (E.D. Cal. Feb. 16, 2018) ...................................15

*Game & Tech. Co. v. Wargaming Grp. Ltd.*,
  942 F.3d 1343 (Fed. Cir. 2019) .......................................................................................................5

*Icon Health & Fitness, Inc. v. Octane Fitness*,
  LLC . 112 F. Supp. 3d 888 (D. Minn. 2015) ..................................................................................8

*In re Acacia Media Techs. Corp.*,
  No. M 05-01665 JW, 2010 WL 2179875 (N.D. Cal. May 25, 2010) ....................................5, 6

*In re LendingClub Securities Litig.*,
  No. C 16-02627 WHA, 2018 WL 977558 (N.D. Cal. Feb. 20, 2018) .......................................9

*In re Protegrity Corp.*,
  No. 3:15-md-02600-JD, 2017 WL 747329 (N.D. Cal. Feb. 27, 2017).................................7, 8

*J & J Sports Prods., Inc. v. Duong*,
  No. 13-CV-02002-LHK, 2014 WL 1478498 (N.D. Cal. Apr. 14, 2014)..................................14

*Joe Hand Promotions, Inc. v. Be*,
  No. 11-CV-01333-LHK, 2011 WL 5105375 (N.D. Cal. Oct. 26, 2011) ..................................14

*Masalosalo ex rel. Masalosalo*,
  718 F.2d 955 (9th Cir. 1983).........................................................................................................15

*Motivate Int'l, Inc. v. Inlow*,
  No. 1:15-09948 (N.D. Ill. 2015).......................................................................................................7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) .......................................................................................................6

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
    No. 16-cv-00925-LHK, 2016 WL 4398376 (N.D. Cal. Aug. 18, 2016) .................................7, 8

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008) ......................................................................6

*Sarif Biomedical LLC v. Brainlab, Inc.*,
    725 Fed. App'x 996 (Fed. Cir. 2018) ....................................................................5, 6

*Sarif Biomedical LLC v. Brainlab, Inc.*,
    No. 13-846-LPS, 2016 WL 5422479 (D. Del. Sept. 27, 2016) ...............................5, 6

*Terket v. Lund*,
    623 F.2d 29 (7th Cir. 1980) ........................................................................15

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ....................................................................7

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011) ...................................................................10

*Zynga Game Network Inc. v. Erkan*,
    No. 09-3264 SC, 2010 WL 3463630 (N.D. Cal. Aug. 31, 2010).............................14

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 15 ....................................................................................9

Patent Local Rule 3-6 ...............................................................................9, 10

Patent Local Rule 4-2 ................................................................................10

Patent Local Rule 4-3 ................................................................................10

Civil Local Rule 54-5(b) ...........................................................................13

BAKER BOTTS L.L.P.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Lyft is not seeking fees in this case because RideApp asserted its patent in this Court.  Lyft is seeking fees because of RideApp's misconduct—specifically, RideApp's repeated attempts to manipulate the legal process compounded by its meritless litigation position.  RideApp began this case by adding, and promptly dismissing, Motivate International ("Motivate"), in a blatant attempt to try and maintain the case in an inconvenient district.  RideApp proceeded to ignore this Court's Patent Local Rules and take a position directly contradictory to representations it previously made to the Patent Office to get Lyft's *Inter Partes* Review (IPR) petition rejected.  RideApp also failed to disclose its claim construction positions within the specified deadlines.  RideApp's tactics coupled with its meritless litigation positions make this case stand out from other patent cases.

RideApp's litigation tactics are textbook examples of exceptional conduct deserving an award of fees.  Even RideApp does not dispute that taking contradictory positions in the Patent Office and this Court justifies an award of fees.  *See* Opp. at 7–8.  RideApp's only defense is that its shifting positions were refinements and clarifications rather than an about-face, but the facts speak for themselves.  In the Patent Office, RideApp stated that on-demand allocation "includes assignment" (Jurek Decl., Ex. E (POPR in Lyft's IPR) at 18)[1], and in this Court, RideApp stated that "allocation and assignment are two different things." ECF 107 at 4.  RideApp advanced the first position to convince the Patent Office to reject Lyft's IPR petition.  Having succeeded, RideApp then advanced the second position in an attempt to save its patent from a finding of indefiniteness in this Court.

RideApp's blatant attempt to manipulate the transfer factors by adding Motivate as a party to maintain the case in an inconvenient forum on the other side of the country from Lyft's headquarters is precisely the type of behavior other courts have found exceptional.  RideApp's claim of thorough diligence surrounding this decision is belied by RideApp voluntarily dismissing Motivate a week later, presumably when RideApp learned its own attorneys had also represented Motivate.

---

[1] Emphasis and internal quotations omitted throughout this brief unless otherwise noted

RideApp targeted Lyft's core business, seeking over half-a-billion dollars for just three years of alleged infringement.  To defend against RideApp's improper tactics and meritless positions, Lyft incurred substantial attorneys' fees throughout the defense of this lawsuit, but seeks reimbursement for only the fees incurred as a direct result of RideApp's exceptional conduct.  Lyft is narrowly seeking fees incurred (1) by four primary attorney timekeepers (2)  since July 17, 2019, the date the Patent Office first found RideApp's patent indefinite.

Despite pursuing three simultaneous litigations in different districts across the country and being owned by a well-off professor with over a million dollars in disposable assets (*see* ECF 1 at ¶ 10), RideApp now claims it may be unable to pay any award of fees granted by this Court. RideApp all but admits that it is underfunded, suggesting that it may try to avoid paying any awarded attorneys' fees by declaring bankruptcy.[2]  A deferred ruling on Lyft's motion for fees would allow RideApp to declare bankruptcy following an unsuccessful appeal, allowing RideApp to escape any repercussions for its actions in this Court.

To address RideApp's exceptional conduct in this case, Lyft respectfully requests this Court award Lyft a portion of its incurred legal fees totaling $569,254.34 plus the fees incurred for pursuing this motion.

## II.     RIDEAPP'S UNREASONABLE LITIGATION CONDUCT MAKES THIS CASE EXCEPTIONAL

This case is exceptional in view of RideApp's unreasonable litigation conduct.  RideApp (1) advanced contradictory constructions of "on-demand allocation" in the Patent Office and in this Court in an attempt to preserve its patent's validity; (2) attempted to manufacture a convenient forum in New York by adding and promptly dismissing a party, (3) violated this Court's patent local rules by attempting to untimely add new patent claims and accused products, and (4) withheld its frivolous algorithm theories until well into the claim construction process.

### A.     RideApp Took Directly Contradictory Positions Before This Court and the Patent Office in an Attempt to Preserve Its Patent's Validity

On May 9, 2019, in arguing for the Patent Office to reject an IPR petition filed by Unified

---

[2] If the Court awards fees and RideApp confirms it is underfunded, Lyft may consider seeking to join additional parties to its fee request or seek to pierce the corporate veil.

1    Patents, RideApp stated that "[a]ssignment is a part of on-demand allocation."  Jurek Decl., Ex. D

2    (Unified Patents POPR) at 16).  RideApp explained that a person of ordinary skill would understand

3    on-demand allocation to include assignment plus additional functionality.  *Id*. at 16–17.  RideApp

4    took the same position in its preliminary response to Lyft's IPR petition, filed May 22, 2019.  *See,*

5    *e.g.*, Jurek Decl., Ex. E (RideApp POPR) at 18–19.

6            Following RideApp's responses, the Patent Office denied institution of both IPR petitions,

7    specifically noting RideApp's position that on-demand allocation included assignment.  *See* ECF

8    105-2 (PTAB Decision on Lyft IPR Petition) at 5–6 ("Patent Owner does not disagree that the

9    claimed [allocation] function includes assigning a passenger to a vehicle, but argues that 'allocation'

10   includes aspects beyond assignment."); ECF 105-1 (PTAB Decision on Unified Patents IPR

11   Petition) at 6 (same).

12           After the Patent Office rejected the IPR petitions, RideApp performed an about-face, arguing

13   that on-demand allocation and assignment were now entirely separate.  RideApp asserted its new

14   position in its claim construction briefing, expert deposition testimony, and arguments at the claim

15   construction hearing.  In its claim construction briefing, RideApp stated that "[t]he '730 Patent

16   makes it clear that allocation and assignment are two different things," describing allocation as

17   merely communicating an assignment to the passengers and vehicles.  *See* ECF 107 at 4: 14–16;

18   ECF 101 at 10.  In its reply claim construction brief, RideApp devoted an entire section to its new

19   position, including a subsection titled "Lyft incorrectly equates 'assignment' with 'allocation'."  *See*

20   ECF No. 107 at 5–6.

21           RideApp's claim construction expert consistently affirmed RideApp's new position in his

22   deposition testimony, repeatedly arguing that on-demand allocation did not include assignment:

23           Q. And in your opinion, what does on-demand allocation mean?

24           A. Based on a request, on-demand allocation, as it is used in the -- in the patent
             is a communication to the vehicle with specific data about the passenger.

25

26           Q. In your opinion, does allocation mean assigning in the patent?

             A. In my opinion, no.
27
             Q. In your opinion, does allocation include assigning in the patent?
28
             A. ***Allocation -- assignment happens before allocation. Therefore, its -- its***

---

*output would be used by the actual allocation, but <u>they are different things</u>.*

Gaustad Decl., Ex. 1 (Yen Dep. Tr.) at 33:22–34:6 (emphasis added); *see also id.* at 35:21–36:4 ("[I]f you go to where the algorithms are, the functions for assignment are distinctively mapped differently than the functions for the allocation."); *id.* at 45:7–13 ("I don't want to say that the assignment was part of the allocation algorithm.")

At the claim construction hearing, RideApp again repeated its new position, arguing that the Patent Office had "perhaps "misunderst[ood]" RideApp's position, and that "allocation" and "assignment" are in fact "two different messages that do two different things." Gaustad Decl., Ex. 2 (Oct. 15, 2019 Claim Construction Hearing Tr.) at 45:20–25. RideApp's counsel explained that "[o]nce the assignment is done, there's an allocation" (*id.* at 12:5–6):



"Allocation" is a notification from the central processing system to a specific vehicle of the specific "assignment." "Allocation" comes "AFTER" assignment.

Gaustad Decl., Ex. 3 (RideApp's Claim Construction Demonstratives) at 17.

RideApp's motivation for changing its construction is clear: having temporarily overcome the initial anticipation and obviousness hurdles at the Patent Office, its only path forward was to convince the Court that its claims were somehow definite. RideApp's best (if not only) chance of doing so was to present a less rigorous construction for "on-demand allocation" that no longer included "assignment" and could allegedly be satisfied by merely sending and receiving messages. *See, e.g.*, Gaustad Decl., Ex. 2 (Claim Construction Hearing Tr.) at 47:11–21.

In its Opposition to Lyft's Motion for fees, RideApp attempts to rewrite history by arguing

that the claim construction position RideApp took in this Court merely "clarif[ied]" the position taken before the Patent Office.  RideApp now claims it consistently argued that allocation included assignment, plus something more throughout the claim construction process.  *See* Opp. at 15:21–23.  As shown above, however, RideApp's alternative history is entirely unsupported by the record. RideApp did not argue during claim construction in this Court that the term "on-demand-allocation" "includes, and follows, an assignment" (*see* Opp. at 16:5–7)—in fact, as explained previously, RideApp went to great lengths to consistently argue the opposite.  RideApp's Opposition continues the very same misconduct used throughout the case—adopting new positions tailored to the situation immediately at hand without regard to previous representations made to this Court or the Patent Office.

### B.      RideApp's Cited Cases Support an Award of Fees When Directly Contradictory Positions are Taken in Different Forums

RideApp admits that courts regularly award fees when a party takes a position in a first forum and a contradictory position in a second forum (*see* Opp. at 7:25–8:19)—exactly what RideApp did in this case.   Given that the evidence indisputably shows RideApp adopted contradictory positions for "on-demand allocation" in the Patent Office and this Court, RideApp's own cases demonstrate why RideApp's unreasonable litigation conduct renders this case exceptional.

RideApp primarily relies on two cases to justify pursuing contradictory claim constructions before the Patent Office and this Court: *Sarif Biomedical* and *Acacia Media Technologies*.  Both of these cases are readily distinguishable from the facts in this case.  As the district court noted in *Sarif Biomedical*, parties might take different claim construction positions in the PTAB and district courts because, at the time, each forum used a different standard.  *See Sarif Biomedical LLC v. Brainlab, Inc.*, No. 13-846-LPS, 2016 WL 5422479, at *2 (D. Del. Sept. 27, 2016).  This is no longer the case. For petitions filed on or after November 13, 2018, the PTAB applies the same claim construction standard in IPRs as used in district courts (*e.g.*, *Game & Tech. Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1351 (Fed. Cir. 2019)), and both Unified Patents and Lyft filed their petitions after this date (Jurek Decl., Ex. B at 2, 77 (Unified Patent IPR filed December 12, 2018);  Jurek Decl., Ex. C at 2, 73 (Lyft IPR filed February 12, 2019)).  Additionally, unlike here, both the district court and

1    the Federal Circuit in *Sarif Biomedical* explicitly found that the plaintiff had not taken inconsistent

2    positions.  *Sarif Biomedical*, 2016 WL 5422479, at *2; *Sarif Biomedical LLC v. Brainlab, Inc.*, 725

3    Fed. App'x 996, 999–1000 (Fed. Cir. 2018).   As explained above, RideApp took directly

4    contradictory positions in this case, and the Court has already informed RideApp that it disapproved

5    of this litigation misconduct.  *See* ECF 117 at 13:3–7 ("The Court will not reject RideApp's

6    proposed construction as untimely or barred by RideApp's prior positions, but it notes that

7    RideApp's 'conduct is not conducive to the orderly progress of this case, and the [Court]

8    disapproves of it.'" (quoting *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 981

9    (N.D. Cal. 2008)).

10    *Acacia Media Technologies* was also decided at the time when the standard for an

11    exceptional case finding was "clear and convincing evidence."  *In re Acacia Media Techs. Corp.*,

12    No. M 05-01665 JW, 2010 WL 2179875, at *4 (N.D. Cal. May 25, 2010).  The *Acacia* court used

13    the now-overruled standard requiring "litigation misconduct or inequitable conduct before the PTO"

14    or "both (1) the litigation [being] brought in subjective bad faith, and (2) the litigation [being]

15    objectively baseless."  *Compare id.* at *1, *with Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

16    572 U.S. 545, 548 (2010)).  Furthermore, the modified constructions all occurred in a single forum

17    (the district court) over the course of six separate claim construction orders addressing various

18    patents and claims.  *In re Acacia Media Techs. Corp.*, 2010 WL 2179875, at *3.  Finally, the *Acacia*

19    court found no evidence of bad faith; whereas here, RideApp began adopting its new, contradictory

20    construction of "on-demand allocation" the day after the Patent Office denied the first IPR petition.

21    *See* Jurek Decl., Exs. G & H at 1–4, 6.

22        **C.    Whether the PTAB's Decisions Were Preliminary or Dicta Is Immaterial**

23        RideApp makes much ado about the fact that its responses were preliminary and the PTAB's

24    decisions were dicta.  *See* Opp. at 8:20–10:19.  RideApp similarly complains that it would somehow

25    be denied due process by being held to its own representations to the Patent Office or by considering

26    the opinions of administrative judges in deciding whether its case has any merit.  *See id.* at 11:10–

27    12:5.  These arguments conflate the role that the PTAB's decisions should play in determining

28    whether this case is exceptional.  Under the totality of the circumstances, the fact that a party was

given notice of its exceptional litigation behavior, "followed by continuation of litigation, can be a factor in justifying an award of attorney's fees." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357–58 (Fed. Cir. 2019) (citation omitted). The PTAB's decisions—along with Lyft's meet-and-confer letters (*see* Jurek Decl. Exs. K–L)—provided this notice. Lyft is seeking fees because, under the totality of the circumstances, this case is exceptional. And it is seeking only the fees that it has incurred since July 17, 2019, because—giving RideApp the benefit of the doubt—that was the last possible date on which RideApp lacked notice that its case was exceptionally meritless.

Further, regardless of whether (1) the PTAB's decisions are binding, (2) it is staffed by administrative law judges, or (3) the appointment of those judges is constitutional, RideApp owes duties of honesty and candor to both the Patent Office and to this Court. RideApp violated these duties by arguing to the Patent Office that "on-demand allocation" includes assignment and shortly thereafter arguing to this Court that "on-demand allocation" excludes assignment.

### D.   RideApp Added (and Promptly Dismissed) Motivate in an Attempt to Keep This Case in an Inconvenient District

Contrary to RideApp's suggestion (*see* Opp. at 12:19–20), Lyft is not seeking fees because the Southern District of New York ultimately transferred this case out of an inconvenient venue. Instead, Lyft is seeking fees because of RideApp's attempts to manufacture a convenient venue by (1) adding Motivate to the case on the same day it knew Lyft would file a transfer motion (*see* ECF 21, 29); (2) dismissing Motivate less than a week later without explanation (ECF. 33, Jurek Decl., Ex A (Oral Ruling on Lyft's Mot. to Transfer) at 4:15–5:17),[3] and (3) thereafter attempting to impute the Motivate allegations to Lyft despite lacking any "factual basis" for doing so. *See id.* at 5:8–9. The Southern District of New York explicitly found that the "allegations in [RideApp's] complaint do not show a bona fide connection to the forum." *Id.* at 5:18–19; *see also id.* at 5:19–9:25. These facts readily distinguish this case from *Fujinomaki*, *Papst Licensing*, and *In re Protegrity*, which RideApp merely cites for the undisputed proposition that attorneys' fees should not be awarded "simply because a case is subsequently transferred under Section 1404." *See* Opp. at 12; *Fujinomaki v. Google, LLC*, No. 3:16-cv-03137-JD, 2018 WL 3632104, at *3 (N.D. Cal. July 31, 2018) (noting

---

[3] RideApp has not disputed that it added Motivate despite a conflict of interest. *See* Mot. at 12:13–16 (citing *Motivate Int'l, Inc. v. Inlow*, Case No. 1:15-09948 (N.D. Ill. 2015)).

1    that a court's decision to transfer alone failed to warrant sanctions and that one party had its

2    headquarters in the original forum); *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, No. 16-cv-

3    00925-LHK, 2016 WL 4398376, at *3 (N.D. Cal. Aug. 18, 2016) (finding that it is not an improper

4    litigation tactic to sue a corporation where it is incorporated); *In re Protegrity Corp.*, No. 3:15-md-

5    02600-JD, 2017 WL 747329, at *5 (N.D. Cal. Feb. 27, 2017) (noting that the transferor court found

6    that the original forum "did 'have some connection to the events in [the] case[.]'" (citation omitted)).

7            Additionally, despite RideApp's arguments to the contrary, the venue issue in this case is

8    nearly identical to that in *Icon Health & Fitness, Inc. v. Octane Fitness*, LLC ("*Octane Fitness II*").

9    112 F. Supp. 3d 888, 892–93 (D. Minn. 2015).   The only facts that RideApp identifies as

10   distinguishing are (1) *Octane Fitness II* discussed lack of venue (under §1391) in addition to the

11   convenience of the venue (under §1404), and (2) RideApp voluntarily dismissed Motivate rather

12   than the court severing Motivate from the case.   However, contrasting lack of venue with

13   inconvenient venue highlights a distinction without a difference:   RideApp improperly added

14   Motivate in an attempt to keep its lawsuit in New York (just like the plaintiff in *Octane Fitness II*

15   added a party to bring suit in Minnesota).   Additionally, regardless of RideApp's voluntary dismissal

16   of Motivate, RideApp (1) added Motivate on the same day it knew Lyft was filing a motion to

17   transfer, clearly intending to deprive Lyft of the chance to address the Motivate allegations in its

18   motion and attempting to vexatiously drag out and increase the cost of litigation; (2) dismissed

19   Motivate a week later, casting doubt on whether there was a good-faith basis for adding Motivate

20   in the first place; and (3) continued to try and impute the Motivate allegations against Lyft, despite

21   there being "no factual basis for Lyft to be held liable for Motivate's acts" (Jurek Decl., Ex. A (Oral

22   Ruling on Lyft's Mot. to Transfer) at 5:8–9).   *Octane Fitness II* demonstrates that RideApp's

23   improper conduct in its attempt to manufacture convenient venue is one of the many factors that

24   makes this case exceptional.

25           Finally, the Court should disregard RideApp's assertions that it performed "approximately

26   two months of analysis and investigation" before adding Motivate to the case.   *See* Opp. at 3:15–

27   18; *see also id.* at 14:1–2.   These assertions are conclusory and supported by nothing more than

28   attorney argument.   Further, RideApp appears to be improperly attempting to use privilege as both

1    a sword and a shield by selectively relying on privileged information to support its arguments

2    without disclosing all communications and documents on the topic.  *See In re LendingClub*

3    *Securities Litig.*, No. C 16-02627 WHA, 2018 WL 977558, at *2 (N.D. Cal. Feb. 20, 2018) ("The

4    attorney-client privilege 'may not be used both as a sword and a shield.'" (quoting *Chevron Corp.*

5    *v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992))).  Despite discovery requests served early in

6    this case (*see* Gaustad Decl., Ex. 6 (RideApp's responses to Lyft's interrogatories) at Interrogatories

7    Nos. 2, 3, 5, and 8 & Ex. 7 (RideApp's responses to Lyft's requests for production) at RFPs Nos. 7,

8    9, 12–16, and 29–31), RideApp has not produced documentation regarding any such pre-suit

9    analysis or investigation.  Lyft is awaiting a response from RideApp on whether it intends to waive

10   associated privileges and produce all communications among counsel, client, and any retained

11   experts concerning RideApp's alleged pre-suit investigation of Motivate.  *See* Gaustad Decl., Ex. 4

12   (Jan. 16, 2020 e-mail to RideApp's counsel) & ¶ 6.

13           **E.      RideApp Ignored the Patent Local Rules**

14           RideApp served its original infringement contentions on November 5, 2018, asserting only

15   Claims 2, 3, and 6 and accusing only Lyft's rideshare and Motivate's bikeshare products of

16   infringement.  *See* ECF 84 at 2:3–7.  Lyft had publicly announced months earlier, in September

17   2018, that it was offering scooter products.  *Id.* at 6:3–5.

18           Over five months after serving its original infringement contentions, RideApp attempted to

19   add additional patent claims to the case and accuse Lyft's scooter products.  *Id.* at 2:24–27.  But it

20   did not seek leave to amend its infringement contentions because doing so would have required

21   RideApp to provide a timely showing of good cause (*see* Patent L.R. 3-6), which RideApp lacked.

22   *See id.* at 6:13–7:15 (rejecting three diligence arguments).  RideApp instead sought leave to amend

23   its complaint, attempting to improperly end-run the Court's Patent Local Rules and take advantage

24   of Federal Rule 15's more liberal amendment standard.  *See* Fed. R. Civ. Proc. 15.  The Court

25   rejected this strategy, noting that "'allow[ing] the more lenient Rule 15 standard to control the

26   analysis would eviscerate the Patent Local Rules.'"  ECF 84 at 4:10–13 (quoting *Advanced Micro*

27   *Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 WL 2774339, at *4–5 (N.D. Cal. June

28   26, 2017)).

1    RideApp argues that it could have avoided the entire dispute by simply moving to amend its

2    infringement contentions shortly after moving to amend the complaint.   This argument is

3    disingenuous because RideApp never attempted to address Patent Local Rule 3-6 in its motion to

4    amend its complaint, nor could it.  *Id.* at 5:26–27.  After sitting on its new allegations for months,

5    RideApp would not have been able to establish diligence, regardless of whether it presented its

6    vacuous diligence arguments in its motion to amend its complaint or in a motion to amend its

7    infringement contentions.  *See id.* at 6:13–7:15. In fact, the Court rejected in its prior order the same

8    argument that RideApp now repeats about the alleged relevance of Lyft's S-1.  *Compare id.* at 6:21–

9    7:2, *with* Opp. at. 14:20–15:6.  By trying to indirectly amend its infringement contentions through

10   Rule 15, RideApp forced Lyft to expend substantial resources opposing RideApp's futile attempts.

### F.       RideApp Improperly Withheld Its Frivolous Algorithm Arguments Until Well into the Claim Construction Process

12   RideApp failed to disclose its alleged algorithms to Lyft under Patent Local Rules 4-2 or 4-

13   3, hiding the ball and unnecessarily driving up Lyft's costs.  It is well-established that an algorithm

14   is defined as a "step-by-step process"  (*see, e.g., Aristocrat Techs. Australia Pty. Ltd. v. Int'l Game

15   Tech.*, 521 F.3d 1328, 1332 (Fed. Cir. 2008); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d

16   1376, 1384–85 (Fed. Cir. 2011)), yet, RideApp failed to disclose to Lyft the alleged "step-by-step"

17   processes until the parties' claim construction briefing—months after the Patent Local Rule 4-2 and

18   4-3 deadlines.  *See, e.g.*, ECF No. 93, App'x A at 1–4 (disclosing no step-by-step processes).

19   Instead, RideApp hid the ball by citing to large swaths of the specification.  *See id.*  RideApp faults

20   Lyft for failing to distinguish RideApp's citations to intrinsic evidence from RideApp's

21   identification of essential structure (*see* Opp. at 19:14–16), but RideApp specifically identified

22   "descriptive prose from the intrinsic evidence" as part of its alleged corresponding structure.  ECF

23   93, App'x A at 1–4.  Regardless, RideApp's failure to disclose the alleged algorithms—which began

24   to crystalize only after claim construction briefing had already started—ambushed Lyft, driving up

25   costs and forcing Lyft to incur additional fees that could have been avoided with proper disclosure.

## III.   RIDEAPP'S MERITLESS LITIGATION POSITION MAKES THIS CASE EXCEPTIONAL

28   Throughout this case, RideApp pursued a meritless litigation position concerning the

disclosure of algorithms in the specification. Contrary to RideApp's arguments, there is no competent evidence that its efforts to enforce its patent in this Court were made in good faith. *See* Opp. at 1:17–19. Additionally, even if RideApp had compelling reasons to ignore the Patent Office's findings of indefiniteness, this Court found the claims invalid for additional reasons beyond those identified by the Patent Office.

### A. There Is No Competent Evidence that RideApp Formed a Good-Faith Basis that Its Patents Are Definite

There is no evidence that RideApp actually formed a good-faith basis that its patents disclosed the requisite algorithms under Federal Circuit law. The Court should disregard RideApp's allegation that it engaged in a "months-long pre-suit investigation" because it is conclusory attorney argument. Additionally, as noted above, RideApp has not produced documentation regarding any such pre-suit analysis or investigation, despite discovery requests served early in this case. *See* Gaustad Decl., Ex. 6 (RideApp's responses to Lyft's interrogatories) at Interrogatories Nos. 2, 3, 5, and 8 & Ex. 7 (RideApp's responses to Lyft's requests for production) at RFPs Nos. 7, 9, 12–16, and 29–31. Lyft is awaiting a response from RideApp on whether it intends to waive associated privileges and produce all communications among counsel, client, and any retained experts concerning RideApp's alleged pre-suit investigation. *See* Gaustad Decl., Ex. 4 (Jan. 16, 2020 e-mail to RideApp's counsel) & ¶ 6.

The Court should similarly disregard RideApp's allegations regarding any review by RideApp's counsel and experts of the validity of the patent in view of the Patent Office decisions. *See* Opp. at 5:9–22. Although these facts are supported by an attorney declaration (*see* Toney Decl., ¶¶ 21–16), the presented facts are again conclusory and based on unproduced, and presumably privileged, information. There is no evidence that RideApp or its experts were applying controlling Federal Circuit law. In fact, the evidence suggests otherwise. In its opening claim construction brief, RideApp cited algorithm cases only for the propositions that "the patent must disclose enough of an algorithm to provide the necessary structure" and "[t]he patentee may express this algorithm in any understandable manner." *See* ECF 101 at 3:20–28. RideApp's expert's declaration failed to recite any rules for identifying requisite algorithms. *See* ECF 101-6 at 5:7–6:8. And RideApp's expert admitted at his deposition that he did not apply any such rules in his analysis. *See* Gaustad

1   Decl., Ex. 1 (Yen Dep. Tr.) at 14:14–24.  RideApp's attempts to rely on its attorneys' and experts'

2   conclusions also raise the same sword-shield problem as its alleged pre-suit investigations.

3       **B.      The Court Found the Claims Indefinite for More Reasons than the PTAB**

4           As discussed above, RideApp proposes a litany of reasons in attempting to justify the Patent

5   Office's indefiniteness findings.  *See* Opp. at 7:4–11:5.  However, RideApp's laser-like focus on the

6   Patent Office decision ignores the fact that the Court also found the claims indefinite for additional,

7   independent reasons beyond those identified by the Patent Office.  Even in the unlikely event that

8   the Patent Office—an administrative body uniquely focused on reviewing and opining on patents—

9   was mistaken that the specification failed to disclose the requisite algorithms for performing "on-

10  demand allocation" or "detecting the proximity of the passenger," the Court also found that the

11  specification failed to disclose requisite algorithms for "tracking passenger transportation vehicle

12  usage" (ECF 117 at 9–11), "distributing periodic invoices," (*id.* at 11–12), and "informing the

13  passenger of the . . . expected arrival time" (*id.* at 17–18).  That RideApp's claims are invalid for

14  multiple, independent reasons further demonstrates that its litigation position was meritless.

15  **IV.    LYFT'S REQUESTED ATTORNEYS' FEES ARE REASONABLE**

16          Lyft's requested fees are a fraction of the overall fees Lyft incurred in defending against

17  RideApp's allegations.  Lyft's identified fees cover only (1) the four attorney timekeepers who

18  billed more than 50 hours (2) after July 17, 2019 (when the Patent Office rejected the first IPR

19  petition) through October 31, 2019 (when the Court entered judgment).[4]  This three-and-a-half-

20  month period covers approximately a quarter of the time this case was active, and approximately

21  half the time this case was active in this District.  During this period, Lyft's attorneys had to complete

22  many tasks, including (1) developing claim construction positions, (2) developing non-infringement

23  arguments, (3) developing damages theories, (4) taking the deposition of RideApp's claim

24  construction expert, (5) assisting Lyft's claim construction expert with the preparation of his

25  declaration, (6) defending the deposition of Lyft's expert, (7) preparing Lyft's claim construction

26  tutorial and attending the tutorial hearing, (8) drafting Lyft's responsive claim construction brief,

27  (9) preparing for and attending the claim construction hearing, and (10) engaging in non-claim-

28

---

[4] If the Court grants Lyft's motion, Lyft also intends to seek the fees associated therewith.

1    construction discovery, as demonstrated by RideApp's repeated demands for such discovery even

2    after the Patent Office found the claims indefinite (*see* Jurek Decl., Exs. K–M; Toney Decl., Exs.

3    G–I).  *See, e.g.*, Jurek Decl., ¶¶ 10, 13, 16, and 19.  Lyft provided evidence with its motion that its

4    attorneys' incurred fewer fees than both (1) the median amount expected through claim construction

5    in cases where non-practicing entities seek over $25 million in damages (a small fraction of what

6    RideApp was seeking), and (2) the median estimated cost defending against a non-practicing entity.

7    *See* Jurek Decl., ¶ 27 & Ex. O (AIPLA report) at I-145 & I-169.  Lyft also provided evidence that

8    its attorneys' rates are reasonable.  *See, e.g.*, Jurek Decl., ¶¶ 22–24 & Ex. O at I-29 & I-42.  RideApp

9    fails to dispute any of these facts.

10         Lyft affirmatively attempted to limit the fees that it would incur during this time period.  Lyft

11   repeatedly asked RideApp to stay non-claim-construction discovery—as RideApp admits (*see* Opp.

12   at 22:13–14)—but RideApp refused.  *See* Ex. 5 at 3 (letter from RideApp's counsel rejecting request

13   for stay of discovery matters).  RideApp's litigation tactics—including its failure to timely disclose

14   its alleged algorithms and its decision to offer a new, contradictory construction for "on-demand

15   allocation"—also increased the number of hours that Lyft's attorneys needed to spend on this case.

16         Despite RideApp's implication otherwise (*see* Opp. at 23:22–24), staying the case pending

17   the IPR would not have reduced the fees sought by Lyft.  Lyft is seeking only the fees that it incurred

18   after the Patent Office denied institution of the IPRs.  Lyft's attorneys would have needed to perform

19   the same work (and depending on when the stay was instituted, possibly even more work) if Lyft

20   had pursued an IPR stay.  For example, if Lyft had not served invalidity contentions before the

21   Patent Office's IPR decisions issued, Lyft would have had to prepare invalidity contentions

22   afterward—and it would have sought those additional fees with the present motion.

23         Finally, the Court should disregard RideApp's draconian request that the Court deny Lyft's

24   motion because Lyft "fail[ed] to submit any time records."  *See* Opp. at 21:11–12.  Lyft submitted

25   with its motion the attorney declaration required by the Court's local rules.  *See* Civil L.R. 54-5(b).

26   And, if the Court "require[s] production of an abstract of or the contemporary time records for

27   inspection, including in camera inspection" (Civil L.R. 54-5(b)(2)), Lyft will submit such

28   information to the Court.  The cases cited by RideApp do not support denying Lyft's motion simply

1    because it did not provide billing records in the first instance.  The courts in *J & J Sports Productions*

2    and *Joe Hand Promotions* all specifically envisioned that the moving party would submit additional

3    information.  *See J & J Sports Prods., Inc. v. Duong*, No. 13-CV-02002-LHK, 2014 WL 1478498,

4    at *4 n.2 (N.D. Cal. Apr. 14, 2014); *Joe Hand Promotions, Inc. v. Be*, No. 11-CV-01333-LHK, 2011

5    WL 5105375, at *7 (N.D. Cal. Oct. 26, 2011).  And the court in *Zynga Game Network* noted that it

6    was impossible to distinguish between time spent on the Lanham Act and non-Lanham Act claims

7    at issue in that case without reviewing billing records, while no such issue exists in this case.  *Zynga*

8    *Game Network Inc. v. Erkan*, No. 09-3264 SC, 2010 WL 3463630, at *2 (N.D. Cal. Aug. 31, 2010).

9    The court in *Zynga Game Network* even granted the movant leave to file a second motion (which is

10   unnecessary here, because Lyft has already informed the Court that it will provide any requested

11   abstract or billing records).  *Id.*

12   **V.      THE COURT SHOULD NOT DEFER RULING ON THIS MOTION**

13          Despite pursuing three parallel district court litigations and asserting that its owner had over

14   a million dollars in disposable assets (ECF 1 at ¶10), RideApp now suggests in its Opposition that

15   it is underfunded and may need to use any remaining money to pay its attorneys to appeal this

16   Court's decision.  *See* Opp. at 25.  If, in fact, RideApp is underfunded, RideApp will presumably

17   declare bankruptcy after an unsuccessful appeal and never face the consequences of its misconduct

18   in this case (unless Lyft can jump through additional hoops and expand the scope of the Court's

19   judgment to RideApp's owner).  Such a result would harm not only Lyft but all future defendants

20   facing similar tactics.  It would also embolden non-practicing entities, such as RideApp, to pursue

21   meritless positions and engage in unreasonable litigation conduct, knowing that there would be no

22   consequences for their actions as long as the corporate veil was not pierced.

23          The stay factors also support promptly ruling on the present motion.  With respect to

24   RideApp's alleged likelihood of success, a supposed "non-zero chance that it will prevail on appeal"

25   (Opp. at 24:24–25) is a far cry from the required "strong showing that [the plaintiff] is likely to

26   succeed on the merits" (*id.* at 24:16–17).  With respect to RideApp's alleged irreparable harm,

27   RideApp has not submitted evidence that it would be unable to pay Lyft's attorneys' fees, but—

28   even if it had—the Court should not allow RideApp to pay its own attorneys' to continue to litigate

an exceptional case while refusing to compensate Lyft for defending itself against a meritless case marred by unreasonable litigation tactics.  The public interest also favors awarding fees now: doing so would "best serve[] the policy against piecemeal appeals" (*see Masalosalo ex rel. Masalosalo*, 718 F.2d 955, 957 (9th Cir. 1983) (citing *Terket v. Lund,* 623 F.2d 29, 34 (7th Cir. 1980))), and it would remind all litigants that our patent system does not tolerate the pursuit of meritless cases. Additionally, letting RideApp avoid paying Lyft's attorneys' fees—particularly when it is suggesting that it will exhaust its resources by appealing the Court's judgment (leaving nothing left to ever compensate Lyft)—would encourage future plaintiffs to behave like RideApp, knowing that by underfunding a non-practicing entity they can continue to pursue meritless cases using improper tactics without ever risking paying the other side's attorneys' fees.

The only case cited by RideApp in support of its broad proposition that "[c]ourts in the Ninth Circuit . . . defer rulings [on attorneys' fees motions] pending appeal" is unpublished and readily distinguishable.  *See* Opp. at 24:10–14 (citing *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, No. 1:15-cv-00321-SKO, 2018 WL 932087, at *2 (E.D. Cal. Feb. 16, 2018)).  In *G.P.P.*, the facts, final judgment, and presumably the appeal were all "complex."  2018 WL 932087, at *2.  That case "involve[d] over 20 claims and counterclaims," "multiple rounds of discovery, summary judgment, and motions in limine," and it "culminat[ed] in a week-long trial" at which "neither side prevailed." *Id.* (citation omitted).  Unlike *G.P.P.*, RideApp accused Lyft of infringing three claims from a single patent and the case ended at the claim construction phase without the need for trial.  In fact, courts regularly rule on an attorneys' fees motion before the conclusion of an appeal while the relevant circumstances are "fresh in [its] mind."  *See Masalosalo ex rel. Masalosalo*, 718 F.2d at 957 (citing *Terket v. Lund*, 623 F.2d at 34); *Baker v. Baker*, No. 16-cv-08931 VAP (JPRx), 2018 WL 6190597, at *3 (C.D. Cal. Aug. 31, 2018); *Castillo-Antonio v. Iqbal*, No. 14-cv-03316-KAW, 2017 WL 1113300, at *5 (N.D. Cal. Mar. 24, 2017).

## VI.    CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court grant its motion, declaring this case exceptional and ordering RideApp to compensate Lyft for the necessary and reasonable attorneys' fees that Lyft expended in this case.

1    Dated:  January 17, 2020                    Respectfully submitted,

2

3                                                **BAKER BOTTS L.L.P.**

4                                                */s/ Jeremy J. Taylor*

5                                                Jeremy J. Taylor (SBN 249075)
                                                 jeremy.taylor@bakerbotts.com
6                                                **BAKER BOTTS L.L.P.**
                                                 101 California Street, Suite 3600
7                                                San Francisco, CA 94111
                                                 Tel: (415) 291-6200
8                                                Fax: (415) 291-6300

9

10                                               Elizabeth K. Boggs (SBN 280555)
                                                 betsy.boggs@bakerbotts.com
11                                               John F. Gaustad (SBN 279893)
                                                 john.gaustad@bakerbotts.com
12                                               Keith M. Jurek (SBN 310856)
                                                 keith.jurek@bakerbotts.com
13                                               **BAKER BOTTS L.L.P.**
14                                               1001 Page Mill Road
                                                 Building One, Suite 200
15                                               Palo Alto, California 94304
                                                 Phone: (650) 739-7500
16                                               Fax: (650) 739-7699

17                                               Jennifer C. Tempesta (*admitted pro hac vice*)
18                                               **BAKER BOTTS L.L.P.**
                                                 30 Rockefeller Plaza
19                                               New York, NY 10112
                                                 Phone: (212) 408-2500
20                                               Fax: (212) 408-2501

21                                               *Attorneys for Defendant LYFT, INC.*

22

23

24

25

26

27

28